**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

UNITED STATES OF AMERICA,

     *Plaintiff*,

v.

BRAD RAFFENSPERGER, in his official
capacity as Secretary of State for the State of
Georgia,

     *Defendant*.

Case No. 5:25-cv-548-CAR

**MEMORANDUM IN SUPPORT OF BLACK VOTERS MATTER FUND, CWA LOCAL
3204, AND CWA LOCAL 3204 RETIRED MEMBERS COUNCIL'S MOTION TO
INTERVENE AS DEFENDANTS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

    I.   Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional separation of powers ............................................................. 2

    II.  The Department of Justice has embarked on an unprecedented nationwide campaign to collect personal voter registration data held by the states .................................... 4

    III. The Department of Justice sues Georgia to obtain its unredacted voter list. ..................... 5

    IV. Proposed Intervenors' interests are placed in jeopardy by DOJ's demand. ....................... 6

LEGAL STANDARD ...................................................................................................... 9

ARGUMENT .................................................................................................................. 9

    I.   Proposed Intervenors are entitled to intervene as of right under Rule 24(a)(2) .................. 9

        A. The motion is timely. ......................................................................................... 9

        B. Proposed Intervenors have interests in protecting the privacy and voting rights of their members and constituents and safeguarding their organizational missions. ................. 10

        C. The existing parties do not adequately represent Proposed Intervenors ....................... 13

    II.  Alternatively, Proposed Intervenors should be granted permissive intervention. ............ 15

CONCLUSION ............................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases:**

*1789 Found. Inc. v. Fontes*,
   No. CV-24-02987-PHX-SPL, 2025 WL 834919 (2025) .................................................. 16

*Alabama ex rel. Gallion v. Rogers*,
   187 F. Supp. 848 (M.D. Ala. 1960) ....................................................................... 5

*Allstate Ins. Co. v. Ginsberg*,
   351 F.3d 473 (11th Cir. 2003) ......................................................................... 10

*Arcia v. Fla. Sec'y of State*,
   772 F.3d 1335 (11th Cir. 2014) ....................................................................... 12

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
   570 U.S. 1 (2013) ............................................................................................. 2

*Ass'n of Conn. Lobbyists LLC v. Garfield*, 241 F.R.D. 100, 103 (D. Conn. 2007) ..................... 15

*Bellitto v. Snipes*,
   935 F.3d 1192 (11th Cir. 2019) ....................................................................... 14

*Bellitto v. Snipes*,
   No. 16-CV-61474, 2016 WL 5118568 (S.D. Fla. Sep. 21, 2016) ................................... 14

*Berger v. N.C. State Conf. of the NAACP*,
   597 U.S. 179 (2022) ................................................................................ 2, 14

*Butler v. City of Douglas*,
   No. 5:14-cv-55, 2016 WL 5661203 (S.D. Ga. Sep. 29, 2016) ........................................ 10

*BVMF v. Raffensperger*,
   508 F. Supp. 3d 1283 (N.D. Ga. 2020) ............................................................... 14

*California ex rel. Lockyer v. United States*,
   450 F.3d 436 (9th Cir. 2006) ......................................................................... 12

*Chiles v. Thornburgh*,
   865 F.2d 1197 (11th Cir. 1989) .................................................................... 9, 15

*Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*,
   No. 18 CIV. 11657, 2020 WL 1432213 (S.D.N.Y. Mar. 24, 2020) ............................... 16

*Clark v. Putnam County*,
   168 F.3d 458 (11th Cir. 1999) ................................................................. 14, 15

*Common Cause/Ga. v. Billups*,
   554 F.3d 1340 (11th Cir. 2009) .................................................................... 12

*Daggett v. Comm'n on Governmental Ethics & Election Pracs.*,
   172 F.3d 104 (1st Cir. 1999) ........................................................................ 16

*First Nat'l Bank of Tenn. v. Pinnacle Props. V, LLC*,
   No. 1:11-cv-2087-ODE, 2011 WL 13221046 (N.D. Ga. Nov. 1, 2011) ........................... 9

*Fla. State Conf. of NAACP v. Browning*,
   522 F.3d 1153 (11th Cir. 2008) .................................................................... 12

*Foster v. Love*,
   522 U.S. 67 (1997).................................................................................... 2

*Georgia v. U.S. Army Corps of Eng'rs*,
   302 F.3d 1242 (11th Cir. 2002) ............................................................... 12, 13

*Husted v. A. Philip Randolph Inst.*,
   584 U.S. 756 (2018)................................................................................ 2, 3

*In re Sealed Case*,
   237 F.3d 664 ................................................................................... 10, 13

*Kalbers v. U.S. Dep't of Just.*,
   22 F.4th 816 (9th Cir. 2021) .................................................................. 10, 13

*Kennedy v. Lynd*,
   306 F.2d 222 (5th Cir. 1962) ........................................................................ 5

*Kleissler v. U.S. Forest Serv.*,
   157 F.3d 964 (3d Cir. 1998)........................................................................ 13

*Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.*,
   425 F.3d 1308 (11th Cir. 2005) ............................................................... 10, 15

*Project Vote, Inc. v. Kemp*,
   208 F. Supp. 3d 1320 (N.D. Ga. 2016) .............................................................. 5

*Pub. Int. Legal Found., Inc. v. Bellows*,
   92 F.4th 36 (1st Cir. 2024).......................................................................... 6

*Republican Nat'l Comm. v. N.C. State Bd. of Elections*,
120 F.4th 390 (4th Cir. 2024) ...................................................................... 3

*Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*,
874 F.3d 692 (11th Cir. 2017) ......................................................... 9, 10, 12

*Thomas v. Henderson*,
297 F. Supp. 2d 1311 (S.D. Ala. 2003).................................................... 9

*Trbovich v. United Mine Workers*,
404 U.S. 528 (1972)......................................................................... 2, 13, 14

*Turn Key Gaming, Inc. v. Oglala Sioux Tribe*,
164 F.3d 1080 (8th Cir. 1999) ................................................................. 9

*United States v. Benson*,
No. 1:25-cv-0114, 2025 WL 3520406 (W.D. Mich. Dec. 9, 2025)............................. 1, 11

*United States v. Oregon*,
No. 6:25-cv-01666, 2025 WL 3496571 (D. Or. Dec. 5, 2025)........................ 1, 11, 12, 14

*Venetian Casino Resort, LLC v. Enwave L.V., LLC*,
2020 No. 2:19-cv-119, 2020 WL 1539691 (2020) ......................................... 12

**Us Constitutional Provisions:**

U.S. Const. Art. I, § 4 ................................................................................. 2

**Statutes:**

52 U.S.C. § 20501................................................................................. 2

52 U.S.C. § 20507................................................................................. 3

52 U.S.C. § 21083................................................................................. 3

O.C.G.A. § 21-2-225.................................................................... 1, 5, 10

O.C.G.A. § 50-18-72................................................................................ 10

**Federal Rules:**

Fed. R. Civ. P. 24........................................................................... 1, 9, 15

**Other Authorities:**

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y.
        Times (Nov. 16, 2025),
        https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-
        department-staff-attorneys.html ........................................................................................ 4

Nick Corasaniti, *Election Officials Press Trump Administration Over Voter Data*,
        N.Y. Times (Nov. 18, 2025),
        https://www.nytimes.com/2025/11/18/us/politics/election-officials-trump-
        voter-data.html ................................................................................................................... 4

Patrick Berry, *Tracker of Justice Department Requests for Voter Information*,
        Brennan Ctr. for Just. (Dec. 12, 2025), https://www.brennancenter.org/our-
        work/research-reports/tracker-justice-department-requests-voter-information ................. 4

**INTRODUCTION**

The U.S. Department of Justice ("DOJ") recently embarked on an unprecedented nationwide campaign to compile sensitive personal information on voters in a centralized federal database. In its most recent salvo, DOJ sued Georgia Secretary of State Brad Raffensperger, seeking to compel him to turn over Georgia's complete and unredacted voter registration list, which contains sensitive and private information about every voter in the state that is protected from disclosure by state law. *See* O.C.G.A. § 21-2-225(b). This legal assault intrudes upon the privacy rights of individual Georgians who have good reason to fear their personal information being handed over to the federal government.

Accordingly, Proposed Intervenors—a Georgia civic organization and two Georgia union groups—move to intervene in this suit to oppose the federal government's overreach, defend the privacy rights of their members and constituents, and safeguard their organizational missions. They readily satisfy the standard for intervention as of right. *See* Fed. R. Civ. P. 24(a). In fact, multiple federal courts have allowed organizations similarly situated to Proposed Intervenors to intervene in parallel suits DOJ has brought seeking other states' voter lists.[1] Like those organizations, Proposed Intervenors have interests in ensuring the continued privacy of their members' and constituents' personal information, both for their members' sake and also to

---

[1] *See United States v. Benson*, No. 1:25-cv-01148-HYJ-PJG, 2025 WL 3520406, at *6 (W.D. Mich. Dec. 9, 2025) (granting intervention as of right to group representing retired union members); *United States v. Oregon*, No. 6:25-cv-01666, 2025 WL 3496571, at *1–2 (D. Or. Dec. 5, 2025) (granting intervention as of right to civic group serving marginalized communities); Minute Order, *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. Nov. 19, 2025), ECF No. 70 (granting permissive intervention to civic groups); *see also* Minute Order, *United States v. Bellows*, No. 1:25-cv-00468-LEW (D. Me. Dec. 12, 2025), ECF No. 51 (granting unopposed intervention to civic group); Minute Order, *United States v. Oliver*, 1:25-cv-01193-LF-JFR (D.N.M. Dec. 15, 2025), ECF No. 9 (same).

safeguard their own voter-engagement programs. Those interests will not be adequately represented by Secretary Raffensperger, who must consider the "broader public-policy implications" of the issues presented in this suit, while Proposed Intervenors are solely concerned with protecting their members' privacy and defending their missions, "full stop." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 195–96 (2022) (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538–39 (1972)).

Alternatively, Proposed Intervenors should be granted permissive intervention under Rule 24(b), the requirements of which are readily satisfied. Doing so will ensure that Georgia voters have a dedicated voice in this litigation, which ultimately concerns the disclosure of their sensitive, private, and personal information.

## BACKGROUND

### I. Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional separation of powers.

The U.S. Constitution "invests the States with responsibility for the mechanics" of federal elections, subject to any decision by Congress to "preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997); *see also* U.S. Const. art. I, § 4, cl. 1. Accordingly, as a default matter, the Constitution assigns states the responsibility of determining voter eligibility and maintaining lists of eligible voters. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 17 (2013).

While Congress has enacted certain laws governing voter registration, these laws augment existing "state voter-registration systems," *id.* at 5, and confirm that states are the custodians of voter registration data. In 1993, Congress enacted the National Voter Registration Act ("NVRA") to serve "two main objectives: increasing voter registration and removing ineligible persons from the States' voter registration rolls." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018); *see also* 52 U.S.C. § 20501(b). The law charges *states*—not the federal government—with the

"administration of voter registration for elections for Federal office," 52 U.S.C. § 20507(a), including as to maintaining voter lists (subject to strict procedural safeguards), *id.* § 20507(c)–(g). It similarly makes *states* the custodians of voter lists. *See Husted*, 584 U.S. at 761.

In the wake of the 2000 elections, Congress enacted the Help America Vote Act ("HAVA") "to improve voting systems and voter access." *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 120 F.4th 390, 394 (4th Cir. 2024). Like the NVRA, HAVA regulates how *states* maintain voter registration lists, requiring them to create a "computerized statewide voter registration list." 52 U.S.C. § 21083(a)(1). It also requires states to "perform list maintenance" consistent with the NVRA. *Id.* § 21083(a)(2). HAVA is clear that this list is to be "defined, maintained, and administered at the *State* level." *Id.* § 21083(a)(1)(A) (emphasis added). Indeed, HAVA's legislative history stressed the importance of maintaining our decentralized electoral system to preserving liberty:

> Historically, elections in this country have been administered at the state and local level. This system has many benefits that must be preserved. The dispersal of responsibility for election administration has made it impossible for a single centrally controlled authority to dictate how elections will be run, and thereby be able to control the outcome. This leaves the power and responsibility for running elections where it should be, in the hands of the citizens of this country.

*See* H.R. Rep. No. 107-329, pt. 1, at 31–32 (2001).

Consistent with that principle, neither the NVRA nor HAVA tasks the federal government with compiling a federal national voter registration list or micromanaging the states in their maintenance of such lists. Congress has instead "left it up to the States to maintain accurate lists of those eligible to vote in federal elections," *Husted*, 584 U.S. at 761, subject only to the *specific* requirements of the NVRA and HAVA, which purposefully operate through the states themselves—not DOJ and the federal government.

3

## II.    The Department of Justice has embarked on an unprecedented nationwide campaign to collect personal voter registration data held by the states.

This spring, DOJ launched a campaign to demand broad and unprecedented access to state voter files, including personal information about each registered voter. Media outlets have reported that DOJ intends to share the voter lists across the federal government and use the data for immigration enforcement, to push for voter purges, and to cast doubt on the legitimacy of U.S. elections.[2] To date, DOJ has sent demands to over 40 states, with plans to make similar demands on all 50 states.[3] The vast majority of states that have received such demands have refused to comply, declining to turn over sensitive personal information that is typically protected by state law; accordingly, DOJ has sued 22 states to date, demanding unredacted voter lists from each. *See supra* note 3.

As part of this campaign, DOJ sent Georgia a letter on August 7, 2025, demanding its "statewide voter registration list." Compl. ¶ 20. DOJ reiterated its request on August 14 and specified that it demanded "all fields" of the list, including each voter's date of birth, driver's license number, and the last four digits of their social security number. Compl. ¶ 22

Secretary Raffensperger responded to DOJ on December 8. Compl. ¶¶ 24–25. He detailed Georgia's voter list maintenance efforts, which he said involved sending over 1 million "list maintenance notices" in 2025 alone. ECF No. 2-2 at 11. He also explained that Georgia canceled

---

[2] *See, e.g.*, Nick Corasaniti, *Election Officials Press Trump Administration Over Voter Data*, N.Y. Times (Nov. 18, 2025), https://www.nytimes.com/2025/11/18/us/politics/election-officials-trump-voter-data.html; Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. Times (Nov. 16, 2025), https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html.

[3] Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (Dec. 19, 2025), https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-information.

over 580,000 voter registrations in 2025 and provided a table with a year-to-year breakdown of Georgia's extensive registration cancellation efforts since 2019. *Id.* at 12. Secretary Raffensperger described Georgia's efforts to cancel voter registrations as "rigorous" and "nation-leading," and he lamented that he was unable to cancel even more voter registrations due to restrictions under the NVRA. *Id.* at 11, 13. He also offered DOJ access to Georgia's voter file but noted that "Georgia law prohibits the disclosure of voters' full date of birth, social security number, and driver's license number." *Id.* at 13 (citing O.C.G.A. § 21-2-225(b)). He explained that federal law does not require the release of "sensitive information that implicates special privacy concerns" on voter lists. *Id.* (quoting *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1344 (N.D. Ga. 2016)). Secretary Raffensperger thus declined to provide that sensitive voter information to DOJ. *Id.*; *see also* Compl. ¶¶ 24–25.

## III.    The Department of Justice sues Georgia to obtain its unredacted voter list.

DOJ filed this suit on December 18, just ten days later, seeking to compel Secretary Raffensperger to provide Georgia's unredacted registration list. Compl. at 9. DOJ's sole claim invokes the Civil Rights Act of 1960, *id.* ¶¶ 26–28, but that statute does not support DOJ's sweeping demand. Instead, the landmark civil rights law permits DOJ to review certain voting records to investigate "question[s] concerning infringement or denial of . . . constitutional voting rights." *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962). Congress enacted the law to preserve "the right of all qualified citizens to vote without discrimination on account of race," and specifically to facilitate "investigation[s]" authorized under the Civil Rights Act of 1957, which recalcitrant local officials had frustrated through the destruction of records. H.R. Rep. No. 86-956, at 1944 (1959). This history "leaves no doubt but that [Section 303] is designed to secure a more effective protection of the right to vote." *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961). DOJ

admits that is not its purpose here; rather, it claims to be evaluating Georgia's list maintenance efforts under NVRA and HAVA, *see* ECF No. 2-1 at 12–13—statutes enacted long after the Civil Rights Act of 1960, with their own separate disclosure rules (in the case of the NVRA) and enforcement mechanisms. Thus, the Civil Rights Act of 1960 does not apply here. And even if it did, the Act does not prohibit states from redacting confidential and sensitive voter information, just as they may under the NVRA. *See Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) (citing cases).

## IV.    Proposed Intervenors' interests are placed in jeopardy by DOJ's demand.

Proposed Intervenors comprise Black Voters Matter Fund ("BVMF"), Communications Workers of America Local 3204 ("Local 3204"), and Communications Workers of America Local 3204 Retired Members Council ("CWA RMC"). They seek to intervene both to protect the voting and privacy rights of their members and constituents, and also to safeguard their own organizational interests in voter engagement, which will be undermined if Georgia voters are deterred from voting based on the fear that their sensitive personal information protected by state law will fall into the hands of the federal government.

*BVMF*. BVMF is a nonpartisan, nonprofit social welfare organization dedicated to building power in the Black community by growing their power at the ballot box. Ex. 2, Albright Decl. ¶ 3. To support that mission, BVMF engages in voter-registration and get-out-the-vote programming throughout Georgia. *Id.* ¶¶ 4–7. It also monitor's Georgia's compliance with the NVRA—including through requesting and reviewing the state's publicly available voter list, which specifically excludes the protected information DOJ seeks in this suit—to ensure that voters are not improperly removed from the rolls. *Id.* ¶ 8. These initiatives would be undermined if Georgia voters come to believe that their sensitive personal information will not remain secret and private but will instead be turned over to federal law enforcement. *Id.* ¶ 9–10. This chilling effect

will be particularly strongly felt in the Black community in Georgia due to the long history of race-based discrimination in voting by government actors. *Id.* ¶¶ 6, 11. Accordingly, if DOJ succeeds in achieving access to Georgia's unredacted voter list, BVMF will have to redirect resources to mitigate the chilling effect on voting engagement and participation by working to convince reluctant and skeptical voters that voting remains worthwhile, despite the risks stemming from the disclosure of their personal data. *Id.* ¶¶ 12–14. That will necessarily come at the expense of BVMF's existing voter engagement efforts and other mission-critical programs. *Id.* BVMF's mission-driven efforts to guard against improper voter purges will also be undermined if DOJ weaponizes Georgia's unredacted voter list to attempt to force a mass voter purge beyond the extraordinarily aggressive purges Georgia has already conducted. *Id.* ¶¶ 8, 12.

*Local 3204*. Local 3204 is a chartered affiliate of the Communication Workers of America, a labor union primarily drawing from the telecommunications and media industries. Ex. 3, Barlow Decl. ¶¶ 4–5. Local 3204 represents over 1,400 members in the Atlanta metro region. *Id.* ¶ 5. Its mission is to help its members live a secure and dignified life in the workplace and beyond. *Id.* ¶ 6. As part of that mission, Local 3204 works to build the political power of its members by encouraging and assisting them in registering them to vote, turning them out during elections, and advocating for policies that will improve its members' lives. *Id.* ¶¶ 7–9. Local 3204's members expect their sensitive personal information to be kept secret and private under state law; if that expectation is upset, some members—as well as other Georgia voters Local 3204 seeks to engage—will second-guess voting in future elections, frustrating Local 3204's voter-engagement efforts. *Id.* ¶ 12. As workers in the telecommunications industry, Local 3204's members are particularly aware of the risks of identity theft and fraud, and many members will have no faith that DOJ will keep their information from being publicly disclosed—whether on purpose, to serve

a political narrative, or by accident, through negligence. *Id.* ¶ 13. Those fears may further deter some of Local 3204's members from engaging in the political process, again undermining Local 3204's mission. *Id*. ¶¶ 12–14. Further, the disclosure of Local 3204's members' sensitive personal information will directly harm their privacy interests—which Local 3204 seeks to protect on its members' behalf. *Id.* ¶¶ 14–15.

  ***CWA RMC***. CWA RMC, like Local 3204, is a chartered affiliate of the Communication Workers of America, representing over 2,000 members in the Atlanta metro region. Ex. 4, Scott Decl. ¶¶ 4–5. Its mission is to ensure retirees enjoy social and economic justice and the full civil rights that they have earned after a lifetime of work. *Id.* ¶ 6. To advance that mission, CWA RMC dedicates significant resources to voter engagement and political advocacy on issues affecting its members. *Id.* ¶¶ 6–9. DOJ's efforts to gain access to the private voter information protected from disclosure by state law would undermine that mission. *Id.* ¶¶ 10–11. CWA RMC's members—as well as other Georgia voters it seeks to engage—will likely become more reluctant to vote in future elections if they know that their sensitive personal information may be exposed to the federal government years later. *Id.* ¶ 13–14. CWA RMC's members are particularly sensitive about ensuring the privacy of their information because, as retirees and older voters, they have serious concerns about being targeted by social security fraud, identity theft, and other types of scams, and are unlikely to trust the federal government to keep their information private and secure. *Id.* ¶¶ 13, 15. Those concerns would further undermine CWA RMC's voter engagement efforts if DOJ obtains the relief it seeks. *Id.* ¶¶ 13–15. Further, the disclosure of CWA RMC's members' sensitive personal information will directly harm their privacy interests—which CWA RMC seeks to protect on its members' behalf. *Id*. ¶ 14.

## LEGAL STANDARD

A movant has a right to intervene under Rule 24(a)(2) where "(1) their application to intervene is timely; (2) they have an interest relating to the property or transaction which is the subject of the action; (3) they are so situated that disposition of the action, as a practical matter, may impede or impair their ability to protect that interest; and (4) their interest is represented inadequately by the existing parties to the suit." *Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 695–96 (11th Cir. 2017) (citation modified). Courts also have discretion to grant permissive intervention if the movant has "a claim or defense that shares with the main action a common question of law or fact," if doing so will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(1)(B), (b)(3).[4]

"Rule 24 is to be given a liberal construction in favor of applicants for intervention." *First Nat'l Bank of Tenn. v. Pinnacle Props. V, LLC*, No. 1:11-cv-2087-ODE, 2011 WL 13221046, at *2 (N.D. Ga. Nov. 1, 2011). Accordingly, "doubts [are to be] resolved in favor of the proposed intervenor." *Thomas v. Henderson*, 297 F. Supp. 2d 1311, 1326 (S.D. Ala. 2003) (quoting *Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080, 1081 (8th Cir. 1999)).

## ARGUMENT

### I.    Proposed Intervenors are entitled to intervene as of right under Rule 24(a)(2).

### A.    The motion is timely.

Proposed Intervenors' motion—filed the day after DOJ sued—is timely. *See Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989) (finding motion to intervene "filed only seven

---

[4] In compliance with Rule 24(c)'s requirement that a motion to intervene be accompanied by a "pleading," Proposed Intervenors attach a proposed answer to this motion. *See* Ex. 1. Proposed Intervenors reserve the right to file a motion to dismiss under Rule 12 and an opposition to DOJ's motion to compel, ECF No. 2, by any deadline set by the Court.

months after" the complaint was timely). Moreover, because no case schedule has yet been set and no substantive events have occurred in the case, there is no risk of prejudice to the existing parties. Proposed Intervenors further agree to abide by any schedule set by the Court or the existing parties. The first element of intervention of right is thus met.

>   **B.    Proposed Intervenors have interests in protecting the privacy and voting rights of their members and constituents and safeguarding their organizational missions.**

Proposed Intervenors also satisfy Rule 24(a)(2)'s interest factors because each has interests that "as a practical matter, may [be] . . . impair[ed]" by this litigation. *Tech. Training Assocs.*, 874 F.3d at 696 (citation omitted).

Proposed Intervenors have two primary interests at stake. First, Proposed Intervenors' members and constituents—which include several thousand Georgia voters—have protectable interests in maintaining the privacy and security of their highly sensitive personal identifying information. *See supra* Background § IV. The relief DOJ seeks would require revealing private voter information that Georgia law exempts from disclosure. O.C.G.A. §§ 21-2-225(b), 50-18-72(a)(20)(A); *see also Allstate Ins. Co. v. Ginsberg*, 351 F.3d 473, 478 (11th Cir. 2003) (per curiam) (recognizing "invasion of privacy" as a "distinct and actionable tort"); *Butler v. City of Douglas*, No. 5:14-cv-55, 2016 WL 5661203, at *16 (S.D. Ga. Sep. 29, 2016) ("The invasion of one's right to privacy is actionable in tort under Georgia common law."). These interests alone are sufficient for intervention because each "derives from a legal right." *Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005) (per curiam); *see also Kalbers v. U.S. Dep't of Just.*, 22 F.4th 816, 827 (9th Cir. 2021) (recognizing "straightforward" protectable interest in confidentiality of non-public documents); *In re Sealed Case*, 237 F.3d 657, 663–64 (D.C. Cir. 2001) (holding intervenors had "legally cognizable interest in maintaining the confidentiality" of records). Multiple courts have recently recognized that voters have a "significant[ly] protectable

interest[]" in the privacy of their personal information and have thus granted intervention to organizations seeking to defend those voters. *United States v. Oregon*, No. 6:25-CV-01666-MTK, 2025 WL 3496571, at *1 (D. Or. Dec. 5, 2025) (granting intervention of right to civic organization and voters to defend against DOJ's suit for voter data); *see also Benson*, 2025 WL 3520406, at *2 (holding proposed intervenors—including a group representing union retirees—"have a privacy interest in preventing the disclosure of their personal information to the federal government."). This Court should do the same.

Second, Proposed Intervenors' organizational missions to engage and mobilize voters, and to protect voters from improper removals, are also at stake. If DOJ succeeds in accessing voters' sensitive personal information from Georgia's unredacted voter list, those missions will necessarily be undermined because voters will be deterred from voting in future elections if they know that doing so risks exposing their sensitive personal information to the federal government. *See supra* Background § IV. The chilling effect will be particularly strongly felt among the discrete communities Proposed Intervenors represent—Black voters (in the case of BVMF), telecommunication workers (in the case of Local 3204), and retirees (in the case of CWA RMC)— each of whom has distinct concerns about the exposure of their sensitive personal information to DOJ. *See supra* Background § IV. Further, BVMF's long-standing efforts to ensure that Georgians are not improperly removed from state registration rolls will also be undermined if DOJ uses Georgia's unredacted voter list to attempt to force mass voter purges beyond the already aggressive purges the state has conducted in recent years. *See supra* Background § IV. Accordingly, Proposed Intervenors' efforts to mobilize voters in support of their missions will be frustrated if DOJ wins the relief it seeks in this litigation.

11

These interests support intervention. The Eleventh Circuit has repeatedly recognized that organizational interests in preserving voter-engagement missions suffice to meet the more stringent requirements of Article III standing. *See, e.g.*, *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1341 (11th Cir. 2014) (finding organizations had standing to defend "missions that include voter registration and education, or encouraging and safeguarding voter rights"); *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1350 (11th Cir. 2009) (similar); *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1165–66 (11th Cir. 2008) (similar). Such interests, accordingly, meet the requirements to intervene under Rule 24(a), as multiple federal courts have recently recognized in granting intervention to organizations to defend against DOJ's suits for unredacted voter lists. *Oregon*, 2025 WL 3496571, at *1 (finding the proposed intervenor's voter-engagement mission was at stake because "the threat of disclosure will deter qualified voters in marginalized communities from registering to vote . . . and engaging in the political process more broadly" (citation omitted)); *supra* note 1 (listing other courts that have recently granted intervention to organizations in DOJ's suits for state voter lists).

For similar reasons, these interests, "as a practical matter, may [be] . . . impair[ed]" by this litigation. *Tech. Training Assocs.*, 874 F.3d at 696 (citation omitted). "Once an applicant has established a significantly protectable interest in an action, courts regularly find that disposition of the case may, as a practical matter, impair an applicant's ability to protect that interest." *Venetian Casino Resort, LLC v. Enwave L.V., LLC*, No. 2:19-cv-1197-JCM-DJA, 2020 WL 1539691, at *3 (D. Nev. Jan. 7, 2020) (citing *California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006)); *see also Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1253 (11th Cir. 2002) (similar). If DOJ prevails in this action and accesses the sensitive voter information it seeks, its success will necessarily impair the privacy interests of Proposed Intervenors' members and

constituents: Once voters' information is disclosed to DOJ, "the cat is out of the bag." *In re Sealed Case*, 237 F.3d at 664 (citation omitted) (finding impairment when intervenor's confidential information was at risk of disclosure); *see also Kalbers*, 22 F.4th at 828 (holding intervenor's "interest in keeping its documents confidential would obviously be impaired by an order to disclose" those documents). And the declarations submitted by the Proposed Intervenors are more than sufficient to show that their organizational missions will also be impaired by the relief DOJ seeks.

### C.    The existing parties do not adequately represent Proposed Intervenors.

The existing parties do not adequately represent the interests of Proposed Intervenors. The "burden of making that showing should be treated as minimal" and the movant need only show that the existing parties' representation "*may be*" inadequate. *Trbovich*, 404 U.S. at 538 n.10 (emphasis added); *see also U.S. Army Corps of Eng'rs*, 302 F.3d at 1255 (similar). Courts are "liberal in finding" that this requirement has been satisfied because "there is good reason in most cases to suppose that the applicant is the best judge of the representation of the applicant's own interests." 7C Wright & Miller's Federal Practice & Procedure § 1909 (3d ed. 2024).

DOJ plainly does not represent Proposed Intervenors' interests. It is diametrically opposed to those interests, as it seeks to forcibly compel production of sensitive personal information of Proposed Intervenors' members and constituents, in violation of their privacy rights, which would inevitably undermine Proposed Intervenors' voter-engagement missions.

Secretary Raffensperger also does not adequately represent Proposed Intervenors. The interests of government officials are "necessarily colored by [their] view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998). As a result, as the Supreme Court has emphasized, public officials must "bear in mind broader public-policy implications," whereas

private litigants seek to vindicate their own rights, "full stop." *Berger*, 597 U.S. at 195–96 (citing *Trbovich*, 404 U.S. at 538–39).

That is precisely the case here. Proposed Intervenors have distinct and "specific interests in protecting their privacy" and "in increasing voter participation by marginalized communities" that Secretary Raffensperger "do[es] not share." *Oregon*, 2025 WL 3496571, at *2 (finding inadequate representation). Under the NVRA, Secretary Raffensperger must "balance competing objectives" of maintaining accurate and current voter rolls with access to the ballot box. *Bellitto v. Snipes*, 935 F.3d 1192, 1201 (11th Cir. 2019). "[A]s an elected official, [Secretary Raffensperger's] interests and interpretation of the NVRA may not be aligned" with Proposed Intervenors' efforts to protect voters. *Bellitto v. Snipes*, No. 16-CV-61474, 2016 WL 5118568, at *2 (S.D. Fla. Sep. 21, 2016) (granting intervention to labor union in NVRA litigation). In fact, BVMF previously sued the Secretary over his list maintenance practices that resulted in widespread voter purges and harmed BVMF's constituents and its organizational mission. *See BVMF v. Raffensperger*, 508 F. Supp. 3d 1283, 1298 (N.D. Ga. 2020).

What's more, Secretary Raffensperger—who is actively campaigning for the Republican nomination for Georgia governor—also has an interest in "remain[ing a] politically popular and effective leader[]," and will inevitably face enormous pressure to cave to DOJ's demands, "compromising the proposed intervenors'" interests. *Clark v. Putnam County*, 168 F.3d 458, 462 (11th Cir. 1999) (reversing denial of intervention, reasoning that though elected officials were currently defending the action, "[a] greater willingness to compromise can impede a party from adequately representing the interests of a nonparty"); *see also Oregon*, 2025 WL 3496571, at *2 (finding government defendants "have broader public policy obligations and considerations that may incentivize them to make compromises that Proposed Intervenors would not make"). Given

14

these competing interests, Secretary Raffensperger "may decide not to emphasize" Proposed Intervenors' interests in this litigation. *Chiles*, 865 F.2d at 1214. Unencumbered by such pressures, Proposed Intervenors will defend their interests "with greater zeal" than Secretary Raffensperger, *Clark*, 168 F.3d at 462, particularly considering Secretary Raffensperger professes a desire to "partner" with DOJ and engage in even *more* aggressive voter removals than federal law permits, ECF No. 2-2 at 13.

Accordingly, Proposed Intervenors have shown that they are entitled to intervention as of right.

## II. Alternatively, Proposed Intervenors should be granted permissive intervention.

The Court should alternatively exercise its discretion to grant permissive intervention, as Proposed Intervenors readily meet the requirements of Rule 24(b): their "claim[s] or defense[s] and the main action have a question of law or fact in common and the intervention will not unduly prejudice or delay the adjudication of the rights of the original parties." *Mt. Hawley Ins. Co.*, 425 F.3d at 1312 (citation omitted). Proposed Intervenors will assert that DOJ is not entitled to relief on its claim, *see generally* Ex. 1 (Proposed Answer), and because they have moved to intervene at the earliest stage of litigation—the very next day after DOJ filed its lawsuit—granting intervention will not "unduly delay or prejudice the adjudication" of this matter. Fed. R. Civ. P. 24(b)(3). Moreover, Proposed Intervenors agree to abide by any schedule entered by the Court or agreed to by the existing parties.

The nature of Proposed Intervenors' interests here also bolsters their case for intervention. Given that this action threatens to compel disclosure of personal data of millions of Georgia voters to federal officials, the letter and spirit of Rule 24 counsel strongly in favor of allowing organizations that specifically represent the interests of *those voters* to participate. *See Ass'n of Conn. Lobbyists LLC v. Garfield*, 241 F.R.D. 100, 103 (D. Conn. 2007) (granting intervention to

movant that "offer[ed] a unique, personal and highly relevant factual perspective to the law, its development, and its impact"); *see also Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*, No. 18 CIV. 11657 (ER), 2020 WL 1432213, at *8 n.9 (S.D.N.Y. Mar. 24, 2020) (explaining the "unique perspective" of people and organizations serving people "directly impacted" by challenged action would "greatly contribute to the Court's understanding of th[e] case" (citation omitted)).

In addition, courts also regularly allow pro-voting civic organizations to intervene to ensure their voters' voices are heard when litigation implicates voting rights. *See, e.g.*, Minute Order, *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. Nov. 19, 2025), ECF No. 70 (permitting civic organizations to intervene in DOJ suit seeking California's unredacted voter file); *1789 Found. Inc. v. Fontes*, No. CV-24-02987-PHX-SPL, 2025 WL 834919, at *4 (D. Ariz. Mar. 17, 2025) (permitting advocacy organizations to intervene as defendants). Proposed Intervenors' unique perspectives will thus be "helpful in fully developing the case." *Daggett v. Comm'n on Governmental Ethics & Election Pracs.*, 172 F.3d 104, 113 (1st Cir. 1999). These considerations, in addition to the satisfaction of Rule 24(b), strongly weigh in favor of permissive intervention.

## CONCLUSION

For all of these reasons, Proposed Intervenors respectfully request that the Court grant them intervention as of right—or in the alternative grant permissive intervention—to allow them to defend the interests they have at stake in this case.

[signature block on following page]

Dated: December 19, 2025

*/s/ Adam M. Sparks*
Adam M. Sparks
Ga. Bar. No. 341578
**KREVOLIN & HORST, LLC**
1201 W. Peachtree St., NW
Suite 3500, One Atlantic Center
Atlanta, GA 30309
Tel: (404) 888-9700
Fax: (404) 888-9577
Email: sparks@khlawfirm.com

Uzoma N. Nkwonta*
Branden D. Lewiston*
Marcos Mocine-McQueen*
**ELIAS LAW GROUP LLP**
250 Massachusetts Avenue NW, Suite 400
Washington, D.C. 20001
unkwonta@elias.law
blewiston@elias.law
mmcqueen@elias.law
Tel: (202) 968-4652

*Counsel for Black Voters Matter Fund,*
*CWA Local 3204, and*
*CWA Local 3204 Retired Members Council*

*Pro Hac Vice applications forthcoming