# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | No. 5:25-cv-548 (CAR) |
| BRAD RAFFENSPERGER, in his official capacity as Secretary of State for the State of Georgia, | |
| Defendant. | |

**MOTION OF COMMON CAUSE AND ROSARIO PALACIOS TO INTERVENE AS DEFENDANTS**

## TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ............................................................................................................ 1

BACKGROUND .............................................................................................................. 2

    A.    DOJ's Efforts to Obtain Private Voter Information ...................................... 2

    B.    Proposed Intervenors .................................................................................... 6

ARGUMENT .................................................................................................................... 7

I.    MOVANTS ARE ENTITLED TO INTERVENE AS A MATTER OF RIGHT ................... 7

    A.    The Motion to Intervene Is Timely ............................................................. 7

    B.    Proposed Intervenors Have Concrete Interests in the Underlying Litigation ............................. 8

    C.    Disposition of this Case May Threaten the Interests of Proposed Intervenors ......................... 11

    D.    Secretary Raffensperger's Interests Are Different from Those of Proposed Intervenors. ......... 12

II.    IN THE ALTERNATIVE, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION .......................................................................................................... 14

CONCLUSION ............................................................................................................... 15

# TABLE OF AUTHORITIES

## Cases

*Alabama Coalition for Immigrant Justice v. Allen*,
No. 2:24-cv-1254-AMM, 2024 WL 4510476 (N.D. Ala. Oct. 16, 2024) ............................................... 10

*American Farm Bureau Federation v. EPA*,
278 F.R.D. 98 (M.D. Pa. 2011) .................................................................................................................. 13

*Amerisure Mutual Insurance Company v. Reeves Young, LLC*,
No. 1:22-cv-02739-JPB, 2023 WL 5655531 (N.D. Ga. Aug. 31, 2023) ..................................................... 8

*Bellitto v. Snipes*,
No. 16-cv-61474-BLOOM/Valle, 2016 WL 5118568 (S.D. Fla. Sept. 21, 2016) .................................. 11

*Berger v. North Carolina State Conference of the NAACP*,
597 U.S. 179 (2022) ..................................................................................................................................... 13

*Chiles v. Thornburgh*,
865 F.2d 1197 (11th Cir. 1989) ............................................................................................................ 8, 12

*Clark v. Putnam County*,
168 F.3d 458 (11th Cir. 1999) ................................................................................................................... 13

*Commissioner, Alabama Department of Corrections v. Advance Local Media, LLC*,
918 F.3d 1161 (11th Cir. 2019) ................................................................................................................... 7

*Dillard v. Chilton County Commission*,
495 F.3d 1324 (11th Cir. 2007) ......................................................................................................... 11, 12

*Donaldson v. United States*,
400 U.S. 517 (1971) ....................................................................................................................................... 8

*Georgia v. U.S. Army Corps of Engineers*,
302 F.3d 1242 (11th Cir. 2002) .............................................................................................................. 7, 8

*Greene v. Raffensperger*,
No. 22-cv-1294-AT, 2022 WL 1045967 (N.D. Ga. Apr. 7, 2022) ..................................................... 8, 11

*Kobach v U.S. Election Assistance Commission*,
No. 13-cv-04095, 2013 WL 6511874 (D. Kan. Dec. 12, 2013) ............................................................. 14

*Meek v. Metropolitan Dade County, Florida*,
985 F.2d 1471 (11th Cir. 1993) ....................................................................................................... 10, 12, 13

*Ohio Security Insurance Company v. Newsome*,
2015 WL 1419341 (S.D. Ga. Mar. 27, 2015) ............................................................................................ 8

*PA Fair Elections v. Pennsylvania Department of State*,
  337 A.3d 598 (Pa. Commw. Ct. 2025) ................................................... 4

*Project Vote, Inc. v. Kemp*,
  208 F. Supp. 3d 1320 (N.D. Ga. 2016) ................................................ 10

*Purcell v. BankAtlantic Financial Corporation*,
  85 F.3d 1508 (11th Cir. 1996) ....................................................... 7, 14

*Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*,
  861 F.3d 1278 (11th Cir. 2017) ...................................................... 8, 11

*Selcuk v. Pate*,
  No. 4:24-cv-00390-SHL-HCA, 2024 WL 5054961 (S.D. Iowa Nov. 3, 2024) ................ 10

*Stone v. First Union Corp.*,
  371 F.3d 1305 (11th Cir. 2004) ........................................................ 12

*Technology Training Associates Inc. v. Buccaneers Limited Partnership*,
  874 F.3d 692 (11th Cir. 2017) ........................................................... 7

*Town of Chester v. Laroe Estates, Inc.*,
  581 U.S. 433 (2017) ...................................................................... 9

*United States v. Houston County*,
  No. 5:25-cv-25, 2025 WL 694458 (M.D. Ga. Mar. 4, 2025) .......................... 14, 15

**Statutes**

5 U.S.C. § 552a ....................................................................... 9, 13

52 U.S.C. § 20703 ................................................................... 11, 14

Official Code of Georgia Annotated § 21-2-225(b) ........................................ 3, 9

Official Code of Georgia Annotated § 50-18-150 to 50-18-155 ............................ 6

**Other Authorities**

Alexandra Berzon & Nick Corasaniti,
  *Trump Empowers Election Deniers, Still Fixated on 2020 Grievances*,
  N.Y. TIMES, Oct. 22, 2025, https://www.nytimes.com/2025/10/22/us/politics/trump-election-deniers-
  voting-security.html ...................................................................... 4

Carter Walker,
  *Efforts to Challenge Pennsylvania Voters' Mail Ballot Applications Fizzle*, SPOTLIGHT PA, Nov. 8,
  2024, https://www.spotlightpa.org/news/2024/11/mail-ballot-application-challenges-pennsylvania-fair-
  elections/ .............................................................................. 5

Devlin Barrett & Nick Corasaniti,
  *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. TIMES, (Sept. 9, 2025),
  https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html. ............................3

Emily Bazelon & Rachel Poser,
  *The Unraveling of the Justice Department*, N.Y. TIMES MAG. (Nov. 16, 2025),
  https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-
  attorneys.html............................................................................................................................4

Jonathan Shorman,
  *Trump's DOJ Offers States Confidential Deal to Remove Voters Flagged by Feds*, STATELINE (Dec. 18,
  2025), https://stateline.org/2025/12/18/trumps-doj-offers-states-confidential-deal-to-wipe-voters-
  flagged-by-feds-as-ineligible/ ...............................................................................................5

Jude Joffe-Block & Miles Parks,
  *The Trump Administration Is Building a National Citizenship Data System*, NPR, June 29, 2025,
  https://www.npr.org/2025/06/29/nx-s1-5409608/citizenship-trump-privacy-voting-database ................4

Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry,
  *Tracker of Justice Department Requests for Voter Information*,
  Brennan Center for Justice (updated Dec. 19, 2025), https://perma.cc/A4A4-737Z ...............................2

Matt Cohen,
  *DHS Said to Brief Cleta Mitchell's Group on Citizenship Checks for Voting*, DEMOCRACY DOCKET,
  June 12, 2025, https://www.democracydocket.com/news-alerts/dhs-said-to-brief-cleta-mitchells-anti-
  voting-group-on-checking-citizenship-for-voters/ ..................................................................4

Press Release, United States Department of Justice,
  *Justice Department Sues Four Additional States and One Locality for Failure to Comply with Federal
  Elections Laws* (Dec. 12, 2025), https://perma.cc/TQ5T-FB2A ............................................3

Press Release, United States Department of Justice,
  *Justice Department Sues Four States for Failure to Produce Voter Rolls* (Dec. 18, 2025),
  https://perma.cc/HHJ7-JWQQ ............................................................................................3

Press Release, United States Department of Justice,
  *Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls* (Sept. 16,
  2025), https://perma.cc/M69P-YCVC ..................................................................................3

Press Release, United States Department of Justice,
  *Justice Department Sues Six Additional States for Failure to Provide Voter Registration Rolls* (Dec. 2,
  2025), https://perma.cc/F5MD-NWHD ................................................................................3

Press Release, United States Department of Justice,
  *Justice Department Sues Six States for Failure to Provide Voter Registration Rolls* (Sept. 25, 2025),
  https://perma.cc/7J99-WGBA .............................................................................................3

**Rules**

Federal Rules of Civil Procedure, Rule 24(a) ........................................................................... 1, 7

Federal Rules of Civil Procedure, Rule 24(b) ......................................................................... 1, 14

Federal Rules of Civil Procedure, Rule 24(c) .............................................................................. 1

Common Cause and Rosario Palacios (together, "Proposed Intervenors") respectfully move to intervene as Defendants pursuant to Rule 24(a) of the Federal Rules of Civil Procedure or, in the alternative, pursuant to Rule 24(b), and set forth the legal argument necessary to support their motion below. Proposed Intervenors append as Exhibit 1 to this motion a proposed motion to dismiss by way of a response to the United States' Complaint. *See* Fed. R. Civ. P. 24(c).

## INTRODUCTION

The United States seeks to force Georgia to turn over voters' sensitive personal information and data. It has been widely reported that the United States will use this data to build an unauthorized national voter database and to improperly target voters for potential challenges and disenfranchisement.

Proposed Intervenors are Common Cause—a non-partisan organization dedicated to grassroots voter engagement in Georgia, whose members and whose own work are at risk by the relief sought by the United States in this case—and Rosario Palacios—Common Cause's Georgia Director and, as a naturalized citizen, one of the voters who is directly threatened. Proposed Intervenors have a strong interest in preventing the disclosure of Georgia's most sensitive non-public voter data. Common Cause has an interest in protecting the voting and privacy rights of its members and all Georgia voters. The relief the United States seeks risks discouraging Georgians from registering to vote, undermining its work. And the privacy and voting-rights interests of Common Cause's members and of Palacios are also directly at stake. Proposed Intervenors include members of some of those groups who are under particular threat from the United States' requested relief, including voters who are naturalized citizens or who have a prior felony conviction.

Proposed Intervenors are entitled to intervene as of right under Rule 24 as this motion is timely, their rights and interests are at stake, and those rights and interests are not adequately represented by the existing Defendant, who, unlike Proposed Intervenors, is a state actor, subject

to broader considerations external to the legal issues presented in this case. Their unique interests, perspective, and motivation to interrogate the purpose of the United States' sweeping request for non-public voter data will ensure full development of the record and aid the Court in its resolution of this case. Intervention as of right pursuant to Rule 24(a), or in the alternative permissive intervention pursuant to Rule 24(b), should be granted.

## BACKGROUND

### A.   DOJ's Efforts to Obtain Private Voter Information

Beginning in May 2025, Plaintiff the United States, through its Department of Justice ("DOJ"), began sending letters to election officials in at least forty states, making escalating demands for the production of voter registration databases, with plans to gather data from all fifty states. *See* Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (updated Dec. 19, 2025), https://perma.cc/A4A4-737Z.

On August 7, 2025, the DOJ sent a letter to the Georgia Secretary of State's Office requesting the statewide voter registration list within fourteen days, claiming it needed the list "for purposes of enforcing the [National Voter Registration Act] and the Help America Vote Act." Ex. 1, Pl.'s Mem. Of L., Letter from Michael E. Gates to Sec'y of State Brad Raffensperger dated Aug. 7, 2025, Dkt No. 2-2 at 2. On August 14, the DOJ sent a second letter, clarifying its demand—the requested list "should contain *all fields*" including full name, date of birth, residential address, driver's license number, and the last four digits of the registrant's Social Security number ("SSN4"). Ex. 2., Pl.'s Mem. Of L., Letter from Harmeet K. Dhillon to Sec'y of State Brad Raffensperger dated Aug. 14, 2025, Dkt. No. 2-2 at 6 ("August 14 Letter") (emphasis in original). This letter stated—without any explanation or authority—that because the DOJ has enforcement power under the NVRA and HAVA, it had the power to "conduct an independent review of each

2

state's [voter] list" and further that "[a]ny statewide prohibitions"—presumably on releasing sensitive information—"are clearly preempted by federal law." *Id.* at 7 n.2. On December 8, 2025, the Secretary of State's Office provided Georgia's complete list of registered voters to the DOJ. *See* Ex. 3, Pl.'s Mem. Of L., Letter from Charlene S. McGowan to Harmeet K. Dhillon dated Dec. 8, 2025, Dkt. No. 2-2 at 13. In accordance with Georgia law prohibiting the disclosure of sensitive voter information, that list did not include voters' full date of birth, driver's license number, or Social Security number. *Id.* (citing O.C.G.A. § 21-2-225(b)). In response, the United States brought this lawsuit, which is one of at least twenty-two similar suits seeking the disclosure of sensitive voter data.[1]

The DOJ's requests for private, sensitive voter data appear to be in connection with never-before-seen efforts by the United States to construct a national voter database, and to otherwise use untested forms of database matching to scrutinize voter rolls. According to reporting, DOJ employees "have been clear that they are interested in a central, federal database of voter information." Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. TIMES, (Sept. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html. DOJ is coordinating in these unprecedented efforts with the federal Department of Homeland Security

---

[1] *See* Press Release, U.S. Dep't of Just., *Justice Department Sues Four States for Failure to Produce Voter Rolls* (Dec. 18, 2025), https://perma.cc/HHJ7-JWQQ; Press Release, U.S. Dep't of Just., *Justice Department Sues Four Additional States and One Locality for Failure to Comply with Federal Elections Laws* (Dec. 12, 2025), https://perma.cc/TQ5T-FB2A; Press Release, U.S. Dep't of Just., *Justice Department Sues Six Additional States for Failure to Provide Voter Registration Rolls* (Dec. 2, 2025), https://perma.cc/F5MD-NWHD; Press Release, U.S. Dep't of Just., *Justice Department Sues Six States for Failure to Provide Voter Registration Rolls* (Sept. 25, 2025), https://perma.cc/7J99-WGBA; Press Release, U.S. Dep't of Just., *Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls* (Sept. 16, 2025), https://perma.cc/M69P-YCVC.

("DHS"), according to reported statements from both agencies. *Id.* A recent article extensively quoted a lawyer who recently left DOJ's Civil Rights Division, describing the government's aims in this case and others like it:

> We were tasked with obtaining states' voter rolls, by suing them if necessary. Leadership said they had a DOGE person who could go through all the data and compare it to the Department of Homeland Security data and Social Security data. . . . I had never before told an opposing party, Hey, I want this information and I'm saying I want it for this reason, but I actually know it's going to be used for these other reasons. That was dishonest. It felt like a perversion of the role of the Civil Rights Division.

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. TIMES MAG. (Nov. 16, 2025), https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html.

According to additional reporting, these efforts are being conducted with the involvement of self-proclaimed "election integrity" advocates within and outside government who have previously sought to disenfranchise voters and overturn elections.[2] Such actors have previously sought to compel states to engage in aggressive purges of registered voters and have abused voter data to launch mass challenges against voters in other states. *See, e.g.*, *PA Fair Elections v. Pa. Dep't of State*, 337 A.3d 598, 600 n.1 (Pa. Commw. Ct. 2025) (determining that complaint brought by group affiliated with current DHS official Heather Honey challenging Pennsylvania's list

---

[2] *See* Alexandra Berzon & Nick Corasaniti, *Trump Empowers Election Deniers, Still Fixated on 2020 Grievances*, N.Y. TIMES, Oct. 22, 2025, https://www.nytimes.com/2025/10/22/us/politics/trump-election-deniers-voting-security.html (documenting "ascent" of election denier Honey); Matt Cohen, *DHS Said to Brief Cleta Mitchell's Group on Citizenship Checks for Voting*, DEMOCRACY DOCKET, June 12, 2025, https://www.democracydocket.com/news-alerts/dhs-said-to-brief-cleta-mitchells-anti-voting-group-on-checking-citizenship-for-voters/; Jude Joffe-Block & Miles Parks, *The Trump Administration Is Building a National Citizenship Data System*, NPR, June 29, 2025, https://www.npr.org/2025/06/29/nx-s1-5409608/citizenship-trump-privacy-voting-database (reporting that Mitchell had received a "full briefing" from federal officials).

maintenance practices was meritless).[3]

The federal government's actions also indicate that it may target specific groups of voters in its use of the requested data. In its letters to other states, DOJ also requested information focusing on vote by mail, history of felony convictions, and citizenship status.[4] The Administration has also confirmed that it was sharing the requested information with the DHS. Jonathan Shorman, DOJ is Sharing State Voter Roll Lists with Homeland Security, STATELINE (Sept. 12, 2025), https://stateline.org/2025/09/12/doj-is-sharing-state-voter-roll-lists-with-homeland-security. Meanwhile, DOJ has recently begun asking states to sign a "memorandum of understanding" regarding its requests for statewide voter files, attached to this motion. *See* Ex. 2 (proposed memorandum of understanding); Jonathan Shorman, *Trump's DOJ Offers States Confidential Deal to Remove Voters Flagged by Feds*, STATELINE (Dec. 18, 2025), https://stateline.org/2025/12/18/trumps-doj-offers-states-confidential-deal-to-wipe-voters-flagged-by-feds-as-ineligible/. The memorandum includes terms that would allow DOJ to identify supposedly ineligible voters using the data and to compel states to remove these persons from the voter rolls—both functions that federal law assigns to state elections officials, not federal ones, *see, e.g.*, 52 U.S.C. § 20507.

---

[3] *See* Carter Walker, *Efforts to Challenge Pennsylvania Voters' Mail Ballot Applications Fizzle*, SPOTLIGHT PA, Nov. 8, 2024, https://www.spotlightpa.org/news/2024/11/mail-ballot-application-challenges-pennsylvania-fair-elections/ (describing mass-challenges and noting connection to Honey and her organization "PA Fair Elections").

[4] *See, e.g.*, Br. in Supp. of Mot. to Intervene as Defs., Ex. 1, Letter from Maureen Riordan to Sec'y of State Al Schmidt (June 23, 2025), *United States v. Pennsylvania*, No. 25-cv-01481 (W.D. Pa. Oct. 9, 2025), Dkt. No. 37-1 (Pennsylvania); Mot. for Leave to File Mot. to Dismiss, Ex. A, Letter from Michael E. Gates to Sec'y of State Jocelyn Benson (July 21, 2025), *United States v. Benson*, No. 25-cv-01148 (W.D. Mich. Nov. 25, 2025), Dkt. No. 34-3 (Michigan).

### B.    Proposed Intervenors

Proposed Intervenor Common Cause is a nonpartisan organization committed to, *inter alia*, ensuring that all eligible Georgia voters register to vote and exercise their right of suffrage at each election. *See* Ex. 3, Decl. of Ga. State Dir. of Common Cause Rosario Palacios ("Palacios Decl.") ¶¶ 6–8. Common Cause expends significant resources conducting voter engagement and assistance efforts, including registering qualified people to vote, helping voters navigate the vote-by-mail process, encouraging participation, and assisting voters who face problems trying to vote. *Id.* ¶¶ 8, 10–11. The success of these efforts, especially with respect to voter registration, depend on voters' trust that, when they provide personal information to the State as part of the registration process, that information will not be abused, their privacy will be respected, and their right to participate will be honored. *See id.* ¶¶ 10–13.

Common Cause has over 15,000 members in Georgia. *See id.* ¶ 5. Those members include Georgia voters, whose personal data will be provided to the federal government if the United States prevails in this lawsuit. *See id.* ¶ 7. Common Cause's members in Georgia include voters whose identifying information is particularly important to keep private, for example, due to their status as victims of domestic violence. *See id.* ¶¶ 11–12; O.C.G.A. § 50-18-150 to -155 (establishing confidentiality program barring disclosure of participants' addresses, including among government entities). Common Cause's members also include voters who are at particular risk of being targeted by the DOJ's efforts to improperly remove voters from voter rolls, whether because they have a supposed "duplicate" record in the system, registered to vote by mail, have a felony conviction, and/or are naturalized citizens. *See* Palacios Decl. ¶¶ 12–13. One such voter is Proposed Intervenor Rosario Palacios, who is a naturalized citizen. *Id.* ¶ 17.

## ARGUMENT

## I.    MOVANTS ARE ENTITLED TO INTERVENE AS A MATTER OF RIGHT.

In the Eleventh Circuit, parties seeking to intervene as of right under Fed. R. Civ. P. 24(a) must show:

> (1) their application to intervene is timely; (2) they have an interest relating to the property or transaction which is the subject of the action; (3) they are so situated that disposition of the action, as a practical matter, may impede or impair their ability to protect that interest; and (4) their interest is represented inadequately by the existing parties to the suit.

*Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 695–96 (11th Cir. 2017) (brackets and citation omitted). "Once a party establishes all the prerequisites to intervention, the district court has no discretion to deny the motion." *Purcell v. BankAtlantic Fin. Corp.*, 85 F.3d 1508, 1512 (11th Cir. 1996). Because the Proposed Intervenors easily meet Rule 24(a)'s requirements, the Court should grant their intervention as a matter of right.

### A.    The Motion to Intervene Is Timely

"[T]imeliness depends on the circumstances of each case," and to determine whether a motion to intervene is timely, courts consider:

> (1) the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before petitioning for leave to intervene; (2) the extent of the prejudice that existing parties may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest; (3) the extent of the prejudice that the would-be intervenor may suffer if denied the opportunity to intervene; and (4) the existence of unusual circumstances weighing for or against a determination of timeliness.

*Comm'r, Ala. Dep't of Corrs. v. Advance Loc. Media, LLC*, 918 F.3d 1161, 1171 (11th Cir. 2019). "The requirement of timeliness must have accommodating flexibility toward both the court and the litigants if it is to be successfully employed to regulate intervention in the interest of justice." *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1259 (11th Cir. 2002).

This motion is indisputably timely. The United States filed this suit on December 18, 2025, and, upon receiving notice of the suit, the Proposed Intervenors immediately prepared this motion. *See Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*, 861 F.3d 1278, 1293–94 (11th Cir. 2017) (finding an abuse of discretion in treating a motion to intervene filed two weeks after the reason for intervention as untimely); *see, e.g.*, *Amerisure Mut. Ins. Co. v. Reeves Young, LLC*, No. 1:22-cv-02739-JPB, 2023 WL 5655531, at *3 (N.D. Ga. Aug. 31, 2023) (finding a period of "approximately two months" between learning of the action and filing a motion to intervene "reasonable" for purposes of timeliness); *Ohio Sec. Ins. Co. v. Newsome*, 2015 WL 1419341, at *6 (S.D. Ga. Mar. 27, 2015) ("[C]ourts have routinely found that a several month delay does not render a motion to intervene untimely." (quotation marks omitted)). Secretary Raffensperger has not yet filed an answer or a motion to dismiss (and, as of the date of this motion, seemingly has not yet been served), meaning that this litigation is at its earliest stages. *See U.S. Army Corps of Eng'rs*, 302 F.3d at 1259–60 (finding it relevant that "the court had yet to take significant action"); *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989) (same, with the fact that the motion came "before any discovery had begun"); *Greene v. Raffensperger*, No. 22-cv-1294-AT, 2022 WL 1045967, at *2 (N.D. Ga. Apr. 7, 2022) (granting motion to intervene filed one day after the complaint).

### B.    Proposed Intervenors Have Concrete Interests in the Underlying Litigation

The Proposed Intervenors have a "sufficient"—*i.e.*, a "significantly protectable"—interest in the litigation. *E.g.*, *Donaldson v. United States*, 400 U.S. 517, 531 (1971).[5] Here, Proposed Intervenors have multiple, independently sufficient interests that support intervention as of right.

---

[5] The interest requirement is distinct from Article III standing and Proposed Intervenors would in any case not need to separately establish Article III standing because they seek to intervene as *defendants*, not plaintiffs, and Secretary Raffensperger will presumably seek the same ultimate

*First*, the Proposed Intervenors have a right to privacy in the sensitive voter data the United States seeks. The August 14 Letter demanded that Secretary Raffensperger turn over voters' full name, date of birth, residential address, driver's license number, and their SSN4s. August 14 Letter at 1. This type of sensitive personal information is protected from disclosure by Georgia law. *See* O.C.G.A. § 21-2-225(b) (protecting voter birth month and date, Social Security number, driver's license numbers, and other information from public disclosure). It is also protected by federal law, which prohibits the creation of a national voter database of the type that the United States is reportedly seeking to assemble with the data it seeks. *See* 5 U.S.C. § 552a(e)(7) (provision of the federal Privacy Act prohibiting the creation or maintenance of any database "describing how any individual exercises rights guaranteed by the First Amendment," which necessarily includes exercising the right to vote). These privacy interests are significant and inure to each of the individual voter Proposed Intervenors as well as to Common Cause's members who are Georgia voters. Palacios Decl. ¶¶ 12–13, 16, 19.

*Second*, and based on DOJ's similar data requests to other States, the data DOJ seeks is likely to be used to challenge the voter registration of certain Georgians, including voters with felony convictions; voters who have moved within Georgia or left the state and then returned to Georgia (and might be inaccurately deemed "duplicate" voters or "out-of-state" voters due to a shoddy matching system); voters who are naturalized citizens (who may have indicated they were not a citizen on a government form prior to naturalization); and voters who vote by mail. *See supra* 5 & n. 4. Common Cause's members, especially those most likely to be targeted using the data sought, as well as Ms. Palacios, have a concrete interest in not being disenfranchised by so-called

outcome as Proposed Intervenors, namely, dismissal or denial of the claims brought by the United States. *See Town of Chester v. Laroe Estates, Inc*., 581 U.S. 433, 439–40 (2017).

"election integrity measures." *See Ala. Coal. for Immigrant Just. v. Allen*, No. 2:24-cv-1254-AMM, 2024 WL 4510476, at *1 (N.D. Ala. Oct. 16, 2024) (noting that a state purge program targeted at noncitizens "included thousands of United States citizens (in addition to far fewer noncitizens . . .)"); *Selcuk v. Pate*, No. 4:24-cv-00390-SHL-HCA, 2024 WL 5054961, at *8–9 (S.D. Iowa Nov. 3, 2024) (noting a state purge program, based on database-matching, which purportedly targeted alleged noncitizens that flagged 2,176 voters, of whom at least 88% were citizens eligible to vote, many of them naturalized citizens).

*Third*, Common Cause as an organization has a protectable interest at stake because its core mission as an organization will be harmed if the relief the DOJ seeks is granted. For one, Common Cause's voter registration activities will be harmed because voters will be chilled from registering and participating if they believe their sensitive personal data will be provided to the federal government (and ingested into an unauthorized and illegal national database). *See* Palacios Decl. ¶¶ 12–13; *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1344–45 (N.D. Ga. 2016) (noting how the risk of disclosure of sensitive voter information could dissuade individuals from registering to vote). Mass challenges by "election integrity" activists now wielding the power of the federal government will force Common Cause to redirect resources to mitigating the attempted disenfranchisement of existing voters, away from core activities of registering voters and engaging new voters in the democratic process. Palacios Decl. ¶ 13. Courts in the Eleventh Circuit have consistently held that voters and non-partisan public interest organizations like Proposed Intervenors should be granted intervention in election-related cases, demonstrating the significantly protectable interests such organizations have in safeguarding the electoral process. *See, e.g.*, *Meek v. Metro. Dade Cnty., Fla.*, 985 F.2d 1471, 1475 (11th Cir. 1993) (reversing the denial of intervention as of right by voters affected by at-large districting scheme), *abrogated in*

*part on other grounds*, *Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324, 1332 (11th Cir. 2007); *Greene*, 2022 WL 1045967, at *2–3 (allowing voters to intervene in a candidate's suit against a state statute allowing challenges to a candidate's qualifications); *Bellitto v. Snipes*, No. 16-cv-61474-BLOOM/Valle, 2016 WL 5118568, at *2–3 (S.D. Fla. Sept. 21, 2016) (granting union's motion to intervene as of right on behalf of its members in NVRA case seeking to compel list maintenance). This case is no exception. Indeed, in a similar case brought by the Department of Justice challenging New Mexico's refusal to turn over sensitive voter information, Common Cause was granted intervention. *See* Minute Order, *United States v. Oliver*, No. 25-cv-01193 (D.N.M. Dec. 19, 2025), Dkt. No. 25.

### C.    Disposition of this Case May Threaten the Interests of Proposed Intervenors

The United States' requested relief directly affects the interests of Proposed Intervenors. "Under circuit precedent, all that is required under Rule 24(a)(2) is that the would-be intervener be practically disadvantaged by his exclusion from the proceedings." *Salvors, Inc.*, 861 F.3d at 1295 (quotation marks and citation omitted).

The threat here is significant: the United States proposes to summarily dispose of voters' interests by obtaining an immediate order compelling the disclosure of private voter data, bypassing the normal civil litigation process and any discovery into "the basis and the purpose" of their request, 52 U.S.C. § 20703. *See* U.S. Mot. to Compel Production of Records, Dkt. No. 2. This attempt to secure the irrevocable disclosure of private voter data to actors who may misuse it in any number of ways, including by mass-challenging or otherwise attacking Georgians' right to vote, at the very beginning of the case militates strongly in favor of allowing Proposed Intervenors into the case to represent voters' interests now.

###### D.  Secretary Raffensperger's Interests Are Different from Those of Proposed Intervenors.

Even if the interests of a proposed intervenor and an existing party "are similar," there is no guarantee their "approaches to the litigation will be the same." *Chiles*, 865 F.2d at 1214. A proposed intervenor "need only show that . . . representation *may* be inadequate" and "the burden for making such a showing is minimal." *Stone v. First Union Corp.*, 371 F.3d 1305, 1311 (11th Cir. 2004) (emphasis added and internal quotation marks removed). Proposed Intervenors meet their minimal burden here.

As a government official, Secretary Raffensperger has a generalized interest in carrying out his office's legal obligations under federal and state laws, and in minimizing burdens on governmental employees and resources. He also must consider broader public policy concerns, in particular the need to maintain working relationships with federal officials. In contrast, Proposed Intervenors will add a distinct, particular interest to this litigation, making the existing representation inadequate: the perspective of an organization whose mission is to ensure access to the ballot and an individual voter whose own rights are at risk.

Circuit law is clear that intervention should be permitted in these circumstances. In *Meek v. Metropolitan Dade County*, the district court denied individual voters intervention in a Voting Rights Act challenge to a county's system of at-large elections. 985 F.2d at 1474–75, *abrogated in part on other grounds*, *Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324, 1332 (11th Cir. 2007). The Circuit reversed, reasoning that the voters' interests were not adequately represented: while the voters and the county had the same ultimate goal in the litigation, the county "was required to balance a range of interests," including "the overall fairness of the election system . . . , the expense of litigation to defend the existing system, and the social and political divisiveness of the election issue" as well as "the County Commissioners['] . . . own desires to remain politically popular and

effective leaders." *Id.* at 1478. These extra-legal considerations can motivate elections officials to pursue a settlement that could jeopardize the private information of Proposed Intervenors or of their members. *See Clark v. Putnam Cnty.*, 168 F.3d 458, 462 (11th Cir. 1999) (allowing individual voters to intervene as defendants to defend an election system, because the voters "intend[ed] to pursue their favored result with greater zeal than the county commissioners," whose "greater willingness to compromise can impede [them] from adequately representing the interests of a nonparty"); *cf. Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 198 (2022) (reversing denial of motion to intervene where North Carolina Board of Elections was "represented by an attorney general who, though no doubt a vigorous advocate for his clients' interests, is also an elected official who may feel allegiance to the voting public or share the Board's administrative concerns").

Here, there may be arguments and issues that the Secretary Raffensperger may not raise that are critical to Proposed Intervenors. For example, individual voters like Ms. Palacios have a more direct injury than states under the Privacy Act for misuse of their personal data, especially given that the Privacy Act grants individuals an express right to bring suit. See 5 U.S.C. § 552a(g)(1)(D) ("Whenever an agency fails to comply with any other provision of this section . . . in such a way as to have an adverse effect on an individual, the individual may bring a civil action against the agency"). These diverging perspectives—between the government's general need to balance various considerations and the Proposed Intervenors' personal and particular interest in the privacy of the sought data—present a classic scenario supporting intervention. *See, e.g.*, *Am. Farm Bureau Fed'n v. EPA*, 278 F.R.D. 98, 110–11 (M.D. Pa. 2011) (allowing public interest groups to intervene, "[b]ecause the EPA represents the broad public interest . . . not only the interests of the public interest groups"); *Kobach v U.S. Election Assistance Comm'n*, No. 13-cv-

04095, 2013 WL 6511874, at *4 (D. Kan. Dec. 12, 2013) (holding that a voting rights organization's interests could reasonably diverge from those government defendants).

Moreover, the United States requests the data at issue pursuant to purported public disclosure provisions in the Civil Rights Act of 1960, but any requests pursuant to those provisions must come with "a statement of the basis and the purpose therefor." 52 U.S.C. § 20703. The motivations and purposes for DOJ's requests, including whether they will be used to create an unauthorized national database as has been reported, and whether they are a prelude to mass challenges based on faulty data-matching techniques, are highly relevant and potentially dispositive here. Proposed Intervenors' unique interest in pursuing this highly relevant line of factual inquiry and argument is further strong grounds to support intervention.

## II.    IN THE ALTERNATIVE, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION

If the Court declines to grant intervention as of right, it should grant permissive intervention under Federal Rule of Civil Procedure 24(b). The decision to allow permissive intervention "is wholly discretionary." *Purcell*, 85 F.3d at 1513 (internal quotation marks omitted). To guide this discretion, courts ask "whether 'the applicant's claim or defense and the main action have a common question of law or fact,'" and whether there is any "potential undue delay or prejudice to the existing parties." *See United States v. Houston Cnty.*, No. 5:25-cv-25, 2025 WL 694458, at *2 (M.D. Ga. Mar. 4, 2025) (quoting Fed. R. Civ. P. 24(b)). Because Proposed Intervenors may meaningfully contribute to the development of factual and legal issues in this case, permissive intervention is appropriate.

As discussed above, this motion is timely, there will be no delay or prejudice to the adjudication of the existing parties' rights, and their interests are not adequately represented by any of the existing parties. Proposed Intervenors' defense goes directly to the issues already

presented in this lawsuit, such as (1) whether federal law permits the United States to force Georgia to give it the personal information sought; (2) whether federal and state legal protections for individual privacy prohibit the disclosure of that information; and (3) whether the United States' motivations and its potential uses for the data sought are permissible. Proposed Intervenors' distinct perspective on the legal and factual issues before the Court will thus complement or amplify Defendant's arguments and "could shed a different light on issues before this Court," aiding in their resolution. *See id.* at *2 (granting permissive intervention to individual voters in a suit between the United States and a local government). This Court should grant permissive intervention.

## CONCLUSION

For the reasons stated above, the Court should grant the Motion to Intervene as Defendants.

Dated: December 23, 2025

Respectfully submitted,

/s/Cory Isaacson

| | |
|---|---|
| William Hughes* | Cory Isaacson, Bar No. 983797 |
| Theresa J. Lee* | Akiva Freidlin, Bar No. 692290 |
| Jonathan Topaz* | Briana Futch, Bar No. 007314 |
| Sophia Lin Lakin* | AMERICAN CIVIL LIBERTIES UNION OF GEORGIA |
| AMERICAN CIVIL LIBERTIES UNION | P.O. Box 570738 |
| FOUNDATION | Atlanta, GA 30357 |
| 125 Broad Street, 18th Floor | cisaacson@acluga.org |
| New York, NY 10004 | afreidlin@acluga.org |
| whughes@aclu.org | bfutch@acluga.org |
| tlee@aclu.org | |
| jtopaz@aclu.org | Bradley E. Heard, Bar. No. 342209 |
| slakin@aclu.org | Jack Genberg, Bar No. 144076 |
| | Ajay Saini* |
| Carlos A. Andino* | SOUTHERN POVERTY LAW CENTER |
| SOUTHERN POVERTY LAW CENTER | 1101 17th Street NW, Suite 550 |
| 150 E. Ponce de Leon Ave., Suite 340 | Washington, DC 20036 |
| Decatur, GA 30030 | bradley.heard@splcenter.org |
| carlos.andino@splcenter.org | jack.genberg@splcenter.org |
| | ajay.saini@splcenter.org |

*application for admission pro hac vice forthcoming*

15

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 23, 2025, a true and correct copy of the foregoing document was served via the Court's ECF system on all counsel of record and by email on counsel for Defendant.

/s/_____Cory Isaacson_____