# Exhibit 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | No. 5:25-cv-548 (CAR) |
| BRAD RAFFENSPERGER, in his official capacity as Secretary of State for the State of Georgia, | |
| Defendant. | |

## MOTION TO DISMISS OF PROPOSED INTERVENOR-DEFENDANTS COMMON CAUSE AND ROSARIO PALACIOS

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION .......................................................................................................... 1

BACKGROUND ............................................................................................................ 2

ARGUMENT ................................................................................................................. 5

   I.  THIS COURT LACKS JURISDICTION UNDER THE CRA'S VENUE PROVISION. .................... 5

   II. THE UNITED STATES' DEMANDS EXCEED THE STATUTORY AUTHORITY OF THE CRA AND ARE CONTRARY TO LAW. ................................................................................. 6

      A. The United States' Demand Fails to Meet the CRA's Requirements. ................................. 7

      B.  Any Records Disclosed Under the CRA Should Be Redacted to Protect the Constitutional Rights of the Voter, so the Court Must Deny the United States' Request...................................... 11

   III. THE UNITED STATES IS NOT ENTITLED TO SUMMARY DISPOSITION AND ITS MOTION TO COMPEL SHOULD BE DENIED. ................................................................................. 13

CONCLUSION ............................................................................................................. 17

# TABLE OF AUTHORITIES

## Cases

*American Dental Association v. Cigna Corp.*,
    605 F.3d 1283 (11th Cir. 2010) ........................................................................................4

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..........................................................................................................4

*Baker v. City of Madison, Alabama*
    67 F.4th 1268 (11th Cir. 2023) .........................................................................................4

*Becker v. United States*,
    451 U.S. 1306 (1981) ......................................................................................................15

*Burban v. City of Neptune Beach, Florida*,
    920 F.3d 1274 (11th Cir. 2019) ......................................................................................11

*Coleman v. Kennedy*,
    313 F.2d 867 (5th Cir. 1963). ...........................................................................................8

*Corner Post, Inc. v. Board of Governors of the Federal Reserve System*,
    603 U.S. 799 (2024) ........................................................................................................10

*Crook v. South Carolina Election Commission*,
    No. 2025-CP-40-06539 (S.C. Ct. C.P. Oct. 1, 2025) .....................................................13

*Federal Deposit Insurance Corporation v. Wentz*,
    55 F.3d 905 (3d Cir. 1995) ................................................................................................9

*Gill v. Judd*,
    941 F.3d 504 (11th Cir. 2019) ..........................................................................................6

*In re Coleman*,
    208 F. Supp. 199 (S.D. Miss. 1962), .....................................................................8, 12, 14

*Kennedy v. Lynd*,
    306 F.2d 222 (5th Cir. 1962). .............................................................................8, 13, 14, 16

*Niz-Chavez v. Garland*,
    593 U.S. 155 (2021) ........................................................................................................10

*Project Vote/Voting for America v. Long*,
    682 F.3d 331 (4th Cir. 2012) ......................................................................................12, 13

*Public Interest Legal Foundation, Inc. v. Benson*,
    136 F.4th 613 (6th Cir. 2025) ...........................................................................................8

*Public Interest Legal Foundation, Inc. v. Bellows*,
  92 F.4th 36 (1st Cir. 2024) .................................................................................................. 11, 13

*Public Interest Legal Foundation, Inc. v. Dahlstrom*,
  673 F. Supp. 3d 1004 (D. Alaska 2023) ..................................................................................... 12

*Public Interest Legal Foundation, Inc. v. Matthews*,
  589 F. Supp. 3d 932 (C.D. Ill. 2022) ........................................................................................ 12

*Public Interest Legal Foundation, Inc. v. North Carolina State Board of Elections*,
  996 F.3d 257 (4th Cir. 2021) ..................................................................................................... 12

*Public Interest Legal Foundation, Inc., v. Matthews*,
  No. 20-CV-3190, 2022 WL 1174099 (C.D. Ill. Apr. 20, 2022) ................................................ 12

*Sheetz v. County of El Dorado*,
  601 U.S. 267 (2024) .................................................................................................................... 13

*Smith v. Pefanis*,
  2008 WL 11333335 (N.D. Ga. Oct. 30, 2008) ............................................................................. 9

*State of Alabama ex rel. Gallion v. Rogers*,
  187 F. Supp. 848 (M.D. Ala. 1960) .............................................................................................. 1

*Tellabs, Inc. v. Makor Issues & Ltd.*,
  551 U.S. 308 (2007) ...................................................................................................................... 5

*United States v. Powell*,
  379 U.S. 48 (1964) .................................................................................................................. 9, 15

*United States v. Robinson*,
  583 F.3d 1292 (11th Cir. 2009) ............................................................................................... 5, 6

**Statutes**

5 U.S.C. § 552a(e)(7) ...................................................................................................................... 10

18 U.S.C. § 2721 ............................................................................................................................. 16

26 U.S.C. § 7604(a) ......................................................................................................................... 15

28 U.S.C. § 1391(b) ........................................................................................................................... 5

44 U.S.C. § 3351 ............................................................................................................................. 16

52 U.S.C. § 20501 ........................................................................................................................ 1, 10

52 U.S.C. § 20507 ........................................................................................................................ 8, 11

52 U.S.C. § 20507(a)(4) ............................................................................................................... 8, 10

52 U.S.C. § 20507(c)(1) ............................................................................................. 8

52 U.S.C. § 20701 .................................................................................................. 1, 7

52 U.S.C. § 20703 ....................................................................................... 2, 6, 7, 11, 15

52 U.S.C. § 20705 ........................................................................................... 2, 5, 16

52 U.S.C. § 20901 ...................................................................................................... 1

52 U.S.C. § 21083(a)(2)(A) ...................................................................................... 8

52 U.S.C. § 21083(a)(4)(A) .................................................................................... 10

52 U.S.C. § 21085 ................................................................................................ 8, 10

E-Government Act of 2002,
    Pub. L. No. 107-347, 116 Stat. 2899 (2002) ........................................................ 16

Privacy Act of 1974,
    Pub. L. No. 93-579, 88 Stat. 1896 (1974) ............................................................ 16

## Other Authorities

"Federal Judicial Circuits: Fifth Circuit,"
    FEDERAL JUDICIAL CENTER, https://perma.cc/9MSD-EFRB (last visited Dec. 20, 2025) .................... 14

Devlin Barrett & Nick Corasaniti,
    *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. TIMES, Sept. 9, 2025,
    https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html. ...................... 3, 15

Emily Bazelon & Rachel Poser,
    *The Unraveling of the Justice Department*, N.Y. TIMES MAG., Nov. 16, 2025,
    https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-
    attorneys.html ...................................................................................................... 4, 15

Georgia Secretary of State,
    Election Data Hub (last accessed Dec. 20, 2025), https://sos.ga.gov/election-data-hub ........................ 5

Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry,
    *Tracker of Justice Department Requests for Voter Information*, Brennan  for  (updated Dec. 19, 2025),
    https://perma.cc/A4A4-737Z ........................................................................................ 2

United States Department of Justice, Civil Rights Division,
    *Federal Law Constraints on Post-Election "Audits"* (Jul. 28, 2021), https://perma.cc/74CP-58EH ....... 1

Press Release,  United States Department of Justice,
    *United States Announces Settlement with Kentucky Ensuring Compliance with Voter Registration List
    Maintenance Requirements* (July 5, 2018) https://perma.cc/G2EZUUA5 ................................ 9

Steven F. Lawson,
  *Black Ballots: Voting Rights in the South, 1944-1969* (1976) .............................................................. 14

**Rules**

Federal Rules of Civil Procedure 12(b)(6) ...................................................................................... 4

**Reports**

H.R. Report No. 86-956 (1959) ........................................................................................................ 6

## INTRODUCTION

In this action, the United States seeks to compel the disclosure of sensitive personal voter data to which it is not entitled, using civil rights laws as a pretext. This effort fails three times over: because the United States has failed to disclose the basis and purpose of its request for the data and because it brought suit in the wrong venue, the suit should be dismissed. The United States' attempt to summarily dispose of this case via an improper motion to compel should also be rejected.

Congress has repeatedly legislated to protect the franchise, including through Title III of the Civil Rights Act of 1960 ("CRA"), 52 U.S.C. § 20701 *et seq.*, as well as the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 *et seq.*, and the Help America Vote Act ("HAVA"), 52 U.S.C. § 20901 *et seq.* The very purpose of these statutes is to ensure that all eligible Americans—especially racial minorities and voters with disabilities—can participate in free, fair, and secure elections. As DOJ itself has explained, Title III of the CRA, the election records provision invoked in the Complaint here, was designed to "secure a more effective protection of the right to vote." U.S. Dep't of Just., Civ. Rts. Div., *Federal Law Constraints on Post-Election "Audits"* (Jul. 28, 2021), https://perma.cc/74CP-58EH (citing *State of Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960), and H.R. Rep. No. 86-956 (1959)).

The federal government's demand for Georgia's unredacted voter file—which contains sensitive personal information including driver's license numbers and Social Security numbers from millions of Georgians—undermines the CRA's core purposes by *decreasing* access to the franchise and is contrary to law. Releasing voter records without redaction and for purposes far afield from protecting access to the ballot would deter voter participation and undermine the right to vote. Especially so here, where the United States' *actual* reason for the data demand, which it never disclosed in its request but which has been widely reported, is to create an unauthorized and

unlawful national voter database, and to use this illicit tool to illegally target and challenge voters.

The United States has not even met the requirements of the CRA, the very statute it invokes, which mandates the government fully and accurately set forth "the basis and the purpose" for its data request. 52 U.S.C. § 20703. Nor has it complied with the CRA's unambiguous venue provisions. *Id.* § 20705. Instead, it claims it is entitled to a summary disposition, without standard procedural safeguards. The Court should deny Plaintiff's motion to compel and dismiss its complaint.

## BACKGROUND

Beginning in May 2025, the DOJ began sending letters to election officials in at least forty states, making escalating demands for the production of voter registration databases, with plans to gather data from all fifty states. *See* Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (updated Dec. 19, 2025), https://perma.cc/A4A4-737Z.

On August 7, 2025, the DOJ sent a letter to the Georgia Secretary of State's Office requesting the statewide voter registration list within fourteen days, claiming it needed the list "for purposes of enforcing the NVRA and [HAVA]." Ex. 1, Pl.'s Mem. Of L., Letter from Michael E. Gates to Sec'y of State Brad Raffensperger dated Aug. 7, 2025, Dkt. No. 2-2 at 2 ("August 7 Letter"). On August 14, the DOJ sent a second letter, clarifying its demand—the requested list "should contain *all fields*" including full name, date of birth, residential address, driver's license number, and the last four digits of the registrant's Social Security number. Ex. 2, Pl.'s Mem. Of L., Letter from Harmeet K. Dhillon to Sec'y of State Brad Raffensperger dated Aug. 14, 2025, Dkt. No. 2-2 at 6 ("August 14 Letter") (emphasis in original). This letter stated—without any explanation or authority—that because the DOJ has enforcement power under the NVRA and

HAVA, it had the power to "conduct an independent review of each state's [voter] list," and further that "[a]ny statewide prohibitions"—presumably on releasing sensitive information—"are clearly preempted by federal law." *Id.* at 7 n.2. On December 8, 2025, the Secretary of State's Office provided Georgia's complete list of registered voters to the DOJ. *See* Ex. 3, Pl.'s Mem. Of L., Letter from Charlene S. McGowan to Harmeet K. Dhillon dated Dec. 8, 2025, Dkt. No. 2-2 at 13 ("Dec. 8 Letter"). In accordance with state law prohibiting the disclosure of sensitive voter information, that list did not include voters' full date of birth, driver's license number, or Social Security number. *Id.* (citing O.C.G.A. § 21-2-225(b)). In response, the United States brought this lawsuit, one of at least twenty-two similar suits in states across the country.

The federal government's request does not appear to relate to voter roll list maintenance under the NVRA, 52 U.S.C. § 20507, the statute invoked in the August 7 Letter. According to reporting, federal employees "have been clear that they are interested in a central, federal database of voter information." Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. TIMES, Sept. 9, 2025, https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html. One recent article extensively quoted a lawyer who recently left DOJ's Civil Rights Division, describing the Administration's aims in these cases:

> We were tasked with obtaining states' voter rolls, by suing them if necessary. Leadership said they had a DOGE person who could go through all the data and compare it to the Department of Homeland Security data and Social Security data . . . . I had never before told an opposing party, Hey, I want this information and I'm saying I want it for this reason, but I actually know it's going to be used for these other reasons. That was dishonest. It felt like a perversion of the role of the Civil Rights Division.

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. TIMES MAG., Nov. 16, 2025, https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-

department-staff-attorneys.html. Additional reporting reveals self-proclaimed "election integrity" advocates who have previously sought to disenfranchise voters and overturn elections are involved in these efforts. *See* Mot. to Intervene as Defs. at 4–5 & nn. 2 & 3. In its letters to other states, DOJ also requested information focusing on vote by mail, history of felony convictions, and citizenship status.[1]

## LEGAL STANDARD

A court must dismiss a complaint if, accepting all well-pleaded factual allegations as true, it does not "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court need not accept a complaint's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor can "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," survive a motion to dismiss. *Id*. at 678–79. "When plaintiffs have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (internal quotation marks omitted). In assessing a complaint, courts can consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Baker v. City of Madison, Ala.*, 67 F.4th 1268, 1276 (11th Cir. 2023) (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)).

---

[1] *See, e.g.*, Br. in Supp. of Mot. to Intervene as Defs., Ex. 1, Letter from Maureen Riordan to Sec'y of State Al Schmidt (June 23, 2025), *United States v. Pennsylvania*, No. 25-cv-01481 (W.D. Pa. Oct. 9, 2025), Dkt. No. 37-1 (Pennsylvania); Mot. for Leave to File Mot. to Dismiss, Ex. A, Letter from Michael E. Gates to Sec'y of State Jocelyn Benson (July 21, 2025), *United States v. Benson*, No. 25-cv-01148 (W.D. Mich. Nov. 25, 2025), Dkt. No. 34-3 (Michigan); Decl. of Thomas H. Castelli in Supp. of State Defs.' Mot. to Dismiss, Exhibit No. 1, Letter from Michael E. Gates to Sec'y of State Tobias Read (July 16, 2025), *United States v. Oregon*, No. 25-cv-01666 (D. Or. Nov. 17, 2025), Dkt. No. 33-1 (Oregon); Decl. of Malcolm A. Brudigam in Supp. of Defs.' Mot. to Dismiss, Exhibit No. 1, Letter from Michael E. Gates to Sec'y of State Shirley Weber (July 10, 2025), *United States v. Weber*, No. 25-cv-09149 (C.D. Cal. Nov. 7, 2025), Dkt. No. 37-2 (California).

**ARGUMENT**

## I.    THIS COURT LACKS JURISDICTION UNDER THE CRA'S VENUE PROVISION.

The United States' demand fails out of the gate because it has sued in the wrong court. Jurisdiction over claims brought under Title III exists in two places: the district "in which a demand is made" and the one "in which a record or paper so demanded is located." 52 U.S.C. § 20705. Neither of those is the Middle District of Georgia, so this Court lacks jurisdiction and the United States' suit should be dismissed.

The DOJ sent the August 7 and August 14 Letters from Washington, D.C. to the Secretary of State's Atlanta office. *See* August 7 Letter at 1, 3; August 14 Letter at 1, 3. The District "in which a demand [was] made" is therefore the Northern District of Georgia (and perhaps the District of the District of Columbia). Secretary Raffensperger's office responded, providing the publicly-available voter registration list and linking to the State's Election Data Hub—which bears an Atlanta address. *See* Dec. 8 Letter at 4 & n.2 (directing the DOJ to Ga. Sec'y of State, Election Data Hub (last accessed Dec. 22, 2025), https://sos.ga.gov/election-data-hub). To the extent there is any indication in the record, the records the DOJ demands are located in the Northern District of Georgia. Indeed, there is no indication of anything relevant under Title III's venue provision that would make venue appropriate in this District.

Instead, the United States claims in its Complaint that venue is proper under 28 U.S.C. § 1391(b), the general venue statute. Compl. ¶ 6. This ignores the CRA's more-specific venue provision that creates jurisdiction in a different set of districts than § 1391(b). *See* 52 U.S.C. § 20705. "Where two statutes are related to the same subject and embrace the same subject matter, a specific or particular provision is controlling over a general provision." *United States v. Robinson*, 583 F.3d 1292, 1296 (11th Cir. 2009) (internal quotation marks omitted). The Complaint

states "a substantial part of the events or omissions giving rise to the United States' claims occurred in this District, and the Defendant is located in and conducts election administration activities in this District." Compl. ¶ 6. As to the first statement, nothing in the Complaint explains what events or omissions occurred in this District and the United States' own filings suggest they took place elsewhere, as discussed. *Cf. Gill v. Judd*, 941 F.3d 504, 514 (11th Cir. 2019) ("[W]hen exhibits attached to a complaint contradict the general and conclusory allegations of the pleading, the exhibits govern." (internal quotation marks omitted)). As to the second, the Defendant's election administration activities are irrelevant under the CRA's venue provision.

Venue is not appropriate in this Court and this suit should be dismissed for lack of jurisdiction.

## II.    THE UNITED STATES' DEMANDS EXCEED THE STATUTORY AUTHORITY OF THE CRA AND ARE CONTRARY TO LAW.

The United States' demand for Georgia's full, unredacted voter file exceeds its statutory authority under the CRA. Against the backdrop of the turmoil of the Jim Crow era, Congress enacted the CRA, including the public records provisions in Title III, to facilitate investigations of civil rights violations preventing eligible citizens from voting due to discrimination. H.R. Rep. No. 86-956 at 7 (1959) (indicating the purpose of Title III "is to provide a more effective protection of the right of all qualified citizens to vote without discrimination on account of race"). But the Attorney General's access to these records is not unbounded. If the Attorney General makes a demand for records, she must provide "a statement of the basis and the purpose therefor." 52 U.S.C. § 20703.

The records request here is contrary to the CRA for at least two distinct reasons. *First*, in making this sweeping demand for Georgia's full and unredacted state voter registration list, the United States fails to offer a statutorily sufficient statement of "the basis and the purpose" in

support of its records requests. *Second*, turning over unredacted records is contrary to the CRA's intent, which is to protect the right to vote. The privacy and constitutional rights of Georgia voters are paramount and invoking the CRA as a basis to invade those rights is a distortion of what the CRA was created to do. Plaintiff is thus not entitled to its requested relief.

### A. The United States' Demand Fails to Meet the CRA's Requirements.

Title III of the CRA sets out requirements regarding federal election records, including a requirement in Section 301 for officers of elections to "retain and preserve, for a period of twenty-two months from the date of any" federal election, "all records and papers which come into [their] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election," with certain exceptions regarding delivery and designation of custodians. 52 U.S.C. § 20701. Section 303 requires that "[a]ny record or paper" retained and preserved under Section 301 "shall, upon demand in writing by the Attorney General or [her] representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or [her] representative." *Id*. § 20703. "This demand shall contain a statement of *the basis and the purpose therefor*." *Id*. (emphasis added).

The federal government's requests fail to provide "a statement of the basis and the purpose" sufficient to support disclosure of the unredacted voter file. *Id*. The Complaint offers only the conclusory allegation: "The written demand 'contain[ed] a statement of the basis and the purpose therefor.'" Compl. ¶ 27 (citation omitted). But neither the Complaint nor the DOJ's August 14 Letter that invoked the CRA supply a "basis" for why the United States believes Georgia's list maintenance procedures might violate the NVRA or HAVA. *Id*. ¶¶ 19–25; August 14 Letter. Neither the Complaint nor the August 14 Letter alleges any evidence of anomalies or anything amiss with Georgia's list maintenance. *See id.*

Contemporaneous case law immediately following Title III's enactment shows that the required "basis" is an explanation of why the Attorney General believes there is a violation of federal civil rights law and the "purpose" is an explanation of how the requested records would help determine if there is a violation. *Kennedy v. Lynd*, 306 F.2d 222, 229 n.6 (5th Cir. 1962). Indeed, "basis" and "purpose" under Title III have consistently been treated as distinct concepts. *See id.*; *In re Coleman*, 208 F. Supp. 199, 199–200 (S.D. Miss. 1962), *aff'd sub nom.*, *Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963).

Even if the United States had provided a proper "basis" for its demand—and it did not—it fails to explain any connection between its purported "purpose" and the request for the full and unredacted voter file. It does not explain why unredacted voter files are necessary to determine whether Georgia has "conduct[ed] a general program that makes a reasonable effort to remove the names of ineligible voters" by virtue of "death" or "a change in the residence of the registrant," 52 U.S.C. § 20507; Compl. ¶ 12. The NVRA and HAVA both leave the mechanisms for conducting list maintenance within a state's discretion. *See* 52 U.S.C. § 20507(a)(4), (c)(1); *id.* § 21083(a)(2)(A); *id.* § 21085. The procedures carried out by a state or locality establish its compliance; the unredacted voter file does not. Even were the United States to use voter file data to identify voters who had moved or died on Georgia's voter list at a single point in time, that would not amount to Georgia failing to comply with the "reasonable effort" required by the NVRA or HAVA. *See, e.g.*, *Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 624–27 (6th Cir. 2025) (describing a "reasonable effort" as "a serious attempt that is rational and sensible").

The basis and purpose requirements are critical safeguards that prevent the statute from being used as a fishing expedition to obtain records for reasons that are speculative, unrelated to the CRA's aims, or otherwise impermissible or contrary to law. The statutory basis and purpose

requirements are not perfunctory but require a specific statement as to the reason for requesting the information and how that information will aid in the investigatory analysis. In the context of administrative subpoenas, and specifically in assessing an analogous power by which federal agencies obtain records in service of investigations, courts have found that the test of judicial enforcement of such subpoenas includes an evaluation of whether the investigation is "conducted pursuant to a legitimate purpose," *United States v. Powell*, 379 U.S. 48, 57 (1964), and that such subpoenas should not be "overly broad" as to constitute "a fishing expedition," *Smith v. Pefanis*, 2008 WL 11333335, at *3 (N.D. Ga. Oct. 30, 2008) (internal quotation marks omitted). Such purpose requirements ensure that the information sought is relevant to the inquiry and not unduly burdensome. *See, e.g.*, *F.D.I.C. v. Wentz*, 55 F.3d 905, 908 (3d Cir. 1995) (reciting requirements for investigation via administrative subpoena).

As such, even if some other voting records or some portion of the voter file were necessary to investigate Georgia's NVRA list maintenance compliance, the United States has not provided any justification for why the full unredacted voter file is necessary. For decades, DOJ has neither sought nor required a full, unredacted voter file in its NVRA compliance investigations. *See, e.g.*, Press Release, U.S. Dep't of Just., *United States Announces Settlement with Kentucky Ensuring Compliance with Voter Registration List Maintenance Requirements* (July 5, 2018) https://perma.cc/G2EZUUA5 (describing letters to all 44 states covered by the NVRA with requests for list maintenance information, but without demanding voter files). The United States' failure to articulate the basis and the purpose for its demand is another reason it is insufficient as a matter of law.

Title III's basis and purpose requirement is especially important here, where public reporting and public, judicially noticeable documents show that the federal government did not

disclose the actual primary basis and purpose for its demand: building a national voter file for its own use, to be shared with other agencies for unlawful purposes. *See supra* 2–3. As Congress has never authorized the creation of such a database, doing so would violate the federal Privacy Act. *See* 5 U.S.C. § 552a(e)(7) (prohibiting the creation or maintenance of any database "describing how any individual exercises rights guaranteed by the First Amendment," which necessarily includes exercising the right to vote).

The federal government's failure to fully and accurately provide this information is fatal. Section 303 requires a statement of "the basis and the purpose" of a records request, and by twice using the definite article, the statute requires not just *a* basis or purpose among many, but *the actual* basis and purpose underlying the request. *See Niz-Chavez v. Garland*, 593 U.S. 155, 165–66 (2021); *see also, e.g.*, *Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 603 U.S. 799, 817 (2024) (emphasizing distinction between the definite and indefinite article). This is yet another ground for dismissal.

The NVRA and HAVA require a state to conduct a "reasonable effort" to remove ineligible voters from the rolls, 52 U.S.C. §§ 20507(a)(4), 21083(a)(4)(A), and the NVRA includes safeguards to protect voters from erroneous removal. But the memorandum of understanding ("MOU") that the government has recently sought for a number of states to sign indicates multiple contemplated violations of those statutory requirements. *See* Ex. 2, Mot. to Intervene, U.S. Dep't of Just., Civ. Div., Confidential Mem. of Understanding ("MOU"). First, it seeks to place authority to identify supposed ineligible voters in the hands of the federal government, contrary to statutory text, 52 U.S.C. § 21085 (methods of complying with HAVA "left to the discretion of the State"). MOU at 2, 5. Second, the MOU's substantive terms seek to compel states to remove supposedly ineligible voters "within forty-five (45) days," *id.* at 5, in a way that would violate multiple

10

protections of the NVRA, 52 U.S.C. § 20507. This now-public MOU shows that the United States' supposed purpose violates federal law put in place to protect voters and state prerogatives in administering elections.

**B.  Any Records Disclosed Under the CRA Should Be Redacted to Protect the Constitutional Rights of the Voter, so the Court Must Deny the United States' Request.**

Even if disclosure were appropriate, sensitive personal voter information would still be subject to redaction. Indeed, courts have found that redaction may be required to prevent the disclosure of sensitive personal information that would create an intolerable burden on the constitutional right to vote. The cases interpreting Section 8(i) of the NVRA are instructive, as courts have consistently permitted—and sometimes required—redaction of voters' sensitive personal data before disclosure to protect voter privacy and ensure compliance with federal and state law and the Constitution.

Like the CRA, the NVRA is silent as to how sensitive personal information should be treated during disclosure. *See* 52 U.S.C. § 20703; § 20507(i)(1). Courts must interpret the disclosure provisions in a manner that does not unconstitutionally burden the right to vote. *See Burban v. City of Neptune Beach, Fla.*, 920 F.3d 1274, 1282 (11th Cir. 2019) (under the doctrine of constitutional avoidance, "[w]e avoid statutory interpretations that raise constitutional problems"). Federal courts have consistently struck this balance, interpreting the "all records concerning" language in Section 8(i) to permit—and sometimes require—redaction and the protection of confidential materials. As the First Circuit has noted, "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in the Voter File," and such redaction "can further assuage the potential privacy risks implicated by the public release of the Voter File." *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024); *see also Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 266–

68 (4th Cir. 2021) (holding that the potential connection to ongoing criminal investigations and the possibility of erroneously labeling a voter as a noncitizen and subjecting them to public harassment warrants maintaining confidentiality). Other courts have consistently recognized that the NVRA does not compel the release of sensitive information otherwise protected by federal or state laws. *See, e.g.*, *N.C. State Bd. of Elections*, 996 F.3d at 264; *Pub. Int. Legal Found., Inc. v. Dahlstrom*, 673 F. Supp. 3d 1004, 1015–16 (D. Alaska 2023); *Pub. Int. Legal Found., Inc. v. Matthews*, 589 F. Supp. 3d 932, 942 (C.D. Ill. 2022), *clarified on denial of reconsideration*, No. 20-CV-3190, 2022 WL 1174099 (C.D. Ill. Apr. 20, 2022). Georgia provides express protections from disclosure for Social Security numbers, driver's license numbers, a voter's birth month and date, and other information such as email addresses. *See* O.C.G.A. § 21-2-225(b).

Redaction also may be affirmatively required if the disclosure would "create[] an intolerable burden on [the constitutional right to vote] as protected by the First and Fourteenth Amendments." *Project Vote/Voting for Am. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012) (quotation marks and citation omitted). The Fourth Circuit, even while granting access to voter registration applications, affirmed the importance of redacting Social Security numbers, which are "uniquely sensitive and vulnerable to abuse." The court emphasized that the NVRA reflected Congress's view that the right to vote was "fundamental," and that the unredacted release of records risked deterring citizens from registering to vote and thus created an "intolerable burden" on this fundamental right. *Id*. at 334, 339; *cf. In re Coleman*, 208 F. Supp. at 200 (noting, in the context of a Title III records request, multiple considerations which could be "[s]ignificant," including whether "official records are privileged, or exempt from discovery for any sound reason of public policy," or "that an inspection of these records would be oppressive, or any unlawful invasion of any personal constitutional right"). As such, public disclosure provisions such as those in the

NVRA and Title III must be interpreted to avoid this unconstitutional burden. *See Long*, 682 F.3d at 339; *Bellows*, 92 F.4th at 56. The danger of imposing those burdens on Georgia voters and civic groups is present here. *See* Mot. to Intervene, Ex. 2, Decl. of Rosario Palacios ¶¶ 7, 11–19.

The same privacy and constitutional concerns that warrant redactions under the NVRA apply equally to requests under the CRA. *Cf. Sheetz v. Cnty. of El Dorado*, 601 U.S. 267, 281–82 (2024) (Gorsuch, J., concurring) ("[O]ur Constitution deals in substance, not form. However the government chooses to act, . . . it must follow the same constitutional rules."). And the limited case law considering CRA records requests acknowledges that courts retain the "power and duty to issue protective orders," *Lynd*, 306 F.2d at 230, such as requiring redaction of sensitive fields that courts have consistently determined are entitled to protection from disclosure.[2]

## III. THE UNITED STATES IS NOT ENTITLED TO SUMMARY DISPOSITION AND ITS MOTION TO COMPEL SHOULD BE DENIED.

The Federal Rules of Civil Procedure, with limited exception, "govern the procedure in *all* civil actions and proceedings in the United States district courts." Fed. R. Civ. P. 1 (emphasis added). The Rules contain limited and narrow carveouts to their own application, none of which include the claim under Title III here. *See* Fed. R. Civ. P. 81. Ignoring these standards, the United States makes expansive claims that Title III universally "displaces the Federal Rules of Civil Procedure by creating a 'special statutory proceeding'" where "'[a]ll that is required is a simple statement by the Attorney General, . . . explaining that the person against whom an order is sought has failed or refused to make the requested records" available. Pl.'s Mem. of L. in Supp. of the Mot. for Order to Compel Prod. of Recs., Dkt. No. 2-1 ("Mot. to Compel Br.") at 6; *see also* Compl.

---

[2] The United States cites *Crook v. S.C. Election Comm*., No. 2025-CP-40-06539 (S.C. Ct. C.P. Oct. 1, 2025), a non-binding decision which briefly discussed Title III in dicta. Mem. in Supp. of the Request for Order to Compel Prod. of Recs., Dkt. No. 2-1, at 7–8. *Crook* did not address Proposed Intervenors' arguments about the basis-and-purpose requirement or the need to redact sensitive voter information, and so has little persuasive weight.

¶¶ 1–4. This assertion contravenes the Federal Rules, is not contemplated by statute, and relies on misreading a single set of cases decided over sixty years ago, in a drastically different context, including primarily *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962). *See* Mot. to Compel Br.; *see also* Compl. ¶¶ 1–4.

The United States briefly acknowledges that "[c]aselaw addressing the CRA in any depth is confined to courts within the Fifth Circuit in the early years following the CRA's enactment. Since then, courts have not had occasion to revisit the issue." Mot. to Compel Br. at 5 n.1. But the United States studiously ignores why that is the case. *Lynd* arose in a specific historical context: the Jim Crow-era Fifth Circuit—which then included Alabama, Florida, Georgia, Louisiana, Mississippi, and Texas.[3] In these states, election administrators and other officials, including judges, notoriously used every possible means to stop Black Americans from registering to vote.[4] It was against this backdrop that the Fifth Circuit noted that "the factual foundation for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose' contained in the written demand is not open to judicial review or ascertainment." *Lynd*, 306 F.2d at 226. In that context, "the factual foundation for" the basis and the purpose of the Attorney General's request was self-evident, and plenary consideration thus not required. *See id.* That court's treatment of the CRA more than sixty years cannot be divorced from its context.[5]

By contrast, here, more than sixty years later, the context of *this* request could not be more

---

[3] "Federal Judicial Circuits: Fifth Circuit," FEDERAL JUDICIAL CENTER, https://perma.cc/9MSD-EFRB (last visited Dec. 20, 2025).

[4] *See generally*, *e.g.*, Steven F. Lawson, *Black Ballots: Voting Rights in the South, 1944-1969* (1976).

[5] *See also In re Coleman*, 208 F. Supp. 199, 201 (S.D. Miss. 1962) (acknowledging that while "[t]he right of free examination of official records is the rule" under Title III there could be "exception[s]" where "the purpose is speculative, or from idle curiosity").

different. The United States has invoked the CRA for unprecedented purposes, making sweeping demands for extensive voter data to include sensitive personal information, with no showing or claim of legal deficiencies or violations of rights, even as both the United States' own MOU and extensive reporting indicate that the stated basis and purpose are pretextual and that the data at issue is sought for unlawful ends.[6]

Nothing in Title III insulates the required "statement of the basis and the purpose" from standard judicial review. *See* 52 U.S.C. § 20703. Since *Lynd*, the Supreme Court has reaffirmed that

> [T]he Federal Rules apply to proceedings to compel the giving of testimony or production of documents in accordance with a subpoena issued by an officer or agency of the United States under any statute of the United States except as otherwise provided by statute or by rules of the district court or by order of the court in the proceedings.

*Becker v. United States*, 451 U.S. 1306, 1307–08 (1981) (citation and quotation marks omitted); *see also Powell*, 379 U.S. at 57–58 (holding that IRS Commissioner bears the burden to establish statutory requirements before enforcement of a tax subpoena). Just two years after *Lynd*, the Court held that proceedings to enforce a statute providing the United States with the power to request records in terms materially identical to the CRA were governed by the Federal Rules. *Powell*, 379 U.S. at 57–58 & n.18 (citing 26 U.S.C. § 7604(a)); *compare* 26 U.S.C. § 7604 (a) ("[T]he United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers,

---

[6] *See, e.g.*, Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. TIMES (Sept. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html; Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. TIMES MAG. (Nov. 16, 2025), https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html.

records, or other data[.]"), *with* 52 U.S.C. § 20705 ("The United States district court for the district in which a demand is made . . . or in which a record or paper so demanded is located, shall have jurisdiction by appropriate process to compel the production of such record or paper.").

Even in *Lynd*, the court, in explaining its findings, noted that "we are not discussing confidential, private papers and effects. We are, rather dealing with public records which ought ordinarily to be open to legitimate reasonable inspection." 306 F.2d at 231. The court also noted that the CRA authorizes jurisdiction by "appropriate process" to compel production, which the court had "no doubt" would "include the power and duty to issue protective orders"—such as orders protecting and redacting sensitive information. 52 U.S.C. § 20705; *Lynd*, 306 F.2d at 230. Thus, even in the 1960s, before sensitive personal information such as Social Security Numbers or driver's license numbers were widely collected as part of the voter registration record, and before any federal laws had been passed to protect and constrain access to personal information,[7] the court recognized the distinction between the disclosure of "confidential, private" information and "public records" that would already "ordinarily [] be open to legitimate reasonable inspection," *Lynd*, 306 F.2d at 231, and anticipated that the "duty to issue protective orders" would arise for certain CRA records requests, *id.* at 230.

The unredacted voter file contains "confidential, private" personal identifying information of Georgia voters that would *not* ordinarily be open to reasonable inspection. *Id.* at 231. To argue that the United States is entitled to summary relief and the forced provision of an unprecedented trove of "confidential, private" information, without *any* review of its statutorily required stated

---

[7] *E.g.*, Privacy Act of 1974, Pub. L. No. 93-579, 88 Stat. 1896 (1974); Driver's Privacy Protection Act of 1994, Pub. L. No. 103-322, 108 Stat. 1796 (1994), codified at 18 U.S.C. § 2721 *et seq.*; E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899 (2002); Federal Information Security Modernization Act of 2014, Pub. L. No. 113-283, 128 Stat. 3073 (2014), codified at 44 U.S.C. §§ 3351 *et seq.* (2014).

basis and purpose, would go even further than *Lynd* did—in a context where, very much unlike there, the basis and purpose are not inarguably clear but appear pretextual.

Courts presiding over the United States' sudden flurry of lawsuits related to its improper requests for sensitive voter information have caught on. In California, the court presiding over a similar case has recognized that the United States' motion to compel seeks "to reach the ultimate question in this case regarding the production of records," and "thousands of voters' lives will be impacted by this case." Hr'g Tr. at 5:3–9, *United States v. Weber*, No. 25-cv-09149 (C.D. Cal. Dec. 4, 2025), Dkt. No. 100. It denied the United States' first motion to compel, *id.*, and vacated briefing on one filed the following day, ordering that the motion deadlines would be reset "at a later date following a scheduling conference held pursuant to Federal Rule of Civil Procedure 16." Order, *United States v. Weber*, No. 25-cv-09149 (C.D. Cal. Dec. 15, 2025), Dkt. No. 114.

## CONCLUSION

The United States' Motion to Compel should be denied and the Complaint dismissed.

Dated: December 23, 2025                                    Respectfully submitted,

                                                           /s/Cory Isaacson

William Hughes*                          Cory Isaacson, Bar No. 983797
Theresa J. Lee*                          Akiva Freidlin, Bar No. 692290
Jonathan Topaz*                          Briana Futch, Bar No. 007314
Sophia Lin Lakin*                        AMERICAN CIVIL LIBERTIES UNION OF GEORGIA
AMERICAN CIVIL LIBERTIES UNION           P.O. Box 570738
FOUNDATION                               Atlanta, GA 30357
125 Broad Street, 18th Floor             cisaacson@acluga.org
New York, NY 10004                       afreidlin@acluga.org
whughes@aclu.org                         bfutch@acluga.org
tlee@aclu.org
jtopaz@aclu.org
slakin@aclu.org

Carlos A. Andino*
SOUTHERN POVERTY LAW CENTER
150 E. Ponce de Leon Ave., Suite 340
Decatur, GA 30030
carlos.andino@splcenter.org

Bradley E. Heard, Bar. No. 342209
Jack Genberg, Bar No. 144076
Ajay Saini*
SOUTHERN POVERTY LAW CENTER
1101 17th Street NW, Suite 550
Washington, DC 20036
bradley.heard@splcenter.org
jack.genberg@splcenter.org
ajay.saini@splcenter.org

*  *application for admission pro hac vice forthcoming*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 23, 2025, a true and correct copy of the foregoing document was

served via the Court's ECF system on all counsel of record and by email on counsel for Defendant.


/s/ Cory Isaacson