**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

UNITED STATES OF AMERICA,

        *Plaintiff*,

  v.

BRAD RAFFENSPERGER, in his Official Capacity
as Secretary of State for the State of Georgia,

        *Defendant.*

Case No. 5:25-CV-00548-CAR

**MEMORANDUM OF LAW OF THE NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE, NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE GEORGIA STATE CONFERENCE,
GEORGIA COALITION FOR THE PEOPLE'S AGENDA, AND QUINETTE
WESTBROOKS IN SUPPORT OF THE MOTION TO INTERVENE AS DEFENDANTS**

# **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 2

   I.   STATES—NOT THE FEDERAL GOVERNMENT—ARE RESPONSIBLE FOR VOTER REGISTRATION LIST MAINTAINENCE .......................................... 2

   II.  THE FEDERAL GOVERNMENT SEEKS TO USURP STATE CONTROL OVER VOTER ROLLS AND CONSOLIDATE SENSITIVE DATA ACROSS AGENCIES ...... 3

   III.  THE DOJ DEMANDS SENSITIVE VOTER DATA FROM DEFENDANT. ................... 4

   IV.  PROPOSED INTERVENORS' MEMBERS' SENSITIVE INFORMATION AND VOTING RIGHTS ARE THREATENED BY THIS LAWSUIT. ..................................... 6

LEGAL STANDARD ............................................................................................ 10

ARGUMENT ........................................................................................................ 11

   I.   PROPOSED INTERVENORS ARE ENTITLED TO INTERVENE AS OF RIGHT UNDER RULE 24(A)(2). ................................................................................. 11

      A.   The Motion Is Timely and Will Not Prejudice Existing Parties. ................................ 11

      B.   Proposed Intervenors Have a Sufficient Interest in This Litigation. ........................... 12

          1. Proposed Intervenors Have a Protectable Interest in Protecting the Right to Vote. 12

          2. Organizations Have a Protectable Interest in Guarding Organizational Priorities. . 14

          3. Proposed Intervenors Have a Protectable Interest in Safeguarding Voter Data. ..... 15

      C.   Proposed Intervenors' Interests May Be Impaired by This Suit's Disposition. ........... 17

      D.   Proposed Intervenors' Interests Are Not Adequately Protected by Existing Parties.... 18

   II.  ALTERNATIVELY, PERMISSIVE INTERVENTION SHOULD BE GRANTED. ....... 19

CONCLUSION ..................................................................................................... 21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alabama v. United States*,
304 F.2d 583 (5th Cir. 1962), *aff'd mem.* 371 U.S. 37 (1962) ................................................3

*All. for Retired Ams. v. Bessent*,
770 F. Supp. 3d 79 (D.D.C. 2025) ........................................................................................16

*Am. Fed'n of Lab. & Cong. of Indus. Orgs. v. Dep't of Lab.*,
No. CV 25-339 (JDB), 2025 WL 1783899 (D.D.C. June 27, 2025) .......................................16

*Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*,
272 Fed. Appx. 817 (11th Cir. 2008) ....................................................................................11

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
570 U.S. 1 (2013) .....................................................................................................................2

*Atlas Data Priv. Corp. v. We Inform, LLC*,
2025 WL 2444153 (D.N.J. Aug. 25, 2025) ...........................................................................16

*Bellitto v. Snipes*,
953 F.3d 1192 (11th Cir. 2019) ...........................................................................................2, 3

*Bellitto v. Snipes*,
No. 16-61474, 2016 WL 5118568 (S.D. Fla. Sept. 20, 2016) .........................................13, 18

*Brumfield v. Dodd*,
749 F.3d 339 (5th Cir. 2014) .................................................................................................17

*Chiles v. Thornburgh*,
865 F.2d 1197 (11th Cir. 1989) .............................................................................................12

*Clark v. Putnam Cnty.*,
168 F.3d 458 (11th Cir. 1999) .........................................................................................12, 18

*Comm'r, Ala. Dep't of Corr. v. Advance Local Media, LLC*,
918 F.3d 1161 (11th Cir. 2019) .............................................................................................11

*DeVault v. Isdale*,
No. 6:15-cv-135-ORL-37TBS, 2015 WL 5915819 (M.D. Fla. Oct. 8, 2015) ........................16

*Fair Fight Action, Inc. v. Raffensperger*,
413 F. Supp. 3d 1251 (N.D. Ga. 2019) ...................................................................................5

*Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*,
    983 F.2d 211 (11th Cir. 1993) ..................................................................10

*Fish v. Kobach*,
    309 F. Supp. 3d 1048 (D. Kan. 2018) .....................................................13

*Fla. State Conf. of NAACP v. Browning*,
    522 F.3d 1153 (11th Cir. 2008) ................................................................2

*Foster v. Love*,
    522 U.S. 67 (1997).....................................................................................2

*Gawker Media, LLC v. Fed. Bureau of Investigation*,
    No. 8:15-cv-1202-T-24EAJ, 2015 WL 4064971 (M.D. Fla. July 1, 2015) ...........................16

*Georgia v. U.S. Army Corps of Eng'rs*,
    302 F.3d 1242 (11th Cir. 2002) .....................................................11, 12, 17, 18

*Ind. State Conf. of NAACP v. Lawson*,
    326 F. Supp. 3d 646 (S.D. Ind. 2018), *aff'd sub nom*, *Common Cause Ind. v. Lawson*, 937 F.3d 944 (7th Cir. 2019) ......................................................18

*Issa v. Newsom*,
    No. 20-01055, 2020 WL 3074351 (E.D. Cal. June 10, 2020) ..................................14

*Kalbers v. U.S. Dep't of Just.*,
    22 F.4th 816 (9th Cir. 2021) ....................................................................16

*La Union del Pueblo Entero v. Abbott*,
    29 F.4th 299 (5th Cir. 2022) ...................................................................14

*League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*,
    659 F.3d 421 (5th Cir. 2011) ...................................................................13

*Martin v. Crittenden*,
    347 F. Supp. 3d 1302 (N.D. Ga. 2018) ...............................................11, 12

*In re Martinez*,
    736 F. Supp. 3d 1189 (S.D. Fla. 2024) ....................................................19

*McDonald v. E. J. Lavino Co.*,
    430 F.2d 1065 (5th Cir. 1970) ................................................................11

*Meek v. Metro. Dade Cnty., Fla.*,
    985 F.2d 1471 (11th Cir. 1993), *abrogated on other grounds*, *Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324 (11th Cir. 2007).....................................18

*Mi Familia Vota v. Fontes*,
    129 F.4th 691 (9th Cir. 2025) ......................................................................................13

*Off. of Cap. Collateral Couns., N. Region of Fla. ex rel. Mordenti v. Dep't of Just.*,
    331 F.3d 799 (11th Cir. 2003) ....................................................................................16

*NAACP v. Alabama ex rel. Patterson*,
    357 U.S. 449 (1958) .......................................................................................................6

*NAACP v. Pye*,
    101 S.E.2d 609 (Ga. App. 1957) ..................................................................................6

*New Ga. Project v. Raffensperger*,
    No. 1:21-CV-01229-JPB, 2021 WL 2450647 (N.D. Ga. June 4, 2021) ...........19, 20

*Pa. State Conf. of the NAACP v. Chapman*,
    No. 1:22-cv-339, 2023 WL 121867 (W.D. Pa. Jan. 6, 2023) .................................13, 14

*Paher v. Cegavske*,
    No. 3:20-cv-00243, 2020 WL 2042365 (D. Nev. Apr. 28, 2020) .............................14

*Project Vote, Inc. v. Kemp*,
    208 F. Supp. 3d 1320 (N.D. Ga. 2016) ...........................................................2, 5, 16

*Pub. Int. Legal Found., Inc. v. Winfrey*,
    463 F. Supp. 3d 795 (E.D. Mich. 2020) ....................................................................13

*Pub. Int. Legal Found. v. Bellows*,
    92 F.4th 36 (1st Cir. 2024) ........................................................................................16

*Pub. Int. Legal Found. v. Boockvar*,
    431 F. Supp. 3d 553 (M.D. Pa. 2019) .......................................................................16

*Pub. Int. Legal Found. v. N.C. Bd. of Elections*,
    996 F.3d 257 (4th Cir. 2021) .....................................................................................16

*Purcell v. BankAtlantic Fin. Corp.*,
    85 F.3d 1508 (11th Cir. 1996) ...................................................................................19

*Schwier v. Cox*,
    340 F.3d 1284 (11th Cir. 2003) .................................................................................16

*South Carolina v. Katzenbach*,
    383 U.S. 301 (1966).......................................................................................................3

*Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*,
    874 F.3d 692 (11th Cir. 2017) ...................................................................................10

*Tex. League of United Latin Am. Citizens v. Whitley*,
  No. SA-19-ca-074, 2019 WL 7938511 (W.D. Tex. Feb. 27, 2019) ..................................13, 17

*Trbovich v. United Mine Workers of Am.*,
  404 U.S. 528 (1972)...................................................................................................................18

*True the Vote v. Hosemann*,
  43 F. Supp. 3d 693 (S.D. Miss. 2014)......................................................................................16

*United States v. Florida*,
  870 F. Supp. 2d 1346 (N.D. Fla. 2012).....................................................................................13

*United States v. Mayton*,
  335 F.2d 153 (5th Cir. 1964) ......................................................................................................3

*United States v. Raines*,
  362 U.S. 17 (1960).......................................................................................................................7

*Vote Reference Found., LLC v. Torrez*,
  160 F.4th 1068 (10th Cir. 2025) ...............................................................................................16

*Worlds v. Dep't of Health & Rehab. Servs.*,
  929 F.2d 591 (11th Cir. 1991) (per curiam)..............................................................................19

*Yorkshire v. U.S. Internal Revenue Serv.*,
  26 F.3d 942 (9th Cir. 1994) .......................................................................................................19

**Statutes**

5 U.S.C. § 552a(e).........................................................................................................................16

52 U.S.C. § 20501(b) ......................................................................................................................3

O.C.G.A.
  § 21-2-225(b) ...................................................................................................................5, 15, 17
  § 21-2-225.1 .........................................................................................................................5, 15

**Court Filings**

Endorsed Order, *Univ. of S. Fla. College Republicans v. Lutnick*, No. 8:25-cv-
  02486-WFJ-SDM-RSR (M.D. Fla. Nov. 20, 2025), ECF No. 55 ...........................................19

Minute Order, *Ga. State Conf. of the NAACP v. Kemp*, No. 1:24-cv-04546-elr
  (N.D. Ga. Oct. 10, 2024)............................................................................................................20

Minutes of Hearing, *United States v. Weber*, No. 2:25-cv-9149-DOC-ADS (C.D.
  Cal. Nov. 19, 2025), ECF No. 70...............................................................................................13

Opinion and Order, *New Ga. Project v. Raffensperger*, No. 1:24-cv-03412-sdg (N.D. Ga. Dec. 16, 2024), ECF No. 154.................................................................20

Opinion and Order, *United States v. Oregon*, No. 6:25-cv-1666 (D. Or. Dec. 5, 2025), ECF No. 52 ................................................................................13, 14, 16

Opinion, *United States v. Benson*, No. 1:25-cv-1148-HYJ-PJG (W.D. Mich. Dec. 9, 2025), ECF No. 45 ....................................................................................17

Order, *Black Voters Matter Fund v. Raffensperger*, No. 1:20-cv-4869-scj (N.D. Ga. Dec. 9, 2020), ECF No. 42 ......................................................................20

Order, *Clark v. Putnam Cnty.*, No. 5:97-cv-00622-HL (M.D. Ga. Oct. 13 1999), ECF No. 81 .......................................................................................................13

Order, *Fla. Decides Healthcare v. Byrd*, No. 4:25-cv-00211-mw-maf (N.D. Fla. May 14, 2025), ECF No. 88 ....................................................................................20

Order, *Frazier v. Fulton Cnty. Dep't of Registration & Elections*, No. 1:24-cv-03819-scj (N.D. Ga. 2024), ECF No. 28 ..........................................................19

Order, *Ga. Republican Party, Inc. v. Raffensperger*, No. 1:20-cv-05018-elr (N.D. Ga. Dec. 14, 2020), ECF No. 15 ...................................................................20

Order, *Pearson v. Kemp*, No. 1:20-cv-04809-TCB (N.D. Ga. Dec. 3, 2020), ECF No. 42 .......................................................................................................20

Order, *United States v. Benson*, No. 1:25-cv-1148-HYJ-PJG (W.D. Mich. Dec. 9, 2025), ECF No. 46 ....................................................................................14

Order, *United States v. Houston County*, No. 5:25-cv-00025-mtt (M.D. Ga. Mar. 4, 2025), ECF No. 13 ....................................................................................19

Order, *United States v. Scanlan*, No. 1:25-cv-371-AJ (D.N.H. Jan. 5, 2026), ECF No. 23 .......................................................................................................14

Order, *United States v. Simon*, No. 0:25-cv-3761-KMM-EMB (D. Minn. Jan. 6, 2026), ECF No. 90 ...................................................................................14

Order, *Vote.org v. Ga. State Election Bd.*, No. 1:22-cv-01734-jpb (N.D. Ga. Aug. 3, 2022), ECF No. 39 ....................................................................................20

Order, *Voter Participation Ctr. v. Raffensperger*, No. 1:21-cv-01390-jpb (N.D. Ga. Jun. 4, 2021), ECF No. 50 .....................................................................20

Order, *Wood v. Raffensperger*, No. 1:20-cv-05155-tcb (N.D. Ga. Dec. 21, 2020), ECF No. 14 .......................................................................................................20

## Other Authorities

Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sept. 9, 2025) ...................................................................3

Exec. Order No. 14243, 90 Fed. Reg. 13681 (Mar. 20, 2025)........................................3

Exec. Order No. 14248, 90 Fed. Reg. 14005 (Mar. 25, 2025)........................3, 4, 17, 19

Fed. R. Civ. P.
    24(a)(2) .............................................................................................................10
    24(b).................................................................................................................10

*Georgia Presses for N.A.A.C.P. Data; Contempt Action Instituted After Agency Fails to Yield Records for Tax Study One Official Excluded 5 Officers Defy Order*, N.Y. Times (Nov. 22, 1956), https://www.nytimes.com/1956/11/22/archives/georgia-presses-for-naacp-data-contempt-action-instituted-after.html ...............................................................................6

H.R. Rep. No. 107-329 (2001)......................................................................................2

*Hearing on H.R. 8601 Before the S. Comm. on the Judiciary*, 86th Cong. (1960) .........................7

Nat'l Sec. Presidential Memorandum-7, *Countering Domestic Terrorism and Organized Political Violence*, 90 Fed. Reg. 47225 (2025).......................................8

Nicholas Nehamas, *DOGE Put Critical Social Security Data at Risk, WhistleBlower Says*, N.Y. Times (Aug. 26, 2025) ....................................................9

The Papers of Clarence Mitchell Jr., Volume VI (Denton L. Watson ed., 2021)...........................7

U.S. Const. art. I, § 4, cl. 1.........................................................................................2

Walter F. Murphy, *The South Counterattacks: The Anti-NAACP Laws*, 12 *W. Pol. Q.* 371 (1959)......................................................................................................6

## INTRODUCTION

The National Association for the Advancement of Colored People ("NAACP"), the National Association for the Advancement of Colored People Georgia State Conference ("Georgia NAACP"), Georgia Coalition for the People's Agenda ("GCPA") (collectively, the "Organizations"), and Quinette Westbrooks (collectively, "Proposed Intervenors"), move to intervene to protect significant interests not adequately represented by existing parties. The Organizations are civil rights groups with, collectively, thousands of Black members who are Georgia voters, including naturalized citizens, first-generation voters, voters with criminal histories or some prior justice system interaction, and others who are potential targets for federal efforts to purge eligible voters from the rolls. *See* Ex. A, Declaration of Anthony Ashton ("Ashton Decl.") ¶¶ 2-5, 13; Ex. B, Declaration of Helen Butler ("Butler Decl.") ¶¶ 1, 4, 5; Ex. C, Declaration of Quinette Westbrooks ("Westbrooks Decl."). ¶¶ 4, 7-8, 13. Ms. Westbrooks is a Black Georgia voter and President of the Georgia NAACP. Westbrooks Decl. ¶¶ 3-4.

The federal government in this action is jeopardizing Proposed Intervenors' interests in this action by demanding sensitive voter registration data of every Georgian voter. Although the government seeks data purportedly to ensure that ineligible voters are purged from voter registration lists, that is the State's responsibility. The government does not allege facts establishing the State's default on that obligation. Nor could the government make such a claim, given the many studies demonstrating that fraud and noncitizen voting are not a problem in the American electoral system. Further, as indicated by executive orders, the government plans to share voters' sensitive information with a plethora of agencies.

Proposed Intervenors are uniquely situated as racial justice organizations with members who are Georgia voters directly impacted by this suit. Those members face serious harms to their privacy and voting rights if the federal government obtains access to their sensitive information.

1

This aggressive grab for the confidential voter information submitted by Proposed Intervenors' members to election officials, if successful, will intimidate those members, including Ms. Westbrooks, and deter civic engagement. Further, a longstanding, critical mission of the Organizations is increasing political participation. The federal government's suit, if successful, will harm the Organizations' ability to carry out that mission.

**STATEMENT OF FACTS**

## I.    STATES—NOT THE FEDERAL GOVERNMENT—ARE RESPONSIBLE FOR VOTER REGISTRATION LIST MAINTAINENCE.

The Constitution does not prescribe a role for the Executive Branch in administering federal elections. Instead, it "invests the States with responsibility for the mechanics" of federal elections so long as "Congress declines to preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997); U.S. Const. art. I, § 4, cl. 1; *see Bellitto v. Snipes*, 953 F.3d 1192, 1198 (11th Cir. 2019). States bear primary responsibility for maintaining registration lists, stemming from their sole power to prescribe voter qualifications. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 17 (2013) (discussing Congress's lack of power to "regulate" qualifications). Where the Constitution contemplates federal involvement, it lies with Congress, not the executive branch.

Congress exercises limited control over federal elections. The Civil Rights Act of 1960 ("CRA"), National Voter Registration Act of 1993 ("NVRA"), and the Help America Vote Act of 2002 ("HAVA") do not authorize the federal government to usurp states' voter list maintenance responsibilities or to pool sensitive voter data. *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1344 (N.D. Ga. 2016) ("[The NVRA] does not require the disclosure of sensitive information that implicates special privacy concerns."); *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1172 (11th Cir. 2008) ("Reading HAVA Title III as a whole, we are not convinced that its objectives are to federalize voter identification standards."); H.R. Rep. No. 107-329, pt. 1, at 31–

2

32 (2001) (calling for the preservation of state-administered elections under HAVA); *see also Bellitto*, 935 F.3d 1192, 1202 (11th Cir. 2019) ("Nothing in HAVA broadens the scope of the NVRA's list-maintenance obligations."). Indeed, Congress enacted those laws to facilitate ballot access. *See* 52 U.S.C. § 20501(b).

Specifically, the CRA reins in "what Congress thought to be contemporary evils by States and agencies of States in the spurious, sometimes sophisticated, sometimes crude, practices by which [Black voters] were effectively denied the right to vote because of color and race alone." *United States v. Mayton*, 335 F.2d 153, 162 (5th Cir. 1964) (quoting *Alabama v. United States*, 304 F.2d 583, 591 (5th Cir. 1962), *aff'd mem.* 371 U.S. 37 (1962)). It "authorized courts to register voters in areas of systematic discrimination," where election officials engaged in patterns or practices of disqualifying Black voters based on racial grounds. *South Carolina v. Katzenbach*, 383 U.S. 301, 313 (1966).

## II. THE FEDERAL GOVERNMENT SEEKS TO USURP STATE CONTROL OVER VOTER ROLLS AND CONSOLIDATE SENSITIVE DATA ACROSS AGENCIES.

As part of a larger goal to create inter-agency databases filled with sensitive personal information, the federal government is embarking on a quest to create a national voter roll,[1] and to combine data sources to verify voter eligibility. *See* Exec. Order No. 14248, 90 Fed. Reg. 14005 (Mar. 25, 2025) (requiring a federal agency to "make available the Social Security Number Verification Service, the Death Master File, and any other Federal databases containing relevant information to all State and local election officials"); Exec. Order No. 14243, 90 Fed. Reg. 13681 (Mar. 20, 2025) ("Agency Heads shall take all necessary steps . . . to ensure Federal officials . . . have full and prompt access to all unclassified agency records, data, software systems, and

---

[1] *See generally* Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sept. 9, 2025).

information technology systems . . ."). This collection invades privacy, raises serious concerns about accuracy, and heightens the risk of disenfranchisement. It conflicts with the purpose of the CRA, under which the United States Department of Justice's ("DOJ") suit is brought.

As part of this unprecedented and illegitimate quest, the DOJ pursues sensitive voter information, which would have the effect of intimidating voters. Executive Order 14248 ("EO") directs the Attorney General to "enter into information-sharing agreements . . . with the chief State election official or multi-member agency of each State . . . to provide the [DOJ] with detailed information on all suspected violations of State and Federal election laws discovered by State officials." Exec. Order No. 14248, 90 Fed. Reg. 14005 (Mar. 25, 2025). Section 5(b) of the EO directs the DOJ to target states unwilling to share voter data or to cooperate in the investigation or prosecution of alleged offenses. *Id.* The EO also threatens those states by withholding federal grants or funds. *Id.* Pursuant to the EO, the DOJ requested statewide voter lists from most, if not all, states. Most have refused. The DOJ is now pursuing similar legal claims against more than twenty states at the time of this filing.

## III.  THE DOJ DEMANDS SENSITIVE VOTER DATA FROM DEFENDANT.

Through letter correspondence initiated on July 9, 2025, the DOJ has demanded a copy of Georgia's statewide voter registration list ("VRL") and a current electronic copy of its computerized statewide voter registration list, containing "all fields" ("SVRL") from the Georgia Secretary of State. Compl. ¶¶ 19-20, ECF No. 1. The DOJ defined "all fields" to include registrants' full names, full dates of birth, residential addresses, driver's license numbers, and the last four digits of registrants' social security numbers ("SSNs"). *Id.* ¶ 22.

The only stated purpose of this demand was the "ascertain[ment] of Georgia's compliance with the list maintenance requirements of the NVRA and HAVA." Pl.'s Mot to Compel Ex. 2, ECF No. 2-2.  The letter generally rested the unprecedented demand on voter protection laws

governing voter registration lists, *i.e.*, HAVA, NVRA, and CRA. None authorizes a demand of this nature or scope.

On December 8, 2025, the Secretary produced redacted voter records to the DOJ. Compl. ¶¶ 24, 25, ECF No. 1; *see also* Pl.'s Mot to Compel Ex. 3 at 4, ECF No. 2-2 ("Supporting records showing Georgia's nation-leading list maintenance activities are being transmitted to you via secure transfer contemporaneously with this letter, along with Georgia's complete list of registered voters."). The Secretary explained that Georgia utilizes the Department of Homeland Security ("DHS") SAVE program to verify citizenship and employs a "wide variety of reliable data sources that detect when voters move to a new county, move out of state, receive felony sentences, or are deceased." *Id.* at 2. As of December 8, 2025, the Elections Division "sent out a total of 1,006,474 list maintenance notices," including 580,358 registration cancelations and 298,421 inactive status notices. *Id.* at 2-3. The Secretary refused to provide redacted voter lists based on a state privacy statue, O.C.G.A. § 21-2-225(b), which prohibits disclosure of a voter's full date of birth, SSN, and driver's license number, and a Northern District of Georgia case holding that the NVRA does not require disclosure of sensitive information that implicates special privacy concerns. Compl. ¶ 24, ECF No. 1; *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1344 (N.D. Ga. 2016); *see also Fair Fight Action, Inc. v. Raffensperger*, 413 F. Supp. 3d 1251, 1275 (N.D. Ga. 2019) ("While [an election bill] authorizes the Secretary of State to become a member of a nongovernmental entity whose purpose is to share and exchange information in order to improve the accuracy and efficiency of voter registration systems, it does not directly require him or her to do so. See O.C.G.A. § 21-2-22(d)(1)."). Confidentiality of voter information also implicates O.C.G.A. § 21-2-225.1.

The DOJ filed suit on December 18, 2025, against the Secretary of State to compel access, alleging that it is entitled to sensitive voter information broadly under Title III of the CRA.

## IV.    PROPOSED INTERVENORS' MEMBERS' SENSITIVE INFORMATION AND VOTING RIGHTS ARE THREATENED BY THIS LAWSUIT.

*NAACP and Georgia NAACP.* As the NAACP's affiliate, Georgia NAACP is a legacy nonpartisan organization based in Georgia, with approximately 8,500 members in 180 units across the state. Westbrooks Decl. ¶¶ 5, 7. NAACP and Georgia NAACP engage in voter registration, education, and turnout efforts. Ashton Decl. ¶¶ 8-9; Westbrooks Decl. ¶¶ 7-9. Many members are registered, Black Georgia voters who have participated in prior federal elections and plan to participate in future elections. Ashton Decl. ¶ 5; Westbrooks Decl. ¶ 7. These members' sensitive voter data, *see* Compl. ¶¶ 20-22, ECF No. 1, are at risk of misuse and abuse, implicating their broader right to vote, free from intimidation. Ashton Decl. ¶ 12-14; Westbrooks Decl. ¶¶ 15-16, 19-20; Butler Decl. ¶¶ 9.

The NAACP's mission is to "achieve equity, political rights, and social inclusion by advancing policies and practices that expand human and civil rights, eliminate discrimination, and accelerate the well-being, education, and economic security of Black people and all persons of color." Ashton Decl. ¶ 4. The NAACP has a long history of safeguarding its members' personal information from compelled disclosure. *See, e.g.*, *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 458 (1958) (prohibiting compelled disclosure of NAACP membership lists). The Georgia NAACP has also been subjected to government officials' covert attempts to compel its members' information.[2] Westbrooks Decl. ¶ 6. The NAACP and Georgia NAACP have long advocated for

---

[2] *See also* Walter F. Murphy, *The South Counterattacks: The Anti-NAACP Laws*, 12 *W. Pol. Q.* 371, 378 (1959) (discussing the context and history of *NAACP v. Pye*, 101 S.E.2d 609 (Ga. App. 1957)); *Georgia Presses for N.A.A.C.P. Data; Contempt Action Instituted After Agency Fails to Yield Records for Tax Study One Official Excluded 5 Officers Defy Order*, N.Y. Times (Nov. 22,

the civil rights of Black voters who were subject to various forms of racial discrimination and voter intimidation, necessitating federal intervention through the passage of the Civil Rights Acts of 1957 and 1960. Westbrooks Decl. ¶ 14; *see also* The Papers of Clarence Mitchell Jr., Volume VI, at 542-44, 662-66 (Denton L. Watson ed., 2021) (detailing, in support of civil rights bills and their enforcement, racial discrimination suffered by Black people). For example, NAACP member Rev. George Lee from Belzoni, Mississippi was murdered in 1955 after demands to remove his name from the voter rolls. *See* Westbrooks Decl. ¶ 14. State officials' rejections of attempts to register by Black residents, like NAACP member Grace Boyd Gibson from Terrell County, were a significant predicate for the Civil Rights Act of 1960. *Id.*; *see also generally Hearing on H.R. 8601 Before the S. Comm. on the Judiciary*, 86th Cong. (1960) (discussing *United States v. Raines*, 362 U.S. 17 (1960), throughout). The key role of the NAACP and Georgia NAACP in the gestation and birth of the Civil Rights Acts offers unique perspective on the history and purpose of federal civil rights protections.

***Quinette Westbrooks.*** Ms. Westbrooks is the President of the Georgia NAACP and has been a registered Georgia voter for over forty years. Westbrooks Decl. ¶¶ 2-4. She participated in federal elections between 2022 and 2024 and intends to vote in upcoming elections. *Id.* Prior to the DOJ's suit, President Westbrooks was not aware that DOJ had received her sensitive voter information, or that the Secretary provided any voter information to the DOJ. *Id.* ¶ 11-12. She was not notified that information would be shared and she did not—and does not—consent to the sharing of the information that the federal government seeks in this case. *Id.* ¶ 12. President

---

1956), https://www.nytimes.com/1956/11/22/archives/georgia-presses-for-naacp-data-contempt-action-instituted-after.html.

Westbrooks fears that Defendant will share her personal information, invading her privacy and exposing her to potential misuse of her information. *Id.* ¶ 13.

**GCPA.** A nonpartisan nonprofit located in Atlanta, the Georgia Coalition for the People's Agenda ("GCPA"), is a coalition of more than 30 organizations with collectively more than 5,000 individual members across Georgia, including approximately 1,500 individual GCPA members. Butler Decl. ¶¶ 2-4. GCPA's support of voting rights is central to its mission. *Id.* ¶ 4. GCPA regularly commits its time and resources to conducting voter registration drives, voter education, voter ID assistance, and other get-out-the-vote operations throughout Georgia, particularly among Black and other underrepresented communities. *Id.* ¶ 5. GCPA's individual members include Georgia registered voters whose sensitive voter data is at risk of misuse and abuse, implicating their right to vote, free from voter intimidation. *See id.* ¶¶ 9-12.

Proposed Intervenors have legitimate concerns about federal government access to the sensitive voter data demanded by the government in this lawsuit. Ashton Decl. ¶¶ 10-15; Westbrooks Decl. ¶¶ 13-21, 18; Butler Decl. ¶¶ 9-12. First, the government demands the data at issue to remove people from the voter rolls, heightening the risk of wrongful disenfranchisement of eligible voters. Westbrooks Decl. ¶ 10; Ashton Decl. ¶ 10; Butler Decl. ¶¶ 9-12. Second, Proposed Intervenors historically have been targeted by government officials and community members who disagree with their mission and advocacy efforts. Ashton Decl. ¶ 12; Westbrooks Decl. ¶¶ 6, 14-15, 17-18, 21; Butler Decl. ¶¶ 9. Proposed Intervenors therefore fear targeted and retaliatory efforts from the federal government, [3] which has repeatedly disregarded privacy

---

[3] *See* Nat'l Sec. Presidential Memorandum-7, *Countering Domestic Terrorism and Organized Political Violence*, 90 Fed. Reg. 47225 (2025) (announcing plans to investigate and "disrupt" organizations and networks the federal government perceives as politically radical, including organizations that convey "extremism on migration, race, and gender").

protections over sensitive personal data,[4] given that many members may hold political views and engage in civic activities disfavored by the current federal administration. Ashton Decl. ¶¶ 10-14; Westbrooks Decl. ¶¶ 17-21; Butler Decl. ¶ 9.

Proposed Intervenors fear that the DOJ will mishandle and misuse personal information if Defendant provides the requested information. Ashton Decl. ¶ 14; Westbrooks Decl. ¶ 18-19; Butler Decl. ¶ 12. These concerns are exacerbated by federal agencies' ongoing efforts to consolidate and share private information across multiple governmental databases. Ashton Decl. ¶ 11; Westbrooks Decl. ¶¶ 16-19; Butler Decl. ¶¶ 9-12. Further, if successful, the DOJ's data grab will intimidate voters, frustrating the Organizations' missions. Ashton Decl. ¶¶ 10-15; Westbrooks Decl. ¶¶ 15, 19-21; Butler Decl. ¶¶ 9-12. This chilling of basic constitutional rights not only harms the Organizations' members, including President Westbrooks, but also will undermine their efforts to advance their core priorities of fostering civic participation and voter engagement. Ashton Decl. ¶¶ 8, 10, 15; Westbrooks Decl. ¶ 20; Butler Decl. ¶ 12. Each election cycle, Proposed Intervenors engage thousands of members in extensive get-out-the-vote efforts. Ashton Decl. ¶¶ 8-9; Westbrooks Decl. ¶¶ 5, 7-9; Butler Decl. ¶¶ 5-6.

These Organizations play a critical role for their members and the public by serving as trusted messengers on election issues, particularly for individuals who tend to avoid political participation. Westbrooks ¶ 5; Butler Decl. ¶ 6. They invest significant time and resources to assist and encourage Black voters in voter registration civic participation processes, including preventing the disenfranchisement of members who are eligible voters—work that is threatened by sensitive

---

[4] For example, public reports have indicated that the Department of Government Efficiency (DOGE) placed the security of millions of SSNs at risk through improper maintenance. *See* Nicholas Nehamas, *DOGE Put Critical Social Security Data at Risk, WhistleBlower Says*, N.Y. Times (Aug. 26, 2025).

voter data demands. Ashton Decl. ¶ 10; Butler Decl. ¶¶ 5-6, 9-10, 12; Westbrooks Decl. ¶¶ 8-9, 14-21. If the federal government prevails, Proposed Intervenors will be forced to divert considerable resources from their core missions to address the fallout, including efforts to ensure that voters' personal information in the hands of the government is not abused or misused to disenfranchise eligible voters. Ashton Decl. ¶¶ 10-15; Westbrooks Decl. ¶¶ 15, 19-21; Butler Decl. ¶ 12.

## **LEGAL STANDARD**

Proposed Intervenors are entitled to intervene as of right, *see* Fed. R. Civ. P. 24(a)(2), or in the alternative, permissively, *see* Fed. R. Civ. P. 24(b). Under Rule 24(a)(2):

> Parties seeking to intervene [as of right] must show that: (1) [their] application to intervene is timely; (2) [they have] an interest relating to the property or transaction which is the subject of the action; (3) [they are] so situated that disposition of the action, as a practical matter, may impede or impair [their] ability to protect that interest; and (4) [their] interest is represented inadequately by the existing parties to the suit.

*Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 695-96 (11th Cir. 2017) (alterations in original) (internal quotations omitted). "Any doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors because it allows the court to resolve all related disputes in a single action." *Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993). Under Rule 24(b), a nonparty may intervene permissively when it "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). "[T]he court must consider whether the intervention will unduly delay or prejudice the adjudication of the original partiers' rights." *Id.*

## ARGUMENT

I.    **PROPOSED INTERVENORS ARE ENTITLED TO INTERVENE AS OF RIGHT UNDER RULE 24(a)(2).**

### A. The Motion Is Timely and Will Not Prejudice Existing Parties.

Filed prior to the deadline for a response to the DOJ's Complaint, this Motion is timely. Courts assess timeliness under four factors: (1) the length of time during which proposed intervenors knew or reasonably should have known of its interest in the case; (2) the extent of prejudice to existing parties as a result of the proposed intervenor's failure to apply as soon as he knew or reasonably should have known of their interest; (3) the extent of prejudice to the proposed intervenor if his petition is denied; and (4) the existence of unusual circumstances militating whether intervention is timely. *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 272 Fed. Appx. 817, 819 (11th Cir. 2008).

These factors militate in Proposed Intervenor's favor. In the infancy of litigation, this Motion is filed by the deadline for answers, before formal discovery has commenced, and well before dispositive motions. *See Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1259-60 (11th Cir. 2002) (holding that a party's intervention was timely because the court had not taken any significant action yet). Proposed Intervenors learned about the DOJ's action shortly after the filing of its complaint, *see* Westbrooks Decl. ¶¶ 10-12, and are filing this Motion shortly after commencement of the action. "[W]hen the proposed intervenor seeks intervention of right," the question "whether any existing party to the litigation will be harmed or prejudiced by the proposed intervenor's delay in moving to intervene . . . may well be the only significant consideration." *Comm'r, Ala. Dep't of Corr. v. Advance Local Media, LLC*, 918 F.3d 1161, 1171 (11th Cir. 2019) (quoting *McDonald v. E. J. Lavino Co.*, 430 F.2d 1065, 1073 (5th Cir. 1970)); *see also Martin v. Crittenden*, 347 F. Supp. 3d 1302, 1307 (N.D. Ga. 2018) (no prejudice where "the motion was

made in a timely fashion, pre-answer"). Because intervention is sought at an early stage of the litigation, well before the commencement of discovery or dispositive motion practice, the existing parties will not suffer any undue prejudice. On the other hand, if denied intervention, Proposed Intervenors would suffer prejudice, as described *infra*.

**B. Proposed Intervenors Have a Sufficient Interest in This Litigation.**

"Under Rule 24(a)(2), a party is entitled to intervention as a matter of right if the party's interest in the subject matter of the litigation is direct, substantial and legally protectable." *U.S. Army Corps of Eng'rs*, 302 F.3d at 1249. The Court's inquiry into whether a party has a protectable interest "is a flexible one," focusing on the particular facts and circumstances of each motion. *Chiles v. Thornburgh*, 865 F.2d 1197, 1214 (11th Cir. 1989). Thus, the interest test is "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Id.*; *see also Clark v. Putnam Cnty.*, 168 F.3d 458, 463 (11th Cir. 1999) (holding that the NAACP's Rule 24(a) motion in an election suit did not "automatically" fail because it lacked standing). The Proposed Intervenors' have numerous interests at stake that meet this standard.

1.    <u>Proposed Intervenors Have a Protectable Interest in Protecting the Right to Vote.</u>

Proposed Intervenors seek to vindicate their interests in protecting the right to vote. The federal government's demand for sensitive voter data under a vague proclamation to investigate list maintenance compliance, Compl. ¶ 9, ECF No. 1, underpins its unprecedented efforts to usurp state list maintenance procedures to interject itself beyond constitutional authority, and to facilitate improper voter roll purges, threatening the right to vote of the Organizations' members, especially given documented accuracy issues. Westbrooks Decl. ¶ 10; Ashton Decl. ¶ 10; Butler Decl. ¶ 9.

Courts have found a sufficient interest in the right to vote when the disposition of a suit could result in disenfranchisement. *Martin v. Crittenden*, 347 F. Supp. 3d 1302, 1307 (N.D. Ga.

2018) (finding intervention as of right to be appropriate where voter intervenors would be potentially disenfranchised); Order, *Clark v. Putnam Cnty.*, No. 5:97-cv-00622-HL (M.D. Ga. Oct. 13 1999), ECF No. 81 (granting the Georgia NAACP intervention upon remand); *Bellitto v. Snipes*, No. 16-61474, 2016 WL 5118568, at *2 (S.D. Fla. Sept. 20, 2016) (granting intervention to organization "assert[ing] its interest and the interests of its members would be threatened by the court-ordered 'voter list maintenance' sought by Plaintiffs"); *see also League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 434 (5th Cir. 2011); *Pub. Int. Legal Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795, 799 (E.D. Mich. 2020); *Pa. State Conf. of the NAACP v. Chapman*, No. 1:22-cv-339, 2023 WL 121867, at *5 (W.D. Pa. Jan. 6, 2023).

The risk of disenfranchisement is not speculative or attenuated. Numerous courts have held that methods to verify voter eligibility, particularly when based on stale information, impermissibly disenfranchise or burden voters. *See Mi Familia Vota v. Fontes*, 129 F.4th 691, 722-24 (9th Cir. 2025) (holding that required documentary proof of citizenship "DPOC" in federal elections violated NVRA and CRA); *Fish v. Kobach*, 309 F. Supp. 3d 1048, 1106, 1110-11 (D. Kan. 2018) (finding that the required DPOC with a voter registration application unduly burdened the right to vote); *United States v. Florida*, 870 F. Supp. 2d 1346, 1347, 1350-51 (N.D. Fla. 2012) (holding that the use of driver's license data to purge voters likely violated NVRA); *Tex. League of United Latin Am. Citizens v. Whitley*, No. SA-19-ca-074, 2019 WL 7938511, at *1 (W.D. Tex. Feb. 27, 2019) (preventing voter purges based on inaccurate drivers' license data).

In parallel cases pursued by the DOJ in California, Oregon, Michigan, Minnesota, and New Hampshire, district courts granted intervention, as of right and permissively, to voters and organizations seeking to protect voter data. *See* Minutes of Hearing, *United States v. Weber*, No. 2:25-cv-9149-DOC-ADS (C.D. Cal. Nov. 19, 2025), ECF No. 70; Opinion and Order, *United*

*States v. Oregon*, No. 6:25-cv-1666 (D. Or. Dec. 5, 2025), ECF No. 52 (granting intervention of right); Order, *United States v. Benson*, No. 1:25-cv-1148-HYJ-PJG (W.D. Mich. Dec. 9, 2025), ECF No. 46 (same); Order, *United States v. Scanlan*, No. 1:25-cv-371-AJ (D.N.H. Jan. 5, 2026), ECF No. 23 (granting permissive intervention); Order, *United States v. Simon*, No. 0:25-cv-3761-KMM-EMB (D. Minn. Jan. 6, 2026), ECF No. 90 (same). Protecting members' data from being improperly shared in a manner that burdens the right to vote is a protectable interest.

    2.    <u>Organizations Have a Protectable Interest in Guarding Organizational Priorities.</u>

Disclosure of personal information to the government will harm the Organization's core mission of encouraging voter registration, civic engagement, and voter protection. Courts routinely grant intervention to groups in voting cases that demonstrate harm to their core mission and activities. *See, e.g.*, *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 306 (5th Cir. 2022) (granting intervention to political party that expended resources to recruit and train volunteers whose conduct was being regulated); *Issa v. Newsom*, No. 20-01055, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020) (granting intervention to civil rights groups that would have to reeducate members on laws and assisting those members in the voting process); *Paher v. Cegavske*, No. 3:20-cv-00243, 2020 WL 2042365, at *2 (D. Nev. Apr. 28, 2020) (finding a protectable interest in efforts "to promote the franchise and ensure the election" of candidates); *Chapman*, 2023 WL 121867, at *5  (granting intervention to political party with an interest to ensure free and fair elections). This includes at least one district court in the voter data context. Opinion and Order at 5, *United States v. Oregon*, No. 6:25-cv-1666 (D. Oregon Dec. 5, 2025), ECF No. 52 ("Proposed Intervenors have specific interests . . . in increasing voter participation by marginalized communities.").

The federal government's overreach frustrates the Organizations' missions. They have an interest in protecting a critical component of their election-year programs and activities—ensuring

that their members, and all Georgians, are given a full and equal opportunity to exercise their fundamental right to vote. Ashton Decl. ¶¶ 8-9, 13-15; Westbrooks Decl. ¶¶ 5-6, 19-21; Butler Decl. ¶¶ 5-6, 12. They assist their members and prospective voters in the registration process, educate them about upcoming elections, and mobilize voters. Ashton Decl. ¶¶ 8-9, 15; Westbrooks Decl. ¶¶ 5-6, 20; Butler Decl. ¶¶ 5-6. However, members and the public are materially chilled from the exercise of the right to vote by increased federal scrutiny or threatened harassment. *See* Ashton Decl. ¶¶ 11–13; Westbrooks Decl. ¶¶ 13-16, 18-21; Butler Decl. ¶¶ 9-12. Responding to data security threats by the DOJ and any resulting registration purge also strains the organizational resources as they must address members' and public concerns and resist government efforts to suppress participation, in order to produce the level of participation that they have historically targeted and achieved. Ashton Decl. ¶¶ 10-15; Westbrooks Decl. ¶¶ 15-21; Butler Decl. ¶¶ 9-12.

These voting rights and data threats are particularly felt amongst Black voters. Many of the Organizations' members are, and historically have been, fearful of federal surveillance, law enforcement investigations, and federal demands for personal information. *Id*. These fears are acute under an administration that has repeatedly and publicly targeted political adversaries or people who dissent. Ashton Decl. ¶ 11-12; Westbrooks Decl. ¶ 17; Butler Decl. ¶¶ 9. Fears are further heightened by the administration's recent and direct attacks on civil rights protections, and thereby Black communities, including the targeted deployment of the national guard in cities with significant Black populations. For these reasons, the Organizations have a protectable interest here.

    3.   Proposed Intervenors Have a Protectable Interest in Safeguarding Voter Data.

Proposed Intervenors oppose sharing sensitive information protected under state law with the DOJ. *See* O.C.G.A. § 21-2-225(b) (excluding the month and day of birth, SSNs, email addresses, and drivers' license numbers from public disclosure*)*; *id*. § 21-2-225.1; Westbrooks Decl. ¶ 18, 21; Butler Decl. ¶¶ 9-10, 12; Ashton Decl. ¶¶ 10–15. The DOJ is not authorized to

collect or maintain such data, *see* 5 U.S.C. § 552a(e). To the extent that the DOJ attempts to leverage the NVRA and Section 7 of the Privacy Act to compel records, *see supra* Statement of Facts Section III, the Eleventh Circuit also recognizes private parties' viable claims for Section 7 violations. *Schwier v. Cox*, 340 F.3d 1284, 1289, 1292 (11th Cir. 2003).

The confidentiality of sensitive information is a substantially protectable interest.[5] "[T]he privacy harm that results from disclosure—and disclosure alone—of records in violation of the Privacy Act is sufficiently akin to the harm suffered in the common-law tort of intrusion upon seclusion to constitute a concrete injury in fact." *Am. Fed'n of Lab. & Cong. of Indus. Orgs. v. Dep't of Lab.*, No. CV 25-339 (JDB), 2025 WL 1783899, at *4 (D.D.C. June 27, 2025); *see also All. for Retired Ams. v. Bessent,* 770 F. Supp. 3d 79, 101 (D.D.C. 2025). Courts routinely limit disclosure of the sensitive information sought here, including driver's license numbers and SSNs, in record requests for voter data, including in requests made under the NVRA.[6] And again, two district courts held that securing voter data is a protectable interest. Opinion and Order, *United*

---

[5] *See DeVault v. Isdale*, No. 6:15-cv-135-ORL-37TBS, 2015 WL 5915819, at *4 (M.D. Fla. Oct. 8, 2015) (holding that privacy interests in confidential information was a protectable interest); *Gawker Media, LLC v. Fed. Bureau of Investigation*, No. 8:15-cv-1202-T-24EAJ, 2015 WL 4064971, at *2 (M.D. Fla. July 1, 2015) (granting intervention for privacy interests in a FOIA suit); *Kalbers v. U.S. Dep't of Just.*, 22 F.4th 816, 827 (9th Cir. 2021); *see also Off. of Cap. Collateral Couns., N. Region of Fla. ex rel. Mordenti v. Dep't of Just.*, 331 F.3d 799, 804 (11th Cir. 2003) ("In addition, we hold the third parties identified in documents 1 and 10 themselves have privacy interests that must be balanced against the public interest in [FOIA] disclosure.").

[6] *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1344-46 (N.D. Ga. 2016) (allowing redactions of SSNs and birth dates); *Pub. Int. Legal Found. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) (authorizing redactions of "highly sensitive" information); *Pub. Int. Legal Found. v. N.C. Bd. of Elections*, 996 F.3d 257, 267 (4th Cir. 2021) (same); *Vote Reference Found., LLC v. Torrez*, 160 F.4th 1068, 1083 n.14 (10th Cir. 2025) (same); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 736 (S.D. Miss. 2014) (same); *Atlas Data Priv. Corp. v. We Inform, LLC*, 2025 WL 2444153, at *2 (D.N.J. Aug. 25, 2025) (same); *Pub. Int. Legal Found. v. Boockvar*, 431 F. Supp. 3d 553, 561 n.3 (M.D. Pa. 2019) (same).

*States v. Oregon*, No. 6:25-cv-1666 (D. Or. Dec. 5, 2025), ECF No. 52; Opinion, *United States v. Benson*, No. 1:25-cv-1148-HYJ-PJG (W.D. Mich. Dec. 9, 2025), ECF No. 45.

The Proposed Intervenors' privacy interests are significantly threatened by the turnover of sensitive voter data to the DOJ. Proposed Intervenors' members have a historically justified fear of federal surveillance, unjustified law enforcement investigations, and federal demands for personal information. *See* Ashton Decl. ¶¶ 13-15; Westbrooks Decl. ¶¶ 6, 10, 12-14, 16-19, 21; Butler Decl. ¶ 9. In election cases, these types of intrusions "exemplif[y] the power of government to strike fear and anxiety and to intimidate the least powerful among us." *Tex. League of United Latin Am. Citizens*, 2019 WL 7938511, at *2 (analyzing misuse of license data and its threatening demand for citizenship information).

Further, the federal government frequently declares that the DOJ shares sensitive voter data, including information exempted from public inspection, O.C.G.A. § 21-2-225(b), with other agencies, including DHS, USCIS, SSA, HHS, IRS, and DOGE. *See supra* Statement of Facts Section II; Exec. Order No. 14248, 90 Fed. Reg. 14005, 14007 (Mar. 25, 2025) (requiring SSA to "take all appropriate action to make available the [SSN] Verification Service, the Death Master File, and any other Federal databases containing relevant information to all State and local election officials"). Proposed Intervenors have no reasonable expectation that information shared with the DOJ would be kept secure, treated confidentially, or used for limited purposes.

### C.  Proposed Intervenors' Interests May Be Impaired by This Suit's Disposition.

Proposed Intervenors need not show that their interests "will" be impaired by this litigation's disposition, only that they "may" be. *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014). Indeed, the "very purpose of intervention is to allow interested parties to air their views so that a court may consider them before making potentially adverse decisions." *Id*. at 345; *see U.S. Army Corps of Eng'rs*, 302 F.3d at 1253 (finding that the action "could" impair an interest). As set

forth above, Proposed Intervenors more than meet this standard. "Historically. . . voter registration and election practices have interfered with the ability of minority, low-income, and other traditionally disenfranchised communities to participate in democracy." *Ind. State Conf. of NAACP v. Lawson*, 326 F. Supp. 3d 646, 650 (S.D. Ind. 2018), *aff'd sub nom*, *Common Cause Ind. v. Lawson*, 937 F.3d 944 (7th Cir. 2019). The DOJ wields legacy civil rights legislation, designed to cure racial discrimination, to purge voters in a manner that burdens Proposed Intervenors' interests.

**D.  Proposed Intervenors' Interests Are Not Adequately Protected by Existing Parties.**

Proposed Intervenors also meet the "minimal" burden of demonstrating that the existing parties in the litigation may not protect their interests. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *see Clark v. Putnam Cnty.*, 168 F.3d 458, 461 (11th Cir. 1999). While there is a "weak" presumption that representation of governmental entities is adequate when proposed intervenors seek the same objectives as existing parties, that presumption "merely imposes upon the proposed interveners the burden of coming forward with some evidence to the contrary." *Clark*, 168 F.3d at 461; *see also U.S. Army Corps of Eng'rs*, 302 F.3d at 1255. Proposed Intervenors easily can show a divergence of interests. "Because elected officials in a majority-rule democracy may represent only part of the electorate (for instance, members of their party)," courts "in normal practice" allow intervention to voters "supporting a position that could theoretically be adequately represented by public officials."  *Clark*, 168 F.3d at 462 n.3.

Neither party represents Proposed Intervenors' interests. Defendant weighs registrants' privacy interests against statutory list maintenance and disclosure obligations. *Bellitto*, 2016 WL 5118568, at *2 (recognizing that "interests and interpretation of the NVRA may not be aligned"); *Meek v. Metro. Dade Cnty., Fla.*, 985 F.2d 1471, 1478 (11th Cir. 1993) ("[The County] was required to balance a range of interests likely to diverge from those of the intervenors" asserting an interest "in achieving the greatest possible [political] participation"), *abrogated on other*

18

grounds, *Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324 (11th Cir. 2007). Defendant also likely considers the federal government's threat to withhold funding. Exec. Order No. 14248 § 5(b)(ii), 90 Fed. Reg. 14005, 14008 (Mar. 25, 2025). This Court should not assume either party would protect Proposed Intervenors' sensitive data. *See Yorkshire v. U.S. Internal Revenue Serv.*, 26 F.3d 942, 945 (9th Cir. 1994) ("[B]ecause the I.R.S . . . did not oppose disclosure of Keller's consolidated tax returns, [intervenor's] interest in the confidentiality of those tax returns was not adequately represented . . .").

## II.    ALTERNATIVELY, PERMISSIVE INTERVENTION SHOULD BE GRANTED.

The Court has broad discretion to permit anyone to intervene who has a claim or defense that shares with the main action "a common question of law or fact," if intervention will not unduly prejudice parties or delay litigation. *Purcell v. BankAtlantic Fin. Corp.*, 85 F.3d 1508, 1513 (11th Cir. 1996) (citing *Worlds v. Dep't of Health & Rehab. Servs.*, 929 F.2d 591, 595 (11th Cir. 1991) (per curiam)); *In re Martinez*, 736 F. Supp. 3d 1189, 1201 (S.D. Fla. 2024) ("[A] district court 'can consider almost any factor rationally relevant but enjoys very broad discretion in granting or denying the motion [to intervene].'"). Proposed Intervenors clear these hurdles with ease.

Proposed Intervenors timely filed this motion such that there is no undue prejudice, *see supra* Argument Section I(A), and they assert claims and defenses that share a common question of law or fact. To deny intervention would deprive them of the chance to defend their interests. *Supra* Argument Sections I(B)-(D). District courts routinely grant permissive intervention where the main litigation could affect the ability to vote or dilute votes.[7] "Any doubt concerning the

---

[7] *See, e.g.*, Order, *United States v. Houston County*, No. 5:25-cv-00025-mtt (M.D. Ga. Mar. 4, 2025), ECF No. 13 (authorizing intervention to voters as plaintiffs in a Section 2 VRA challenge to an at-large election system); *New Ga. Project v. Raffensperger*, No. 1:21-CV-01229-JPB, 2021 WL 2450647, at *2 (N.D. Ga. June 4, 2021); Order, *Frazier v. Fulton Cnty. Dep't of Registration & Elections*, No. 1:24-cv-03819-scj (N.D. Ga. 2024), ECF No. 28 (granting intervention to the civic organization as defendant in a case related to NVRA list maintenance challenge); Endorsed

priority of allowing intervention should be resolved in favor of the proposed intervenors." *New Ga. Project v. Raffensperger*, No. 1:21-cv-1229, 2021 WL 2450647, at *2 (N.D. Ga. June 4, 2021).

Finally, Proposed Intervenors will add to this litigation. Because the Organizations have many Black members, they seek to defend fundamental privacy interests and voting rights through the lens of a community that has been historically disenfranchised, surveilled, and targeted by the government. As racial justice groups whose members' rights are directly at issue in this lawsuit, the Organizations bring important perspectives otherwise absent from this litigation, including from other proposed intervenors. Because Proposed Intervenors' participation will assist rather than cause prejudice or delay, the Court should grant permissive intervention.

---

Order, *Univ. of S. Fla. College Republicans v. Lutnick*, No. 8:25-cv-02486-WFJ-SDM-RSR (M.D. Fla. Nov. 20, 2025), ECF No. 55 (granting intervention to civic group in a case challenging census statistical methods); Order, *Fla. Decides Healthcare v. Byrd*, No. 4:25-cv-00211-mw-maf (N.D. Fla. May 14, 2025), ECF No. 88 (granting intervention to civic group related to an election bill); Order, *Voter Participation Ctr. v. Raffensperger*, No. 1:21-cv-01390-jpb (N.D. Ga. Jun. 4, 2021), ECF No. 50 (granting intervention to political parties); Order, *Black Voters Matter Fund v. Raffensperger*, No. 1:20-cv-4869-scj (N.D. Ga. Dec. 9, 2020), ECF No. 42 (same); Minute Order, *Ga. State Conf. of the NAACP v. Kemp*, No. 1:24-cv-04546-elr (N.D. Ga. Oct. 10, 2024) (same); Opinion and Order, *New Ga. Project v. Raffensperger*, No. 1:24-cv-03412-sdg (N.D. Ga. Dec. 16, 2024), ECF No. 154 (same); Order, *Vote.org v. Ga. State Election Bd.*, No. 1:22-cv-01734-jpb (N.D. Ga. Aug. 3, 2022), ECF No. 39 (same); Order, *Wood v. Raffensperger*, No. 1:20-cv-05155-tcb (N.D. Ga. Dec. 21, 2020), ECF No. 14 (same); Order, *Pearson v. Kemp*, No. 1:20-cv-04809-TCB (N.D. Ga. Dec. 3, 2020), ECF No. 42 (same); Order, *Ga. Republican Party, Inc. v. Raffensperger*, No. 1:20-cv-05018-elr (N.D. Ga. Dec. 14, 2020), ECF No. 15 (same).

## CONCLUSION

For the reasons stated, the Court should grant Proposed Intervenors' Motion to Intervene.

Dated: January 9, 2026

Respectfully submitted,

By:  */s/ Gerald Weber*

Gerald Weber, GA Bar No: 744878
LAW OFFICES OF GERALD R. WEBER, LLC
P.O. Box 5391
Atlanta, GA 31107
Tel: 404-522-0507
wgerryweber@gmail.com

Leah Frazier*
Robert N. Weiner*
Gillian Cassell-Stiga*
Julie M. Houk*
Grace Thomas*
Samantha Heyward*
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1500 K Street N.W., Suite 900
Washington, D.C. 20005
Tel: 202-662-8600
lfrazier@lawyerscommittee.org
rweiner@lawyerscommittee.org
gcassell-stiga@lawyerscommittee.org
jhouk@lawyerscommittee.org
gthomas@lawyerscommittee.org
sheyward@ lawyerscommittee.org

**Pro hac vice* application forthcoming

*Attorneys for Proposed Intervenors*