**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

UNITED STATES OF AMERICA,

       *Plaintiff*,

  v.

                         Case No. 5:25-CV-00548-CAR

BRAD RAFFENSPERGER, in his Official Capacity
as Secretary of State for the State of Georgia,

       *Defendant.*

**[PROPOSED] MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OF
PROPOSED INTERVENORS NATIONAL ASSOCIATION FOR THE ADVANCEMENT
OF COLORED PEOPLE, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF
COLORED PEOPLE GEORGIA STATE CONFERENCE, GEORGIA COALITION FOR
THE PEOPLE'S AGENDA, AND QUINETTE WESTBROOKS**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 3

LEGAL STANDARD .................................................................................................... 6

ARGUMENT ................................................................................................................. 7

   I.   Plaintiff Fails to State a Claim Under the Civil Rights Act of 1960 .................................. 7

      A.  Plaintiff fails to establish subject matter jurisdiction in this Court ............................. 8

      B.  The Complaint's allegations are insufficient to assert a claim to enforce the CRA's information access provisions. ...................................................................... 8

      C.  Plaintiff fails to assert an investigation of racial discrimination within the scope of the CRA. ................................................................................................... 10

   II.  Plaintiff's CRA claim cannot rest on either NVRA or HAVA .......................................... 14

   III.  Plaintiff is not entitled to the relief sought ....................................................................... 18

   CONCLUSION ........................................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re AAM Holding Corp.*,
153 F.4th 252 (2d Cir. 2025) ...................................................................................11

*Am. C.R. Union v. Phila. City Comm'rs*,
872 F.3d 175 (3d Cir. 2017)..............................................................................16, 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................6

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................................6

*Bellitto v. Snipes*,
935 F.3d 1192 (11th Cir. 2019) ..........................................................................2, 17

*Bennett v. Spear*,
520 U.S. 154 (1997)...............................................................................................14

*Broward Citizens for Fair Districts v. Broward Cnty.*,
No. 12-60317-CIV, 2012 WL 1110053 (S.D. Fla. Apr. 3, 2012)............................8

*California v. Trump*,
786 F. Supp. 3d 359 (D. Mass. 2025), *appeal docketed*, No. 25-01726 (1st Cir.
Aug. 1, 2025) ........................................................................................................17

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971)...............................................................................................14

*In re Coleman*,
208 F. Supp. 199 (S.D. Miss. 1962), *aff'd sub nom. Coleman v. Kennedy*, 313
F.2d 867 (5th Cir. 1963) ........................................................................................13

*Equal Emp. Opportunity Comm'n v. Kloster Cruise Ltd.*,
939 F.2d 920 (11th Cir. 1991) ...............................................................................11

*Equal Emp. Opportunity Comm'n v. Kronos Inc.*,
694 F.3d 351 (3d Cir. 2012), *as amended* (Nov. 15, 2012)...................................18

*Equal Emp. Opportunity Comm'n v. McLane Co., Inc.*,
857 F.3d 813 (9th Cir. 2017) .................................................................................11

*Equal Emp. Opportunity Comm'n v. United Air Lines, Inc.*,
287 F.3d 643 (7th Cir. 2002) .................................................................................11

*Equal Emp. Opportunity Comm'n v. Univ. of Notre Dame Du Lac*,
    715 F.2d 331 (7th Cir. 1983) ........................................18

*Equal Emp. Opportunity Comm'n v. Univ. of Pa.*,
    850 F.2d 969 (3d Cir. 1988)........................................18

*Fed. Trade Comm'n v. Turner*,
    609 F.2d 743 (5th Cir. 1980) ........................................11

*Fish v. Schwab*,
    957 F.3d 1105 (10th Cir. 2020) ........................................17

*Griffin v. Internal Revenue Serv.*,
    730 F. Supp. 3d 1312 (S.D. Fla. 2024) ........................................6

*Hanif v. Att'y Gen. of U.S.*,
    694 F.3d 479 (3d Cir. 2012)........................................16

*Kennedy v. Bruce*,
    298 F.2d 860 (5th Cir. 1962) ........................................13, 14

*Kennedy v. Lynd*,
    306 F.2d 222 (5th Cir. 1962) ........................................9, 10, 13, 19

*Kennedy v. Owen*,
    321 F.2d 116 (5th Cir. 1963) ........................................19

*King v. S. Poverty L. Ctr., Inc.*,
    594 F. Supp. 3d 1272 (M.D. Ala. 2022) ........................................10

*League of United Latin Am. Citizens v. Exec. Off. of the President*,
    780 F. Supp. 3d 135 (D.D.C. 2025) ........................................17

*League of United Latin Am. Citizens v. Exec. Off. of the President*,
    No. 25-cv-00946, 2025 WL 3042704 (D.D.C. Oct. 31, 2025) ........................................1, 2

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024)........................................9, 14

*Major League Baseball v. Crist*,
    331 F.3d 1177 ........................................10

*Owen v. Kennedy*,
    84 S. Ct. 12 (1963)........................................19

*Pa. State Conf. of NAACP Branches v. Sec'y Pa.*,
    97 F.4th 120 (3d Cir. 2024) ........................................12

*Project Vote, Inc. v. Kemp*,
208 F.Supp.3d 1320 (N.D. Ga. 2016) ...............................................................2, 15

*Project Vote/Voting for Am., Inc. v. Long*,
682 F.3d 331 (4th Cir. 2012) ...................................................................................15

*Project Vote/Voting For Am., Inc. v. Long*,
752 F. Supp. 2d 697 (E.D. Va. 2010) .......................................................................15

*Pub. Int. Legal Found., Inc. v. Bellows*,
92 F.4th 36 (1st Cir. 2024) ......................................................................................15

*Pub. Int. Legal Found., Inc. v. Chapman*,
595 F. Supp. 3d 296 (M.D. Pa. 2022), *vacated on standing grounds*, *Pub. Int.
Legal Found. v. Sec'y Pa.*, 136 F.4th 456 (3d Cir. 2025) .......................................15

*Pub. Int. Legal Found., Inc. v. Matthews*,
589 F. Supp. 3d 932 (C.D. Ill. 2022) .......................................................................15

*Pub. Int. Legal Found., Inc. v. N.C. Bd. of Elections*,
996 F.3d 257 (4th Cir. 2021) ...................................................................................15

*Russello v. United States*,
464 U.S. 16 (1983).....................................................................................................16

*Smiley v. Holm*,
285 U.S. 355 (1932)....................................................................................................2

*South Carolina v. Katzenbach*,
383 U.S. 301 (1966)...................................................................................................12

*Speaker v. U.S. Dep't of Health & Hum. Servs. Ctrs. for Disease Control &
Prevention*,
623 F.3d 1371 (11th Cir. 2010) .................................................................................6

*Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*,
411 F.3d 1242 (11th Cir. 2005) .................................................................................6

*True the Vote v. Hosemann*,
43 F. Supp. 3d 693 (S.D. Miss. 2014)......................................................................15

*United States v. Alabama*,
362 U.S. 602 (1960)...................................................................................................12

*United States v. Harris Methodist Fort Worth*,
970 F.2d 94 (5th Cir. 1992) ......................................................................................18

*United States v. Lynd*,
   301 F.2d 818 (5th Cir. 1962) ............................................................................13

*United States v. Mississippi*,
   380 U.S. 128 (1965)........................................................................................12

*Virmani v. Novant Health Inc.*,
   259 F.3d 284 (4th Cir. 2001) ..........................................................................18

*Wallace v. Secretary, U.S. Dept. of Homeland Sec.*,
   616 F. App'x 958 (11th Cir. 2015) ....................................................................6

**Statutes**

5 U.S.C.
   § 551(13).........................................................................................................9
   §§ 701-706.....................................................................................................14
   § 704.........................................................................................................9, 14
   § 706(2)(A) .....................................................................................................9
   § 706(2)(A), (C) ............................................................................................14

52 U.S.C.
   § 20507(i).......................................................................................................19
   § 20507(i)(1) ..................................................................................................16
   § 20701.......................................................................................................7, 18
   § 20701 *et seq.* ................................................................................................1
   § 20703...........................................................................................7, 8, 16, 18
   § 20705...........................................................................................................8
   § 20901 *et seq.* ..............................................................................................16
   § 21081(b).......................................................................................................17
   § 21082...........................................................................................................17
   § 21083(a)(1)(A)..............................................................................................17
   § 21083(a)(5)(B)(i) .........................................................................................16
   § 21085...........................................................................................................17

**Court Filings**

Br. for the United States as Amicus Curiae Supporting Plaintiff-Appellee and
   Urging Affirmance, *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331
   (4th Cir. 2012) (No. 11-1809), 2011 WL 4947283................................................15

Complaint, *United States v. Benson*, No. 1:25-cv-01148 (W.D. Mich. Sept. 25,
   2025), ECF No. 1 ...............................................................................................3

Complaint, *United States v. Board of Elections*, No. 1:25-cv-01338 (N.D.N.Y.
   Sept. 25, 2025), ECF No. 1 .................................................................................3

Complaint, *United States v. Commonwealth of Pennsylvania*, No. 2:25-CV-01481 (W.D. Pa. Sept. 25, 2025), ECF No. 1 ....................................................................3

Complaint, *United States v. Simon*, No. 0:25-cv-03761 (D. Minn. Sept. 25, 2025), ECF No. 1 ......................................................................................................................3

Complaint, *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. Sept. 25, 2025), ECF No. 1 ......................................................................................................................3

Mem. in Supp. of Mot. to Compel, *United States v. DeMarinis*, No. 1:25-cv-3934 (D. Md. Dec. 1, 2025), ECF No. 2-1 ......................................................................20

Mem. in Supp. of Mot. to Compel, *United States v. Hanzas*, No. 2:25-cv-903 (D. Vt. Dec. 1, 2025), ECF No. 2-2 ..............................................................................20

Mem. in Supp. of Mot. to Compel, *United States v. Oliver*, No. 1:25-cv-1193 (D. N.M. Dec. 2, 2025), ECF No. 2-2 ..........................................................................20

Mem. in Supp. of Req. for Order to Compel Produc. of Rs. Pursuant to 52 U.S.C. § 20701, *et seq.*, *United States v. Albence*, No. 1:25-cv-01453 (D. Del. Dec. 2, 2025), ECF No. 4 ....................................................................................................20

Mem. in Supp. of Req. for Order to Compel, *United States v. Griswold*, No. 1:25-cv-03967 (D. Colo. Dec. 11, 2025), ECF No. 5 .............................................................20

Mem. in Supp. of Req. for Order to Compel, *United States v. Nago*, No. 1:25-cv-00522 (D. Haw. Dec. 11, 2025), ECF No. 5-1 .................................................................20

**Other Authorities**

Exec. Order No. 14243, 90 Fed. Reg. 13681 (Mar. 20, 2025)........................................4

Exec. Order No. 14248, 90 Fed. Reg. 14005 (Mar. 25, 2025)....................................3, 4

Fed. Election Comm'n, *Implementing the National Voter Registration Act: A Report to State and Local Election Officials on Problems and Solutions Discovered 1995 - 1996* (1998) ...............................................................................19

Fed. R. Civ. P.
12(b)(1) ....................................................................................................1, 6, 7
12(b)(6) ....................................................................................................1, 6, 7
12(h)(3) .............................................................................................................6

H.R. Rep. No. 86-956 (1959), *reprinted in* 1960 U.S.C.C.A.N. 1939 ................7, 10, 12

H.R. Rep. No. 107-329(I) (2001)....................................................................................17

*Hearing on H.R. 8601 Before the S. Comm. on the Judiciary*, 86th Cong. 9 (1960) ...................12

*Justice Department Sues Arizona and Connecticut for Failure to Produce Voter Rolls*, U.S. Dep't of Just. (Jan. 6, 2026), https://perma.cc/W9DE-AA7V ..............................3

*Justice Department Sues Four States for Failure to Produce Voter Rolls*, U.S. Dep't. of Just. (Dec. 18, 2025), https://perma.cc/CAW8-7MLR ................................................3

*Justice Department Sues Six States for Failure to Provide Voter Registration Rolls*, U.S. Dep't of Just. (Sept. 25, 2025), https://perma.cc/KN7T-WBU8............................3

U.S. Comm'n on Civ. Rts., *Report of the United States Commission on Civil Rights* (1959)....................................................................................................................12

U.S. Comm'n on Civ. Rts, *Voting*, bk. 1 *in 1961 Commission on Civil Rights Report* (1961) ...................................................................................................................11

U.S. Const. art I, § 4, cl. 1...........................................................................................2

U.S. Dep't of Just., *Annual Report of the Attorney General of the United States for the Fiscal Year Ended June 30, 1962* (1962)...........................................................11

## INTRODUCTION

In an unprecedented, illegitimate attempt to seize control of state election administration, the United States Department of Justice ("DOJ") seeks Georgia's full unredacted voter files to create its own national registration database and verification apparatus. DOJ has demanded most, if not all, states to turn over their full voter databases—including internal state identifiers, driver's license numbers, Social Security Numbers ("SSNs"), full dates of birth, and associated information of political affiliation and activity of each voter. These requests far exceed anything DOJ could properly demand under applicable election law or in a properly substantiated federal investigation.

While the federal government has certain authority to ensure people are not discriminatorily disenfranchised, it does not have authority to supervise voter roll maintenance. And even if it did, DOJ has not alleged that Georgia has improperly managed its voter rolls. DOJ has undertaken unprecedented actions to control voter roll maintenance, apparently based on unfounded suspicion of widespread noncitizen voting, prompting its lawsuits to obtain the entire unredacted voter databases of 23 states, including Georgia. Courts have already found such unsupported generalities inadequate to sustain the Executive's *ultra vires* actions. *See, e.g.*, *League of United Latin Am. Citizens v. Exec. Off. of the President*, No. 25-cv-00946, 2025 WL 3042704, at *28 (D.D.C. Oct. 31, 2025) ("[T]he President has no constitutional power over election regulation that would support this unilateral exercise of authority.").

The Civil Rights Act of 1960, 52 U.S.C. § 20701 *et seq.* ("CRA"), under which DOJ asserts its sole claim, does not address citizenship verification procedures at all, let alone provide for disclosure of complete and unredacted state voter databases for that purpose. And nothing in the law authorizes DOJ to compel voter roll purges. Because DOJ fails to state a claim entitling it to the requested relief and fails to allege facts necessary to establish jurisdiction, the Court should dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

1

In support of its claim under the CRA, DOJ asserts only that the information provided by Defendant Secretary of State Brad Raffensperger included redactions in compliance with "Georgia law [that] prohibits the disclosure of voters' full date of birth, social security number, and driver's license number. O.C.G.A. § 21-2-225(b)." Compl. ¶¶ 24-25, ECF No. 1. Plaintiff cites no authority requiring production of a state's unredacted voter databases, including sensitive personal information, in their entirety. The NVRA "does not require the disclosure of sensitive information that implicates special privacy concerns." *Project Vote, Inc. v. Kemp*, 208 F.Supp.3d 1320, 1344 (N.D. Ga. 2016). Nor does HAVA contain a disclosure provision or "broaden[] the scope of the NVRA's list-maintenance obligations." *Bellitto v. Snipes*, 935 F.3d 1192, 1202 (11th Cir. 2019). Nor can DOJ use the CRA to achieve what neither the NVRA nor HAVA allow. The CRA provides a tool only for investigations of racial discrimination, not for fishing expeditions to support voter challenges.

Plaintiff's unprecedented effort to create its own parallel voter registration database for the purpose of independently purging voter registrations, not only outstrips its authority and intrudes on state prerogatives but also undermines the regulatory structure that the Constitution and Congress have crafted. The Constitution vests states with broad authority to administer elections, determine voter eligibility, and oversee list maintenance of its own voter rolls. U.S. Const. art I, § 4, cl. 1; *Smiley v. Holm*, 285 U.S. 355, 366 (1932) ("[The Elections Clause] provide[s] a complete code for congressional elections . . . in relation to notices, registration, supervision of voting, protection of voters, prevention of fraud and corrupt practices . . ."). The Constitution confers no authority on the Executive Branch to administer elections. *See League of United Latin Am. Citizens*, 2025 WL 3042704, at *26-28 (D.D.C. Oct. 31, 2025). Nor does the CRA, which was enacted to prevent systemic racial discrimination in election administration. Absent any claim of

discrimination, the CRA provides no means for the Executive Branch to supersede lawful state voter list maintenance or to obtain states' entire unredacted voter databases. The Court should deny the motion to compel and dismiss the Complaint.

**STATEMENT OF FACTS**

Without legal authority, Plaintiff seeks unilaterally to overhaul state administration of elections by creating a parallel federal database and system for voter verification. To that end, DOJ "has now sued 23 states for failing to provide voter roll data and will continue filing lawsuits…." *Justice Department Sues Arizona and Connecticut for Failure to Produce Voter Rolls*, U.S. Dep't of Just. (Jan. 6, 2026), https://perma.cc/W9DE-AA7V. DOJ justifies its document requests with baseless, discredited assertions of "vote dilution," "voter fraud," and "abuse," proclaiming the ostensible goal of obtaining "[c]lean voter rolls." [1] *Justice Department Sues Six States for Failure to Provide Voter Registration Rolls*, U.S. Dep't of Just. (Sept. 25, 2025), https://perma.cc/KN7T-WBU8. DOJ sanitizes these motives in the Complaint, but elsewhere has bared the rationale for its Georgia demands. *Justice Department Sues Four States for Failure to Produce Voter Rolls*, U.S. Dep't. of Just. (Dec. 18, 2025), https://perma.cc/CAW8-7MLR ("[D.C., Georgia, Illinois, and Wisconsin] need to give us this information, so we can do our duty to protect American citizens from vote dilution."). Further, DOJ seeks to implement an executive order that courts have

---

[1] *See* Exec. Order No. 14248, 90 Fed. Reg. 14005 (Mar. 25, 2025) ("the United States now fails to enforce basic and necessary election protections employed by modern, developed nations, as well as those still developing. . . . for example, . . . tying voter identification to a biometric database, while the United States largely relies on self-attestation for citizenship."); Complaint at 1, *United States v. Commonwealth of Pennsylvania*, No. 2:25-CV-01481 (W.D. Pa. Sept. 25, 2025), ECF No. 1 (citing Exec. Order No. 14248); Complaint at 2-3, *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. Sept. 25, 2025), ECF No. 1 (citing Exec. Order No. 14248 by reference); Complaint at 1, *United States v. Simon*, No. 0:25-cv-03761 (D. Minn. Sept. 25, 2025), ECF No. 1 (citing Exec. Order No. 14248 and discussing "voter fraud"); Complaint at 2, *United States v. Board of Elections*, No. 1:25-cv-01338 (N.D.N.Y. Sept. 25, 2025), ECF No. 1 (citing Exec. Order No. 14248 and discussing "voter fraud"); Complaint at 1, *United States v. Benson*, No. 1:25-cv-01148 (W.D. Mich. Sept. 25, 2025), ECF No. 1 (discussing "voter fraud").

previously enjoined, *see* Exec. Order No. 14248, 90 Fed. Reg. 14005 (Mar. 25, 2025), and other executive orders mandating the collection, cross-agency sharing, and pooling of data. *Id.* (requiring SSA to "make available the [SSN] Verification Service, the Death Master File, and any other Federal databases containing relevant information to all State and local election officials"); Exec. Order No. 14243, 90 Fed. Reg. 13681 (Mar. 20, 2025) ("Agency Heads shall take all necessary steps . . . to ensure Federal officials . . . have full and prompt access to all unclassified agency records, data, software systems, and information technology systems").

In furtherance of this effort, the federal government seeks to compel the disclosure of a "current electronic copy of [the] computerized statewide voter registration list including [without redaction] all fields ("SVRL")." Compl. ¶¶ 4, 19-29, ECF No. 1. Those efforts began with letters from DOJ to Georgia Secretary of State Brad Raffensperger ("SOS"), starting with a July 9, 2025 letter ("July 9 Letter") seeking information regarding Georgia's compliance with the NVRA and HAVA. *Id.* ¶ 19, followed by additional correspondence between the parties. *See Id.* ¶¶ 20-23; Pl.'s Mot. to Compel Ex. 1, ECF No. 2-2 (Letter from Michael E. Gates to Sec'y of State Brad Raffensperger dated Aug. 7, 2025) ("August 7 Letter"); Pl.'s Mot. to Compel Ex. 2, ECF No. 2-2, (Letter from Harmeet K. Dhillon to Sec'y of State Brad Raffensperger dated Aug. 14, 2025) ("August 14 Letter"); Pl.'s Mot. to Compel Ex. 3, ECF No. 2-2 (Letter from General Counsel Charlene S. McGowan to Harmeet K. Dhillon dated Dec. 8, 2025, ("December 8 Letter").

DOJ's August 7 Letter broadly requested "Georgia's statewide voter registration list," providing only the NVRA's *public* disclosure provision as authority. Ex at 1 at 1. ECF No. 2-2. The August 14 Letter contains the only reference to the CRA in DOJ's demands to the SOS. Ex 2, ECF No. 2-2. There, DOJ also declared that "*all fields*" includes every "registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the

registrant's social security number." *Id.* "The purpose of this request is to ascertain Georgia's compliance with the list maintenance requirements of the NVRA and HAVA." *Id*. Although the Complaint says nothing about where these records are kept or where their requests were sent, the August letters were addressed to the Secretary's and Election Division's Atlanta offices, located in the Northern District of Georgia.  Ex 1 at 1, 3, ECF No. 2-2; Ex.2, ECF No. 2-2.

DOJ admits that the Secretary provided responsive records with redactions of "sensitive information." Compl. ¶¶ 24-25, ECF No. 1. The complaint quotes the Secretary's explanation:

> Georgia law prohibits the disclosure of voters' full date of birth, social security number, and driver's license number. O.C.G.A. § 21-2-225(b). Accordingly, in compliance with state law, and in consultation with the Georgia Attorney General's office, the voter list provided excludes 'sensitive information that implicates special privacy concerns.' Project Vote, Inc. v. Kemp, 208 F. Supp. 3d 1320, 1344 (N.D. Ga. 2016).

Compl. ¶ 24, ECF No. 1; Ex. 3 at 4, ECF No. 2-2. The December 8 Letter annexed to Plaintiff's Motion to Compel further corroborates the breadth of the Secretary's production. Ex. 3 at 4, ECF No. 2-2 ("Supporting records showing Georgia's nation-leading list maintenance activities are being transmitted to you via secure transfer contemporaneously with this letter, along with Georgia's complete list of registered voters"). It also explains how the Secretary uses the Department of Homeland Security ("DHS") SAVE program to verify citizenship, as well as employs a "wide variety of reliable data sources that detect when voters move to a new county, move out of state, receive felony sentences, or are deceased." *Id*. at 2. As of December 8, 2025, the Secretary's Elections Division "sent out a total of 1,006,474 list maintenance notices," including 580,358 registration cancelations and 298,421 inactive status notices. *Id.* at 2-3.

Plaintiff's Complaint, August 7 Letter, and August 14 Letter make no mention of any underlying evidence of irregularities or even minor errors in the Secretary's maintenance of voter registration records. The Complaint asserts no racial discrimination grounding its investigation.

Instead, the Complaint makes an unsupported assertion that the underlying written letter demand "contained[ed] a statement of the basis and the purpose therefore," Compl. ¶ 27, ECF No. 1 and that ostensible purpose was to verify "compliance with federal election law, particularly the NVRA and HAVA." Compl. ¶ 9, ECF No.1. This recitation of DOJ's asserted purpose says nothing about the CRA.

## LEGAL STANDARD

A court must dismiss a claim if it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1), (h)(3). "The party bringing the underlying claim bears the burden of establishing federal subject matter jurisdiction." *Griffin v. Internal Revenue Serv.*, 730 F. Supp. 3d 1312, 1316 (S.D. Fla. 2024) (citing *Sweet Pea Marine, Ltd. v. APJ Marine, Inc*., 411 F.3d 1242, 1247 (11th Cir. 2005); *Wallace v. Secretary, U.S. Dept. of Homeland Sec.*, 616 F. App'x 958, 959 (11th Cir. 2015)).

A court must also dismiss a claim that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678. The complaint "must do more than recite these statutory elements in conclusory fashion." *Speaker v. U.S. Dep't of Health & Hum. Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1381 (11th Cir. 2010). "[A]llegations must proffer enough factual content to 'raise a right to relief above the speculative level.'" *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If the complaint alleges "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," a court must dismiss it. *Griffin*, 730 F. Supp. 3d at 1317 (S.D. Fla. 2024) (citing *Iqbal*, 556 U.S. at 678).

## ARGUMENT

### I.     Plaintiff Fails to State a Claim Under the Civil Rights Act of 1960.

Plaintiff's claim under the CRA must be dismissed for failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and (b)(6) because: (A) Plaintiff fails to plead the factual predicate to establish the Court's jurisdiction and no amendment could cure this defect, (B) the Complaint does not sufficiently allege a claim to enforce Title III disclosure provisions under the CRA; (C) Plaintiff fails to assert an investigation of racial discrimination within the scope of the CRA.

Title III of the CRA sets forth the circumstances under which DOJ may access voter information under the statute and its remedies if it is denied such access. Under 52 U.S.C. § 20701:

> Every officer of election shall retain and preserve, for a period of twenty-two months from the date of any general, special, or primary election . . . all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such [federal] election . . . .

52 U.S.C. § 20701. To inspect, reproduce, or copy election records described in Section 20701 "at the principal office of such custodian," the Attorney General must present "to the person having custody, possession, or control of such record or paper" a written request containing "a statement of the basis and the purpose" for such a request. *Id.* § 20703. The requirement that the Attorney General state the basis and purpose of the request enables a district court to determine whether the request is consistent with the statutory objectives, which is to speedily remedy voting interference and intimidation by private and public individuals based on race. *See* H.R. Rep. No. 86-956 (1959), *reprinted in* 1960 U.S.C.C.A.N. 1939, 1944 ("The purpose of Title III is to . . . [protect] the right . . . to vote without discrimination on account of race. This is the same purpose contained in the Civil Rights Act of 1957, which authorizes the Attorney General to institute civil proceedings for preventive relief from the discriminatory denial of the right to vote.").

### A.    Plaintiff fails to establish subject matter jurisdiction in this Court.

Plaintiff fails to plead a claim under the CRA or establish jurisdiction in this court. Plaintiff failed to allege that the records are held in the Middle District of Georgia or that there is an underlying failure to turn over records to which it is entitled. A federal court obtains jurisdiction "for the district in which a demand is made pursuant to section 20703 . . . , or in which a record or paper so demanded is located." 52 U.S.C. § 20705. Plaintiff fails to allege within the Complaint where its request was sent. Plaintiff simply alleges that it "contacted" or "sent a letter" to the Secretary. Compl. ¶¶ 19-20, 22, ECF No. 1. Plaintiff does not identify the address to which these communications were directed. *Id*. The Court may infer from the August letters that DOJ's requests were sent to the Secretary of State's office in Atlanta. *See* ECF No. 2-2. Plaintiff also fails to allege where the requested records are kept. Presumably, the records are located at the Secretary's "principal office," 52 U.S.C. § 20703, in Atlanta, which is not in the Middle District. Plaintiff therefore may not bring this claim in the Middle District of Georgia under 52 U.S.C. § 20705, *see* Compl. ¶ 5, ECF No. 1.

### B.    The Complaint's allegations are insufficient to assert a claim to enforce the CRA's information access provisions.

Plaintiff fails to provide the purpose and basis of its request for records *in* the requests sent to the Secretary, or allege any basis for its request. "Merely reciting the elements of a cause of action, as the Plaintiffs have done, does not meet th[e] standard." *Broward Citizens for Fair Districts v. Broward Cnty*., No. 12-60317-CIV, 2012 WL 1110053, at *5 (S.D. Fla. Apr. 3, 2012).

Title III mandates that the Attorney General's "demand [for records] shall contain a statement of the basis and the purpose therefor." 52 U.S.C. § 20703. Because the statute enumerates "basis" and "purpose" separately and these terms refer to different concepts, a written request must conspicuously provide both. Further, "*the* basis and *the* purpose therefor" and not "*a*

basis and *a* purpose therefor" indicates that not any basis or purpose may entitle the Attorney General to election records. Neither the Complaint nor the August letters assert the bare minimum of factual support to establish a "basis*" and* "purpose" within the purview of the CRA.

Plaintiff's Complaint and the underlying letter demands fail to assert as facts the existence of demands for information under of the CRA. While the Fifth Circuit opined that the scope of review of a Title III access request is limited in the context of an investigation of voting rights discrimination under the CRA, *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962), the DOJ does not even purport to be undertaking such an investigation of voter intimidation and discrimination, which the Fifth Circuit recognized is the very purpose of Title III disclosure provisions. *Lynd*, 306 F.2d at 228 ("The Title III proceeding is investigative in nature. Its purpose is to enable the Attorney General to determine whether § 1971 suits or similar actions should be instituted. And it is to enable him to obtain evidence for use in such cases if and when filed."). Rather, DOJ here attempts to use CRA Title III disclosure provisions for a purpose wholly unrelated to the CRA. Thus, the question here is about the bounds of Title III itself, which is a legal question subject to judicial review. *See generally Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024); *see also* 5 U.S.C. §§ 551(13), 704, 706(2)(A) (defining agency action and empowering a court to set it aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.").

Even when viewed in the light most favorable to DOJ, the Complaint's description of the *underlying request* is virtually silent on the purpose and basis for demanding complete, unredacted voter files. *See* Compl. ¶ 27, ECF No. 1 (providing only a conclusory statement). The letters annexed to Plaintiff's motion to compel confirm Plaintiff's failure to state a basis and purpose pursuant to the CRA. *See* Pls' Mot. to Compel Ex. 2, ECF No. 2-2 (listing without a basis in the August 14 letter that its purpose was "to ascertain Georgia's compliance" with NVRA and HAVA

list maintenance requirements). No basis *and* purpose is provided. Plaintiff's letters fail to issue a proper demand under the CRA. Plaintiff's mere "threadbare recitals of the elements" warrant dismissal. *King v. S. Poverty L. Ctr., Inc*., 594 F. Supp. 3d 1272, 1278 (M.D. Ala. 2022).

Further, the Complaint and underlying letter demands fail to even imply or suggest that the Defendant or anyone administering elections in Georgia committed any violation of HAVA, NVRA, CRA, or otherwise. *See generally Major League Baseball v. Crist*, 331 F.3d 1177, 1187 ("[Civil] investigations premised solely upon *legal* activity are the very type of 'fishing expeditions' that were that were the target of Justice Holmes's assault in *American Tobacco*."); *id.* at 1187 n.23 ("[T]he [state] Attorney General has no idea what illegal conduct might have occurred, or who might have engaged in this conduct. Even so, the Attorney General believes he has the power to commence a full-blown investigation. . .  the Constitution clearly require[s] that the Attorney General have *something*." (emphasis in original)). Instead, the letters assert a broad desire to "ascertain" "compliance." *See* Ex. 2, ECF No. 2-2. Neither the Complaint nor DOJ's letters reference an investigation of civil rights violations or racial discrimination in Georgia's electoral system. DOJ therefore has not stated a claim for relief under the CRA.

### C.    Plaintiff fails to assert an investigation of racial discrimination within the scope of the CRA.

Title III disclosure provisions were not enacted to provide DOJ with unfettered access to voter data or as a general mechanism to access it, and they have never been used as a means to facilitate list maintenance as Plaintiff seeks to do here. Rather, Title III was enacted to enable investigation of voter intimidation and interference based on racial discrimination. H.R. Rep. No. 86-956, *reprinted in* 1960 U.S.C.C.A.N. 1939, 1944-45; *Lynd*, 306 F.2d at 228 (Title III is an invaluable "investigative" tool "to enable the Attorney General to determine whether [CRA] suits or similar actions *should* be instituted" to combat racial discrimination in the election process

10

(emphasis added)); U.S. Comm'n on Civ. Rts, *Voting*, at 99, bk. 1 *in 1961 Commission on Civil Rights Report* (1961) (referring to Title III as "primarily an investigative tool"); *see also* U.S. Dep't of Just., *Annual Report of the Attorney General of the United States for the Fiscal Year Ended June 30, 1962*, at 166 (1962) (describing the Attorney General's operative procedure for the investigative use of county records for discrimination actions).

On DOJ's theory, it is entitled to conduct a digital dragnet, without any limitation and with no judicial review. Such an assertion of absolute, unreviewable authority is frightening. And it is not consistent with the consistent judicial recognition of the limits on federal power. As with civil investigative demands, DOJ's investigative authority under the statute must be limited to the scope and enforcement power of the statute's act. *See generally Equal Emp. Opportunity Comm'n v. Kloster Cruise Ltd.*, 939 F.2d 920, 923 (11th Cir. 1991) (indicating that jurisdictional challenges to the EEOC's investigative demands may be appropriate when the agency attempts to investigate a charge totally unrelated to illegal discrimination); *In re AAM Holding Corp.*, 153 F.4th 252, 259-60 (2d Cir. 2025) (referring to the statute's text, context, and history to determine the EEOC's authority to issue and enforce administrative subpoenas lies within its "role in combating employment discrimination" and its "mandate to secure more effective enforcement of Title VII" (internal quotation omitted)); *Equal Emp. Opportunity Comm'n v. McLane Co., Inc.*, 857 F.3d 813 (9th Cir. 2017) (grounding the authority of the EEOC's right to obtain information to its investigation under Title VII); *Equal Emp. Opportunity Comm'n v. United Air Lines, Inc.*, 287 F.3d 643, 650 (7th Cir. 2002); *see also Fed. Trade Comm'n v. Turner*, 609 F.2d 743, 745 (5th Cir. 1980) (declining to extend, without a specific congressional mandate or a clearly discernable statutory implication, the FTC's investigative authority to ancillary issues).

The history and purpose of the CRA bear out this racial discrimination requirement. Congress enacted the Civil Rights Act of 1960 to remedy racial discrimination experienced by Black voters. H.R. Rep. No. 86-956, *reprinted in* 1960 U.S.C.C.A.N. 1939; *South Carolina v. Katzenbach*, 383 U.S. 301, 313 (1966); *Pa. State Conf. of NAACP Branches v. Sec'y Pa.*, 97 F.4th 120, 133 (3d Cir. 2024). After the passage of the Civil Rights Act of 1957, local election officials heightened registration and ballot access restrictions against Black voters by passing discriminatory election devices, such as imposing literary tests, vacating public offices to obstruct a court from enjoining a proper party defendant, and passing laws requiring the destruction of election records. *See United States v. Mississippi*, 380 U.S. 128, 132-33 (1965) (passage of Mississippi literacy tests in 1954); *United States v. Alabama*, 362 U.S. 602, 603-04 (1960); *Hearing on H.R. 8601 Before the S. Comm. on the Judiciary*, 86th Cong. 9 (1960) (statement of Lawrence Walsh, Deputy Att'y Gen. of the United States) (referring to Alabama's destruction of records 30 days after an applicant's voter registration was denied).

A recognition of the need for records to enforce voting rights laws emerged close in time to the consideration and passage of the CRA. A 1959 report from a fact-finding arm of Congress, the U.S. Commission on Civil Rights, supported a records provision citing DOJ's failure to secure an indictment under the 1957 act against Louisiana's illegal purging of 6,100 Black voters. U.S. Comm'n on Civ. Rts., *Report of the United States Commission on Civil Rights*, at 131 (1959). The Deputy Attorney General testified before Congress that "[i]n many cases, discrimination in registration can be proved only by comparing the records of [Black] applicants with those of white applicants. At the present time [in 1960], the Government lack[s] any procedure by which to compel the production of these records *before suit is filed*." *Hearing on H.R. 8601 Before the S.*

*Comm. on the Judiciary*, 86th Cong. 9 (1960) (statement of Lawrence Walsh, Deputy Att'y Gen. of the United States) (emphasis added).

The few courts that interpreted Title III recognized it as a mechanism for preventing racial discrimination in voting. In 1960, the Attorney General sent out written records requests under Title III to county officials residing in Alabama, Louisiana, and Mississippi, clearly stating in writing that the "demand is based upon information . . . tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within [their] jurisdiction" and that the "purpose . . . is to examine the aforesaid records in order to ascertain whether or not violations of Federal law in regard to registration and voting have occurred." *Kennedy v. Bruce*, 298 F.2d 860, 861 (5th Cir. 1962) (quoting letter); *In re Coleman*, 208 F. Supp. 199, 199-200 (S.D. Miss. 1962) (same), *aff'd sub nom. Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963); *Kennedy v. Lynd*, 306 F.2d at 229 n.6 (same). The Fifth Circuit held that such a stated basis is valid. *United States v. Lynd*, 301 F.2d 818, 822 (5th Cir. 1962) (requiring a "simple assertion" "that there are reasonable grounds for belief that certain voters are being discriminatorily denied their voting rights in a given county"); *see also Kennedy v. Bruce*, 298 F.2d at 863 & n.2 (noting that, in light of statistical evidence where there were more registered white voters than there were white citizens in a county, "failures to purge voters who have moved away or have died . . . d[o] not bear any particular importance" on the racial discrimination Title III claims). Similarly, a valid purpose may be "to inspect and copy all of the voter papers and records as defined" "in fulfillment of the duties imposed upon [the Attorney General] by the [CRA] of 1957 and 1960." *Kennedy v. Lynd*, 306 F.2d at 228; *see also Kennedy v. Bruce*, 298 F.2d at 864 (lamenting that officials should not frustrate the DOJ's ability "to inspect the records of a county having such a disparity in the percentage of voters to eligible citizens as between the races").

Nowhere among the stated reasons for Plaintiff's broad demands are allegations of racial discrimination. Thus, relief is entirely untethered from the "purpose" and "basis" understood and enforced under the CRA. The demands are irrelevant to a racial discrimination investigation. General list maintenance compliance is not a valid basis or purpose for a Title III claim, nor are concerns of duplicative registration. *See Bruce*, 298 F.2d at 863 n.2. None of Plaintiff's asserted interests fall within Title III's scope of a valid purpose and basis for a racial discrimination suit.

DOJ cannot enforce its demand for documents for the additional reason that it violates the Administrative Procedure Act (APA). Tellingly, the cases interpreting the document provisions of the CRA in the early 1960s did not consider the APA, and Congress recodified much of the APA in 1966. *See* 5 U.S.C. §§ 701-706. The APA implements the strong presumption in favor of judicial review, *see Loper Bright Enterprises v. Raimondo*, 603 U.S 369, 391-92 (2024), which DOJ would cast aside. DOJ's document demand is "final agency action" subject to APA review. 5 U.S.C. § 704. It is not part of any proceeding nor is it preliminary to a CRA investigation. It is a standalone imposition on the State, requiring production of records, a final action of the agency that is not merely tentative and from which legal consequences flow. *Bennett v. Spear,* 520 U.S. 154, 178 (1997). The Court can set aside such agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations," *Id.*; 5 U.S.C. § 706(2)(A), (C). The first and critical step in that inquiry is whether the agency acted within the scope of its authority. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415-16 (1971). Actions entirely unrelated to the purpose of the CRA are arbitrary and capricious.

## II.    Plaintiff's CRA claim cannot rest on either NVRA or HAVA.

Plaintiff's Complaint, while bringing only one claim under the CRA, largely consists of excerpts of the statutory provisions of the NVRA and HAVA. But neither the NVRA nor HAVA

support Plaintiff's demand to produce Georgia's complete, unredacted statewide voter list. DOJ cannot bootstrap NVRA and HAVA claims into the CRA to avoid a half century of jurisprudence.

*First*, courts routinely permit states to redact sensitive information in compliance with the NVRA's public disclosure requirements. *See, e.g.*, *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1344-45 (N.D. Ga. 2016) (holding the NVRA "does not require the disclosure of sensitive information that implicates special privacy concerns," including full telephone numbers, full SSNs, full email addresses, and any birth dates); *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) (authorizing the redactions of "uniquely or highly sensitive personal" data); *Pub. Int. Legal Found., Inc. v. N.C. Bd. of Elections*, 996 F.3d 257, 267-68 (4th Cir. 2021) (same); *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012) (affirming district court order to redact SSNs); *Pub. Int. Legal Found., Inc. v. Chapman*, 595 F. Supp. 296, 306 (M.D. Pa. 2022) (exempting the disclosure of Department of Motor Vehicle records), *vacated on standing grounds*, *Pub. Int. Legal Found. v. Sec'y Pa.*, 136 F.4th 456 (3d Cir. 2025); *Pub. Int. Legal Found., Inc. v. Matthews*, 589 F. Supp. 3d 932, 942 (C.D. Ill. 2022) (authorizing "proper redaction of highly sensitive information"); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 736, 739 (S.D. Miss. 2014) (authorizing redactions of birthdates and SSNs); *Project Vote/Voting For Am., Inc. v. Long*, 752 F. Supp. 2d 697, 711 (E.D. Va. 2010) (authorizing redactions of SSNs).

Indeed, DOJ itself has argued in prior cases that "the NVRA does not prohibit States from redacting 'uniquely sensitive information' like voters' [SSNs] before disclosing records." Br. for the United States as Amicus Curiae in Supp. of Plaintiff-Appellee, *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36 (No. 23-1361), 2023 WL 4882397, at *27-30 (quoting *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d at 339). *See also* Br. for the United States as Amicus Curiae Supporting Plaintiff-Appellee and Urging Affirmance, *Project Vote/Voting for Am., Inc.*, 682 F.3d

331 (No. 11-1809), 2011 WL 4947283, at *11, 24-26 (arguing sensitive information may be redacted to address legitimate privacy concerns).

DOJ's assertion that it would protect the security and confidentiality of Georgia voters' sensitive information if produced, *see* Ex. 2, ECF No. 2-2, is irrelevant. Such assurances do not provide authority to compel access to that information where none otherwise exists. Nor does anything in the text of the NVRA or the caselaw interpreting it afford DOJ any special rights to inspect a state's voter rolls—DOJ's right to examine a state's voter registration records under the NVRA is coextensive with the general public. "As its text makes clear, NVRA was intended as a shield to protect the right to vote, not as a sword to pierce it." *Am. C.R. Union v. Phila. City Comm'rs*, 872 F.3d 175, 182 (3d Cir. 2017).

*Second*, HAVA does not authorize access to the data Plaintiff requests. HAVA does not have a disclosure provision and thus does not afford the relief Plaintiff seeks. Unlike the NVRA and CRA, HAVA is silent on disclosure to DOJ or the public. *Compare* 52 U.S.C. § 20507(i)(1) (public inspection provision) *and* 52 U.S.C. § 20703 (Attorney General inspection provision), *with* 52 U.S.C. § 20901 *et seq.* HAVA does, however, provide for limited data-sharing between state agencies, *see* 52 U.S.C. § 21083(a)(5)(B)(i). "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Hanif v. Att'y Gen. of U.S.*, 694 F.3d 479, 486 (3d Cir. 2012) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).

Plaintiff cannot overcome these hurdles with vague assertions that access to Georgia's full unredacted SVRL is necessary to enforce HAVA. The purpose of HAVA was to make federal funding available to "improve the election infrastructure," and its provisions govern election

technology at the systems level. H.R. Rep. No. 107-329(I), at 57 (2001); *see* also 52 U.S.C. § 21081(b) (defining "voting system"). In fact, HAVA's provisions concerning voter registration administration dictate that records be "defined, maintained, and administered at the State level." 52 U.S.C. § 21083(a)(1)(A). Nor does Plaintiff identify any section of HAVA that requires Defendant to do anything *other* than what Plaintiff alleges was done here. *Bellitto v. Snipes*, 935 F.3d 1192, 1202 (11th Cir. 2019) ("Nothing in HAVA broadens the scope of the NVRA's list-maintenance obligations."); *see also Fish v. Schwab*, 957 F.3d 1105, 1136 (10th Cir. 2020) (state documentary proof requirement imposed on NVRA citizenship self-attestation constituted an unconstitutional burden on voting).

HAVA was enacted to enhance state election administration, not to federalize it or facilitate voter roll purges. In fact, HAVA "attempts to increase voter participation by limiting the manner in which states may remove voters from the voting rolls." *Am. C.R. Union*, 872 F.3d at 181; 52 U.S.C. § 21082. And Congress left to the states the implementation of HAVA standards and the administration of elections. *See* 52 U.S.C. § 21085. A House Committee report on HAVA explained that the statute did not "preempt any state or local law." H.R. Rep. No. 107-329(I) at 57; *see also Am. C.R. Union*, 872 F.3d at 185-87 (holding HAVA does not require voters to be purged in violation of state law).

DOJ cannot forcibly impose Executive Branch policy on the states, especially not policy that is "contrary to the manifest will of Congress, as expressed in the text, structure, and context of the NVRA and HAVA." *California v. Trump*, 786 F. Supp. 3d 359, 371-72 (D. Mass. 2025) (citing *League of United Latin Am. Citizens v. Exec. Off. of the President*, 780 F. Supp. 3d 135, 195 (D.D.C. 2025)), *appeal docketed*, No. 25-01726 (1st Cir. Aug. 1, 2025). Plaintiff has identified no legal basis for its CRA claim.

**III.    Plaintiff is not entitled to the relief sought.**

Having failed to articulate a violation under any federal law to support its CRA claim, Plaintiff has equally failed to identify a cognizable injury. Plaintiff's Title III claim rests on the faulty premise that it is entitled to an unbounded scope of state records and data, without limitation under state and federal law. But Title III mandates records to "be made available for inspection, reproduction, and copying at the principal office of such custodian" of the records. 52 U.S.C. § 20703. It does not provide for the wholesale transfer of unredacted state databases. Plaintiff concedes that it was provided records in response to its request and that this action arises from the unsupported allegation that the federal government is entitled to an entire database containing sensitive personal information. *See* Compl. ¶¶ 24-25, ECF No. 1. Plaintiff's gripe does not lie with Defendant's denial of a "record or paper" under the statute. 52 U.S.C. §§ 20701, 20703. Instead, Plaintiff disputes any ability to redact or withhold certain sensitive information protected by state and federal privacy law and demands complete custodial transfer of a state agency system.

Redactions of sensitive personally identifying information are routine and appropriate under Title III, especially here where the Plaintiff has not even attempted to justify the proposed burden on individual rights and goals that conflict with the express purposes of the statutes upon which it rests its claim. Nothing in Title III of the CRA prohibits redactions of personal information from records produced. *See Equal Emp. Opportunity Comm'n v. Univ. of Pa.*, 850 F.2d 969, 982 (3d Cir. 1988) (vacating order to release nonredacted records and holding redactions of identifying information in records sought by Title VII investigation may be justified); *Equal Emp. Opportunity Comm'n v. Univ. of Notre Dame Du Lac*, 715 F.2d 331, 337 (7th Cir. 1983) (ordering redactions of identifying information); *Virmani v. Novant Health Inc.*, 259 F.3d 284, 287 n. 4 (4th Cir. 2001) (discussing appropriate possible redactions in the production of documents); *United States v. Harris Methodist Fort Worth*, 970 F.2d 94, 103–04 (5th Cir. 1992) (same); *Equal Emp.*

*Opportunity Comm'n v. Kronos Inc.*, 694 F.3d 351, 365 n.10 (3d Cir. 2012), *as amended* (Nov. 15, 2012) (same). Further, in 1960, legislators could not have fathomed that such confidential information would be disclosed because most states did not require that information in registration process. In fact, around the time the NVRA was passed, over 30 years after enactment of the CRA, only eight states required at least part of a SSN on a voter registration application, and many states did not require any portion of a SSN or driver's license number to be listed. Fed. Election Comm'n, *Implementing the National Voter Registration Act: A Report to State and Local Election Officials on Problems and Solutions Discovered 1995 – 1996*, app. A (1998) (under Recommendation 1).

Courts interpreting Title III disclosures recognized that they do not provide unbounded access. Never has the Fifth Circuit, nor any Circuit, mandated the disclosure of the types of personal information Plaintiff now seeks. In *Kennedy v. Lynd*, 306 F.2d at 231, the court was clear that it was "not discussing confidential, private papers and effects[, but] rather dealing with public records which ought ordinarily to be open to legitimate reasonable inspection and which by nature relate directly to the most vital of all public functions—the franchise of the citizen." *Id.* at 231. In declining to stay the disclosure of election records in *Kennedy v. Owen*, 321 F.2d 116 (5th Cir. 1963), Supreme Court Justice Hugo Black explained that the Fifth Circuit's order "only require[d] [states] to make available to the Attorney General or his representative, *under fair and reasonable conditions*, records of which movants are not the owners but are only custodians for the State or its agencies." *Owen v. Kennedy*, 84 S. Ct. 12, 13 (1963) (emphasis added). Disclosure has never been absolute and is subject to qualification "under fair and reasonable conditions." *Id.*

Further, redactions of sensitive information are consistent with the interpretation of this body of election administration and voter protection law. "[A]ll records" under 52 U.S.C. § 20507(i) is construed to protect the privacy interests of voters. So, too, should this usage be under

Title III. *See* Mem. in Supp. of Req. for Order to Compel Produc. of Rs. Pursuant to 52 U.S.C. § 20701, *et seq.* at 15 n.4, *United States v. Albence*, No. 1:25-cv-01453 (D. Del. Dec. 2, 2025), ECF No. 4 ("Although this Motion for an Order to Show Cause is made under the CRA, the United States notes that the NVRA includes a similar requirement for production of Federal election records. . . . '[W]hen Congress uses the same language in two statutes having similar purposes. . . it is appropriate to presume that Congress intended that text to have the same meaning in both statutes.' *Smith v. City of Jackson*, 544 U.S. 228, 233 (2005) (plurality opinion).").[2] As courts have denied relief to plaintiffs seeking sensitive information under the NVRA or HAVA, this Court should do the same under the CRA.

The Complaint simply does not support DOJ's demand for complete unredacted voter files. No facts support the relief sought under the CRA. The Complaint must be dismissed.

---

[2] *See also* Mem. in Supp. of Mot. to Compel at 12, n.3, *United States v. Hanzas*, No. 2:25-cv-903 (D. Vt. Dec. 1, 2025), ECF No. 2-2 (same); Mem. in Supp. of Mot. to Compel at 13 n.3, *United States v. DeMarinis*, No. 1:25-cv-3934 (D. Md. Dec. 1, 2025), ECF No. 2-1 (same); Mem. in Supp. of Mot. to Compel at 11 n.3, *United States v. Oliver*, No. 1:25-cv-1193 (D. N.M. Dec. 2, 2025), ECF No. 2-2 (same); Mem. in Supp. of Req. for Order to Compel at 8 n.3, *United States v. Griswold*, No. 1:25-cv-03967 (D. Colo. Dec. 11, 2025), ECF No. 5 (same); Mem. in Supp. of Req. for Order to Compel at 17 n.3, *United States v. Nago*, No. 1:25-cv-00522 (D. Haw. Dec. 11, 2025), ECF No. 5-1 (same).

## CONCLUSION

For these reasons, Proposed Intervenors respectfully request that the Court to dismiss the Complaint under Rule 12(b)(1) and 12(b)(6).

Dated: January 9, 2026                                Respectfully submitted,

By: */s/ Gerald Weber*

Gerald Weber, GA Bar No: 744878
LAW OFFICES OF GERALD R. WEBER LLC
P.O. Box 5391
Atlanta, GA 31107
Tel: 404-522-0507
wgerryweber@gmail.com

Leah Frazier*
Robert N. Weiner*
Gillian Cassell-Stiga*
Julie M. Houk*
Grace Thomas*
Samantha Heyward*
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 K Street N.W., Suite 900
Washington, D.C. 20005
Tel: 202-662-8600
lfrazier@lawyerscommittee.org
rweiner@lawyerscommittee.org
gcassell-stiga@lawyerscommittee.org
jhouk@lawyerscommittee.org
gthomas@lawyerscommittee.org
sheyward@ lawyerscommittee.org

**Pro hac vice* application forthcoming

*Attorneys for Proposed Intervenors*