**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | |
| *Plaintiff*, | |
| v. | Civil Action No. 5:25-cv-00548-CAR |
| BRAD RAFFENSPERGER, in his official capacity as Secretary of State for the State of Georgia, | |
| *Defendant*. | |

**DEFENDANT RAFFENSPERGER'S BRIEF IN SUPPORT OF MOTION TO
DISMISS PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................. ii

TABLE OF AUTHORITIES ........................................................................... iv

INTRODUCTION ........................................................................................... 1

FACTUAL BACKGROUND ............................................................................ 2

I.    Georgia and federal laws on voter registration and list maintenance. ........ 2

    A.    Georgia law on statewide voter database ................................................ 2

    B.    Federal laws governing voter registration and maintenance. .............. 3

II.    The Attorney General's demand for the unredacted voter file. ................... 5

III.    This filing and service of this litigation. .......................................... 9

ARGUMENT AND CITATION OF AUTHORITY .................................................. 10

I.    This Court should dismiss the Complaint because it lacks subject-matter jurisdiction (Fed. R. Civ. P. 12(b)(1)). .......................................................... 10

II.    Alternatively, this Court should dismiss the Complaint for improper venue (Fed. R. Civ. P. 12(b)(3)). .......................................................................... 12

III.    This Court should dismiss the Complaint for lack of personal jurisdiction and insufficient service of process (Fed. R. Civ. P. 12(b)(1) and (5)). .................... 12

IV.    This Court should dismiss the Complaint for failure to state a claim upon which relief can be granted (Fed. R. Civ. P. 12(b)(6)). ............................................. 13

    A.    Legal standards under the CRA. ............................................................. 13

    B.    The DOJ's demand letter does not meet the statutory requirements under the CRA. ..................................................................................... 13

    C.    Georgia's privacy protections are not preempted by the CRA ........... 14

    D.    The DOJ's stated purpose is not consistent with the CRA, so it cannot proceed with this action ....................................................................... 16

E.     The DOJ's demand exceeds its authority under other statutory provisions. ........................................................................ 17

CONCLUSION ............................................................................. 20

# TABLE OF AUTHORITIES

## Cases

*A. Philip Randolph Institute v. Raffensperger,*
  Case No. 1:24-cv-03412-SDG (N.D. Ga.) ............................................................... 5

*Arizona v. Inter Tribal Council of Arizona, Inc.,*
  570 U.S. 1 (2013) ............................................................................................... 15, 16

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .................................................................................................. 10

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) .................................................................................................. 10

*Black Voters Matter Fund v. Raffensperger,*
  508 F. Supp. 3d 1283 (N.D. Ga. 2020) ...................................................................... 4

*Brown v. Sec'y of State of Florida,*
  668 F.3d 1271 (11th Cir. 2012) ............................................................................... 15

*Broyles v. Texas,*
  618 F. Supp. 2d 661 (S.D. Tex. 2009) ...................................................................... 17

*Cottone v. Jenne,*
  326 F.3d 1352 (11th Cir.2003) ................................................................................. 18

*Crawford v. Marion Cnty. Election Bd.,*
  472 F.3d 949 (7th Cir. 2007) .................................................................................... 17

*Delong Equip. Co. v. Washington Mills Abrasive Co.,*
  840 F.2d 843 (11th Cir. 1988) ................................................................................. 12

*Douglas v. Yates,*
  535 F.3d 1316 (11th Cir. 2008) ............................................................................... 18

*Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity,*
  878 F.3d 371 (D.C. Cir. 2017) ................................................................................. 19

*Fair Fight Action, Inc. v. Raffensperger,*
  1:18-CV-5391-SCJ, 2021 WL 9553856 (N.D. Ga. Mar. 31, 2021) .................... 4, 5

*Fair Fight Action, Inc. v. Raffensperger,*
  634 F. Supp. 3d 1128 (N.D. Ga. 2022) .................................................................. 2, 3

*Foster v. Love,*
    522 U.S. 67 (1997) ............................................................................... 15

*Ga. Coalition for the People's Agenda v. Raffensperger,*
    Case No. 1:18-cv-04727-ELR (N.D. Ga.) ........................................... 3, 5

*Hi-Tech Pharm., Inc. v. HBS Int'l Corp.,*
    910 F.3d 1186 (11th Cir. 2018) .......................................................... 11

*In re Georgia Senate Bill 202,*
    Case 1:21-mi-55555-JPB (N.D. Ga.) ..................................................... 5

*Indiana Democratic Party v. Rokita,*
    458 F. Supp. 2d 775 (S.D. Ind. 2006) ................................................ 17

*Johnson v. City of Atlanta,*
    107 F.4th 1292 (11th Cir. 2024) ......................................................... 11

*Kennedy v. Lynd,*
    306 F.2d 222 (11th Cir. 1962) ...................................................... 14, 16

*Kirksey v. City of Jackson, Miss.,*
    663 F.2d 659 (5th Cir. 1981) .............................................................. 17

*Project Vote, Inc. v. Kemp,*
    208 F. Supp. 3d 1320 (N.D. Ga. 2016) ............................................ 9, 16

*Pub. Interest Legal Found., Inc. v. Bellows,*
    92 F.4th 36 (1st Cir. 2024) ................................................................. 16

*Senne v. Vill. of Palatine, Ill.,*
    695 F.3d 597 (7th Cir. 2012) .............................................................. 20

*Sweet Pea Marine, Ltd. v. APJ Marine, Inc.,*
    411 F.3d 1242 (11th Cir. 2005) .......................................................... 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    551 U.S. 308 (2007) ........................................................................... 10

*U.S. v. Louwsma,*
    970 F.2d 797 (11th Cir. 1992) ............................................................ 12

*United States of America v. Benson and State of Michigan,*
    Case No. 1:25-cv-01148 (W.D. Mich.) ............................................... 13

*United States of America v. Simon and State of Minnesota,*
  Case No. 0:25-cv-03761 (D. Minn.) ................................................... 13

*United States of America v. Weber and the State of California,*
  Case No. 2:25-cv-09149 (C.D. Ca.) .................................................. 13

*United States v. Weber,*
  2:25-CV-09149-DOC-ADS, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026) .......... 14, 16, 17, 18

*Univ. of S. Ala. v. Am. Tobacco Co.,*
  168 F.3d 405 (11th Cir. 1999) ...................................................... 11

*Vargas v. Potter,*
  792 F. Supp. 2d 214 (D.P.R. 2011) .................................................. 12

**Statutes**

5 U.S.C. § 552a .................................................................... 18, 19

18 U.S.C. § 2721 ................................................................... 19, 20

44 U.S.C. § 3501 ..................................................................... 19

52 U.S.C. § 10101 .................................................................... 16

52 U.S.C. § 20501 ..................................................................... 3

52 U.S.C. § 20503 ................................................................... 3, 4

52 U.S.C. § 20507 ..................................................................... 4

52 U.S.C. § 20701 ................................................................. 13, 16

52 U.S.C. § 20703 ........................................................... 12, 13, 14, 16

52 U.S.C. § 20705 ................................................................. 11, 12

O.C.G.A. § 15-5-110 .................................................................. 3

O.C.G.A. § 21-2-50 ................................................................... 2

O.C.G.A. § 21-2-221 ................................................................. 19

O.C.G.A. § 21-2-221.2 ............................................................... 20

O.C.G.A. § 21-2-225 ......................................................... 3, 15, 18

O.C.G.A. § 21-2-225.1 ........................................................................................... 3

O.C.G.A. § 21-2-226 ............................................................................................... 2

O.C.G.A. § 21-2-228 ............................................................................................... 2

O.C.G.A. § 45-13-26 ........................................................................................... 10, 12

O.C.G.A. § 45-13-3 ......................................................................................... 10, 11, 12

O.C.G.A. § 50-21-35 ........................................................................................... 10, 12

**Rules**

Fed. R. Civ. P. 12.................................................................................................. 10

**Treatises**

§ 1063 Subject Matter Jurisdiction, Venue, Personal Jurisdiction, and Service of Process
    Distinguished,
    4 Fed. Prac. & Proc. Civ. § 1063 (4th ed.)........................................................... 12

**Constitutional Provisions**

U.S. CONST. Art. I, Sec. 4, cl. 1 ........................................................................... 15

## INTRODUCTION

Georgia gathers required private information about voters when they register, including full and partial social security numbers, driver's license numbers, and full dates of birth. Officials then use that information to verify citizenship of registrants, eliminate duplicate records, remove dead or otherwise-ineligible voters, perform list maintenance, and administer elections. Georgia conducts as much maintenance as it is permitted to do under federal law, including sending 1,006,474 list maintenance notices, cancelling 580,358 registrations, and moving 298,421 registrations to "inactive" status in 2025.

After receiving a request from the DOJ, Georgia shared both a full voter file (redacting only private information of voters as required by state law) and specific records and data regarding the list maintenance activities Georgia undertook in 2025. Declaration of C. McGowan, attached as Ex. A (McGowan Dec.), ¶¶ 26–27. Because of the confidential nature of the private information voters provide when they register to vote, state and federal laws protect it from disclosure unless certain strict protections are met. Despite Georgia's full compliance in producing all legally-releasable records—in addition to detailed explanations of list maintenance—the DOJ wants the social security numbers, full dates of birth, and driver's license numbers of over 7 million Georgia voters without the protections required by state and federal law, claiming it is entitled to that data—and can share it with unnamed third parties—under the Civil Rights Act (CRA).

As a threshold matter, this Court correctly diagnosed the lack of subject-matter jurisdiction. Doc. 9. The DOJ made a demand for records under the CRA in the Northern District, where those records are located. Their failure to file in a court with jurisdiction

is sufficient basis to dismiss the case in its entirety. In addition, as of the filing of this motion, the DOJ has still not served the Secretary.

But even if this Court considers the allegations of the Complaint, there is no basis to proceed. The DOJ failed to state a claim because its demand did not comply with the CRA and did not account for the protections in state law to protect Georgia voters' personal identifying information (PII). Without more, the DOJ is not entitled to confidential information about every Georgia voter. This Court should dismiss this case.

## FACTUAL BACKGROUND

### I.    Georgia and federal laws on voter registration and list maintenance.

#### A.    Georgia law on statewide voter database.

Georgia statutes establish specific roles for state and county officials to maintain an accurate list of registered voters. First, the Secretary of State has the duty to maintain the state's official list of registered voters in a database. *See* O.C.G.A. § 21-2-50(a)(14); *see also Fair Fight Action, Inc. v. Raffensperger*, 634 F. Supp. 3d 1128, 1163 (N.D. Ga. 2022). Georgia's database of registered voters is housed in the Georgia Registered Voter Information System, or GARVIS. Second, county officials are responsible for verifying and entering information into GARVIS. *Id.* Every Georgia county's board of registrars is responsible for determining the eligibility of new individuals registering to vote. O.C.G.A. § 21-2-226(a). Those county boards also have the continuing duty of "examining from time to time the qualifications of each elector." O.C.G.A. § 21-2-228(a).

When voters register to vote, Georgia officials use the driver's license number to verify the citizenship of the applicant through the Department of Driver Services (DDS).

*Fair Fight Action*, 634 F. Supp. 3d at 1160. Georgia also regularly conducts citizenship audits, utilizing the Department of Homeland Security's Systematic Alien Verification for Entitlements (SAVE) database to verify the status of applicants who may have naturalized. *Id.*; *see also Ga. Coalition for the People's Agenda v. Raffensperger*, Case No. 1:18-cv-04727-ELR (N.D. Ga.), Doc. 257 at Tr. 683 (Apr. 11, 2024) (oral order dismissing challenge to citizenship verification process).

Georgia law protects the confidential information of voters, specifically "the month and day of birth, the social security numbers, email addresses, and driver's license numbers of the electors, and the locations at which the electors applied to register to vote." O.C.G.A. § 21-2-225(b). That specific information can only be released to other government agencies (1) "if the agency is authorized to maintain such information," (2) "the information is used only to identify the elector on the receiving agency's database," (3) the information "is not disseminated further," and (4) the information "remains confidential." *Id*. Similarly, voters in family violence shelters or who have a protective order can have their address information kept confidential as well. O.C.G.A. § 21-2-225.1. Georgia law also provides a method for making the home addresses of state and federal judges confidential in the voter file when they request it. *See* O.C.G.A. § 15-5-110 *et seq*.

### B.      Federal laws governing voter registration and maintenance.

In addition to state law, Georgia's voter list is also subject to the requirements of federal law, which limit Georgia's ability to perform list maintenance. One of those laws, the National Voter Registration Act (NVRA), sets national requirements for voter registration. 52 U.S.C. § 20501(b). This includes providing opportunities to register to vote

and conducting list maintenance, 52 U.S.C. §§ 20503, 20507.

The NVRA generally requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters" who have died or changed residences. 52 U.S.C. § 20507(a)(4). While requiring states to perform some list maintenance, the NVRA also places limits on how much maintenance states are allowed to perform, specifically by requiring states to maintain voters in "inactive" status for years before that voter can be removed from the rolls.[1] For example, a voter who has provided a new address to the Postal Service cannot be removed solely because of that new address unless he or she confirms the move in writing. 52 U.S.C. § 20507(c)(1). Without more, the voter's record must remain on the voter rolls in inactive status for two general election cycles prior to removal. 52 U.S.C. § 20507(d)(1). Further, the NVRA prohibits systematic list maintenance within 90 days of a federal primary or general election, which means that there are only narrow windows during election years where Georgia can perform list maintenance. 52 U.S.C. § 20507(c)(2)(A). In sum, state and county election officials are responsible for conducting list maintenance in accordance with state and federal laws—and none of these processes involve the federal executive branch.

While the DOJ claims it seeks to evaluate Georgia's compliance with the NVRA to remove ineligible voters, Georgia has faced continuing litigation from groups claiming it

---

[1] Georgia's processes for list maintenance have been found compliant with the NVRA and the Constitution. *See Black Voters Matter Fund v. Raffensperger*, 508 F. Supp. 3d 1283, 1299 n.24 (N.D. Ga. 2020); *Fair Fight Action, Inc. v. Raffensperger*, 1:18-CV-5391-SCJ, 2021 WL 9553856, at *16 (N.D. Ga. Mar. 31, 2021).

does *too much* to clean voter rolls.[2] But Georgia conducts as much list maintenance as it is permitted to do under federal law. For example, in calendar year 2025, Georgia sent 1,006,474 list maintenance notices, cancelled 580,358 registrations, and moved 298,421 registrations to "inactive" status in 2025. McGowan Dec., Ex. 8 at 5. Since 2019, Georgia has issued over 4.4 million list maintenance notices. *Id.*

## II.    The Attorney General's demand for the unredacted voter file.

The DOJ first verbally requested that the Secretary's office provide a copy of Georgia's voter-registration list during a video conference on July 9, 2025. Doc. 1 at ¶ 19. That video conference[3] was the first time the DOJ informed Georgia officials it was seeking this information, and the proposed reason for doing so was to assist the state with its list maintenance and to run the full list through the Department of Homeland Security's SAVE database. McGowan Dec., ¶¶ 3–4. The staff who spoke with the DOJ were located in Atlanta. *Id.* at ¶ 5. The DOJ requested that the Secretary's staff email the state's entire voter list, including full dates of birth, social security numbers, driver's license numbers , and voter histories to an attorney in the DOJ's Civil Rights Division. *Id.* at ¶ 6. The DOJ stated that it was entitled to this information under the NVRA. *Id.* at ¶ 7.

---

[2] Each of these cases was brought in the Northern District of Georgia and include challenges to citizenship verification, *Ga. Coalition for the People's Agenda v. Raffensperger*, Case No. 1:18-cv-04727-ELR (N.D. Ga.); no-contact removal processes, *Fair Fight Action*, 2021 WL 9553856, at *16; a process for voters to challenge eligibility, *In re Georgia Senate Bill 202*, Case 1:21-mi-55555-JPB (N.D. Ga.); and nonresidential addresses, *A. Philip Randolph Institute v. Raffensperger*, Case No. 1:24-cv-03412-SDG (N.D. Ga.).

[3] While the Complaint references a July 9 letter, Doc. 1 at ¶ 19, the initial communication was by video conference. McGowan Dec., ¶¶ 3–4.

On August 7, 2025, Deputy Assistant Attorney General Michael Gates sent a letter to Secretary Raffensperger at his Capitol office in Atlanta. Doc. 2-2 at 2; McGowan Dec., ¶ 8, Ex. 1. The letter requested the "statewide voter registration list and information regarding Georgia's procedures for complying with" the list maintenance provisions of the NVRA. *Id*. It made the request only under the NVRA and the Help America Vote Act (HAVA) and made no mention of the CRA. *Id*.

On August 14, 2025, Assistant Attorney General Harmeet Dhillon sent a clarification letter to the Secretary, specifying that the request was for all fields in the state database, including information that is confidential under Georgia law, like full dates of birth, driver's license numbers, and Social Security numbers. Doc. 2-2 at 6; McGowan Dec., ¶ 9, Ex. 2. The letter also (for the first time) referenced the CRA provisions under which this case is brought. *Id*. The letter stated one reason for the request: "to ascertain Georgia's compliance with the list maintenance requirements of the NVRA and HAVA." *Id*. Like the first letter, the August 14 letter was addressed to the Secretary at his office in the Capitol and sent by mail and email to the Secretary's general email box, which is monitored by staff in Atlanta. *Id*. at ¶¶ 9–12.

On August 15, 2025, the Secretary's General Counsel responded to the DOJ's August 7 letter, explaining that the Secretary's office was gathering the information needed and outlining the maintenance processes Georgia uses. McGowan Dec., ¶¶ 14–15, Ex. 3. One particular issue related to the DOJ's request about compliance with list-maintenance requirements was that the Secretary's office was in the middle of conducting its 2025 list-maintenance activities and wanted to be sure that process was complete

before providing the information so the DOJ had the most updated list. *Id*. at ¶ 15.

The Secretary's office did not hear anything further, and so Ms. McGowan followed up again on October 9, 2025, indicating that the Secretary's office was ready to transmit the requested records and requesting the link and instructions for using the DOJ's secure transfer site. McGowan Dec., ¶¶ 16–17, Ex. 4. Almost two more months went by before a new DOJ contact emailed the Secretary's general inbox and the Elections Director[4] (but not Ms. McGowan), for the first time providing a draft memorandum of understanding (MOU) for the transfer of the data. McGowan Dec., ¶ 19, Ex. 5.

The draft MOU the DOJ provided identified the "authorities by which this information is requested by the Department of Justice" as the NVRA, HAVA, and the CRA. McGowan Dec., ¶ 20, Ex. 5. The MOU explained that the reason for requesting the list was "to test, analyze, and assess states' [voter registration lists] for proper list maintenance and compliance with federal law." *Id*. The MOU also identified the Systems of Records Notice (SORN) on which the DOJ was relying for purposes of compliance with the Privacy Act. *Id*. at 4.

The provisions of the MOU allowed the DOJ to provide Georgia's entire voter file to "a contractor with [the DOJ] who needs access to the VRL/Data information in order to perform duties related to [the DOJ's] list maintenance verification procedures." McGowan Dec., ¶ 21, MOU at 7. The MOU included an agreement that if the DOJ identified "any issues, insufficiencies, inadequacies, deficiencies, anomalies, or concerns"

---

[4] The Elections Director works in the Atlanta office. McGowan Dec., ¶ 5.

in the voter file, then the State *must* remove those records and resubmit the data to the DOJ "to verify proper list maintenance has occurred by your state." *Id.* at ¶ 22, MOU at 5. As explained above, under Georgia law, the Secretary maintains the voter file and conducts certain aspects of list maintenance, but non-party county officials are necessarily part of the list maintenance processes identified by the DOJ. *See* Facts, Sec. I.A., above. Further, the Secretary has no authority to remove records without following the requirements of federal and state law. McGowan Dec., ¶ 23.

The day after the DOJ's December 1 email, the Secretary's office responded, forwarding the prior communications and notifying the DOJ that it had been attempting to send records for several months, but had received no response. McGowan Dec., ¶ 24, Ex. 6. The Secretary's office again requested the instructions for uploading records and also explained that the review of the MOU would make the DOJ's requested timeline unreasonable. *Id.* The DOJ responded on December 3 explaining that the DOJ would only send the upload link after the MOU was signed. *Id.* at ¶ 25, Ex. 7.

On December 8, 2025, the Secretary's office responded again, explaining the processes Georgia uses to conduct list maintenance, including citizenship verification, the use of the SAVE database to verify citizenship of all voters, and the partnerships with other states and agencies Georgia uses to identify voters who might have become ineligible. Doc. 2-2 at 10–11; McGowan Dec., ¶ 26, Ex. 8. The letter also explained the extent of Georgia's list maintenance, totaling more than 4.4 million list maintenance notices since 2019 and cancelling more than 500,000 registrations in 2025 alone. *Id.*

The Secretary's letter also explained state law that limits disclosure of some of the

fields that the DOJ requested. *Id*. As the letter also explained, under prior NVRA litigation against the Secretary, the Northern District of Georgia had clarified that even though disclosure of certain information in the voter file was required by the NVRA, redaction of sensitive information prior to disclosure was appropriate. *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1344–45 (N.D. Ga. 2016).

A few minutes after the Secretary's counsel emailed the letter, the Elections Director sent the DOJ a link that utilized the Secretary's file-transfer system and included a list of county registrars, records documenting the Secretary's list maintenance activities, a list of cancelled registrations, and the registered voter list. McGowan Dec., ¶ 27, Ex. 9. These records were redacted as required by state law. *Id*. As of today, the DOJ has never provided a link to upload any voter information to its enterprise system. *Id*.

All of the communications with the Secretary's office took place with his staff members located in and around the State Capitol in Atlanta. *Id*. at ¶ 28. There are no staff members of the Elections Division of the Secretary's office who are assigned to any other office besides the Atlanta office, no operations of the Elections Division of the Secretary's office take place in the Macon office, and the administration of the voter-registration database takes place in Atlanta. *Id*. at ¶¶ 13, 28–30.

## III.    This filing and service of this litigation.

Instead of further communicating with the Secretary's office, the DOJ's next move was to file this lawsuit on December 18, 2025, not in the Northern District of Georgia, but in this district. Doc. 1.

The summons to the Secretary correctly identified his Capitol address in Atlanta.

Doc. 8. That is the location of the Secretary's office by statute. *See* O.C.G.A. § 45-13-3. Georgia law also empowers the Secretary to designate an employee as an agent for service of process, O.C.G.A. §§ 45-13-26, 50-21-35(a), and that designee is the Secretary's general counsel in the Secretary's Capitol office in Atlanta. *See* Service of Process, https://sos.ga.gov (last visited January 21, 2026).

Counsel for the Secretary entered an appearance in this case on December 30, 2025. Doc. 14. To this point, the DOJ has not contacted the undersigned. Instead, the first attempt the DOJ made to serve the Secretary was January 6, 2026 at the Secretary's Macon office. McGowan Dec, ¶ 31; Doc. 30. As explained above, no election-related functions take place at that office and Georgia law does not permit service on the Secretary at that office. *Id*. at ¶¶ 13, 32. As of the filing of this motion, the DOJ has not yet served the Secretary's general counsel at his Atlanta office. *Id*. at ¶ 33.

## ARGUMENT AND CITATION OF AUTHORITY

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). In addition to the complaint, this Court may consider any matters appropriate for judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007).

**I.    This Court should dismiss the Complaint because it lacks subject-matter jurisdiction (Fed. R. Civ. P. 12(b)(1)).**

This Court can only hear cases if there is a specific grant of jurisdiction. Doc. 9 at 1

(quoting *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999)). The burden is on the DOJ to establish subject-matter jurisdiction. *Id.* at 2 (citing *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005)). The DOJ alleges that it "sent a written demand." Doc. 1 at ¶ 26. But it never identifies the location of that demand or the location of the records it seeks—and that matters.[5] 52 U.S.C. § 20705.

As explained above, the demand was sent to the Secretary's Capitol office in Atlanta, which is designated by statute as his office location. O.C.G.A. § 45-13-3. The DOJ only communicated with staff located in the Secretary's Atlanta offices. *See* Facts, Sec. II., *above*. The DOJ did not communicate with anyone in the Middle District regarding its demand and does not allege that it did. McGowan Dec., ¶¶ 5, 12–13. Further, there are no election-related staff for the Secretary located in the Middle District, all Elections Division staff are assigned to Atlanta, and administration of the statewide voter registration database takes place in Atlanta. *Id.* at ¶ 13, 29–30.

This Court cannot reach any other conclusion but that the demand and the location of the requested records both are in the Northern District of Georgia. Doc. 9 at 4–6. When

---

[5] The Complaint references two demand letters, *see* Doc. 1 at ¶¶ 20–23; Doc. 2-2 at 2–8. This Court may "consider documents attached to the motion to dismiss if they are referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity," *Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018), without converting the motion to dismiss into a motion for summary judgment. *See also Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024). As a result, the letters referenced in the Complaint are appropriate for consideration on a motion to dismiss, along with the exhibits attached to the McGowan Dec. that reflect the full correspondence with the DOJ. While not referenced in the Complaint, they are central to the claims and the Secretary does not anticipate the DOJ challenging their authenticity. *Id.*

a specific statute provides jurisdiction, the DOJ cannot rely on general statutes in their place. *U.S. v. Louwsma*, 970 F.2d 797, 799 (11th Cir. 1992). That means the DOJ did not bring this lawsuit in the proper district, as the statute requires—and that this Court lacks subject-matter jurisdiction as a result. 52 U.S.C. § 20705.

## II.    Alternatively, this Court should dismiss the Complaint for improper venue (Fed. R. Civ. P. 12(b)(3)).

Further, this case should also be dismissed for improper venue. The DOJ bears the burden of showing it filed in the appropriate venue. *Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988). For all the same reasons outlined above regarding subject-matter jurisdiction, this Court should dismiss for lack of venue to enforce 52 U.S.C. § 20703. *See* 52 U.S.C. § 20705.

## III.   This Court should dismiss the Complaint for lack of personal jurisdiction and insufficient service of process (Fed. R. Civ. P. 12(b)(1) and (5)).

The DOJ filed this case on December 18, 2025. Doc. 1. It did not make its first attempt to serve the Secretary until January 6, 2026, when it attempted to serve employees at the Secretary's Macon office. McGowan Dec., ¶ 31. The only location permitted under Georgia law for the Secretary to be served is by serving his general counsel at his Atlanta office. *Id.* at ¶ 32; *see* O.C.G.A. §§ 45-13-3, 45-13-26, 50-21-35(a). As of the date of this filing, the DOJ has not served the Secretary, despite the Secretary's general counsel providing dates when she would be available to accept service. McGowan Dec., ¶ 33. Proper service in accordance with Fed. R. Civ. P. 4 is required. *See* § 1063 Subject Matter Jurisdiction, Venue, Personal Jurisdiction, and Service of Process Distinguished, 4 Fed. Prac. & Proc. Civ. § 1063 (4th ed.); *Vargas v. Potter*, 792 F. Supp. 2d 214, 216 (D.P.R. 2011). The lack of

service provides another basis for this Court to dismiss this case.

**IV.    This Court should dismiss the Complaint for failure to state a claim upon which relief can be granted (Fed. R. Civ. P. 12(b)(6)).**

Even if this Court considers the merits, the DOJ's claims still fail. The DOJ does not have the unbounded authority to obtain complete copies of state voter registration databases, including voters' confidential information, through the CRA.

**A.    Legal standards under the CRA.**

Unlike some of the 24 other cases it brought against states seeking voter files, the DOJ seeks only to require the production of Georgia's unredacted voter file under the CRA.[6] The provision of the CRA, 52 U.S.C. § 20703 covers "all records and papers which come into [the] possession" of an officer of election as part of a federal election. 52 U.S.C. § 20701. The Attorney General can send a demand "to the person having custody, possession, or control of such record or paper" and then inspect those documents "at the principal office of such custodian." 52 U.S.C. § 20703. To be a valid demand, it "shall contain [1] a statement of the basis and [2] the purpose therefor." *Id.*

**B.    The DOJ's demand letter does not meet the statutory requirements under the CRA.**

The first problem with the DOJ's reliance on the CRA is that its demand does not comply with the statute because it does not contain a statement of the basis and the

---

[6] *See*, *e.g.*, *United States of America v. Weber and the State of California*, Case No. 2:25-cv-09149 (C.D. Ca.) (counts under CRA, NVRA, and HAVA); *United States of America v. Benson and State of Michigan*, Case No. 1:25-cv-01148 (W.D. Mich.) (counts under CRA, NVRA, and HAVA); *United States of America v. Simon and State of Minnesota*, Case No. 0:25-cv-03761 (D. Minn.) (counts under CRA and HAVA).

purpose. The DOJ identifies one letter as a demand for purposes of its CRA claim, which is the August 14 letter. Doc. 1 at ¶ 26. The DOJ states that the purpose of its demand is to ascertain Georgia's compliance with the list maintenance requirements of the NVRA and HAVA. Doc. 2-2 at 7. But, as described above, there is no basis to think that Georgia is not complying with those list maintenance requirements. And the records that Georgia already sent the DOJ show that Georgia conducts list maintenance to the fullest extent allowed by the NVRA and HAVA. The DOJ does not need Georgia voter PII to ascertain that fact, which makes the lack of the required basis in the demand particularly telling.

While this Court cannot inquire into the "factual support for, or the sufficiency of" the basis and purpose, *Kennedy v. Lynd*, 306 F.2d 222, 226 (11th Cir. 1962), it must require the DOJ to comply with the statute to provide both the basis and purpose of its request prior to it being a valid request under the CRA. The CRA "was not passed as a tool for NVRA compliance" or for HAVA compliance. *United States v. Weber*, 2:25-CV-09149-DOC-ADS, 2026 WL 118807, at *9 (C.D. Cal. Jan. 15, 2026). Further, there is no "explanation for why [the DOJ] believed the NVRA was violated in its letter," *id.*, so the DOJ has not yet complied with the CRA in the demand it made on the Secretary and this Court should dismiss the Complaint.[7]

### C.    Georgia's privacy protections are not preempted by the CRA.

The CRA provision also does not preempt Georgia statutes that protect the PII of

---

[7] Even if the DOJ's demand was proper, it is only entitled to "inspection, reproduction, and copying at the principal office" of the Secretary, not electronic transmittal of the database. 52 U.S.C. § 20703.

voters. In its letter, the DOJ makes the blanket statement that "[a]ny statewide prohibitions are clearly preempted by federal law," Doc. 2-2 at 7 n.2, referring to the statutory protections for the PII of Georgia voters. But Georgia's privacy protections for voters and the CRA can operate harmoniously, so the power to request records under the CRA does not preempt those Georgia statutes—meaning the DOJ cannot obtain the unredacted records under the CRA. Under Georgia law, the Secretary can only disclose confidential voter information to other government agencies when the agency is "authorized to maintain such information, the information is used only to identify the elector on the receiving agency's database, and is not disseminated further and remains confidential." O.C.G.A. § 21-2-225(b). The Secretary can only share the requested data with the DOJ if Georgia's protections for voters are preempted by the CRA. They are not.

States set the time, place, and manner of federal elections and Congress is granted the power to alter those regulations. U.S. CONST. Art. I, Sec. 4, cl. 1; *see also Brown v. Sec'y of State of Florida*, 668 F.3d 1271, 1275 (11th Cir. 2012). States have "responsibility for the mechanics of congressional elections, but only so far as Congress declines to pre-empt state legislative choices." *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 9 (2013) (quoting *Foster v. Love*, 522 U.S. 67, 69 (1997)) (*Inter Tribal*). Thus, Georgia's laws on voter privacy are preempted only to the extent (1) Congress exercises its power under the Elections Clause and (2) the federal statutes are inconsistent with state laws. *Id*.

The CRA is likely an exercise of Congress's power under the Elections Clause. *See* P.L. 86-449, 74 Stat. 86 ("Federal Election Records"); *Inter Tribal*, 570 U.S. at 14. But there is nothing inconsistent with the CRA in redacting voters' private information prior to

production when it is required by state law. 52 U.S.C. §§ 20701 and 20703 do not prohibit the redaction of private information about Georgia voters. Further, "sensitive and identifying information is private and not open to inspection by federal officials." *Weber*, 2026 WL 118807, at *9. That is why requests under the CRA are not for "confidential, private papers and effects" but rather for "public records which ought ordinarily to be open to legitimate reasonable inspection and which by nature relate directly to the most vital of all public functions—the franchise of the citizen." *Lynd*, 306 F.2d at 231. Georgia has already provided its public list, minus the confidential fields protected by state statute, to the DOJ, consistent with this approach.[8] Further, unlike the Arizona statute at issue in *Inter Tribal*, which required voters to present additional documents beyond what the federal statutory structure required for federal voter-registration forms, there is nothing inconsistent with a state redacting private information before providing records in response to a request under the CRA. *Inter Tribal*, 570 U.S. at 15.

> **D.    The DOJ's stated purpose is not consistent with the CRA, so it cannot proceed with this action.**

The purpose of the DOJ's powers under the CRA is "to enable the Attorney General to determine whether § 1971 suits or similar actions should be instituted."[9] *Lynd*, 306 F.2d at 228. But it is "well-settled law [that] § 1971 was enacted pursuant to the

---

[8] Other courts have determined that similar silence by the NVRA about personal information allowed redaction of private information of voters. *See Project Vote*, 208 F. Supp. 3d at 1344 (NVRA "does not require the disclosure of sensitive information that implicates special privacy concerns"); *Pub. Interest Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024).

[9] Former 42 U.S.C. § 1971 was renumbered as 52 U.S.C. § 10101.

Fifteenth Amendment for the purpose of eliminating *racial discrimination* in voting requirements." *Indiana Democratic Party v. Rokita*, 458 F. Supp. 2d 775, 839 (S.D. Ind. 2006) (emphasis added) (collecting cases), *aff'd sub nom. Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949 (7th Cir. 2007), *aff'd*, 553 U.S. 181 (2008); *see also Broyles v. Texas*, 618 F. Supp. 2d 661, 697 (S.D. Tex. 2009) ("only racially motivated deprivations of rights are actionable" (citing *Kirksey v. City of Jackson, Miss.*, 663 F.2d 659, 664–65 (5th Cir. 1981)); *see also Weber*, 2026 WL 118807, at *8 ("The purpose of Title III is to detect voting-related racial discrimination.").

The DOJ makes no allegations that its request is for purposes of bringing an action under the CRA—instead it admits it seeks to review Georgia's compliance with different statutes, the NVRA and HAVA. *See* Doc. 2-2 at 7. But this makes little sense because neither statute existed when the CRA became law, which again "points to the DOJ's stated purpose being outside of the scope of what Congress intended Title III to be used for." *Weber*, 2026 WL 118807, at *9. Because the DOJ is not seeking to address any issues related to racial discrimination, its request is also invalid because it is attempting to use the CRA for purposes other than enforcing its protections against racial discrimination.

### E.    The DOJ's demand exceeds its authority under other statutory provisions.

Under Georgia law, which is not preempted by the CRA in this instance, the Secretary can only disclose confidential voter information to other government agencies when the agency is "authorized to maintain such information, the information is used only to identify the elector on the receiving agency's database, and is not disseminated

further and remains confidential." O.C.G.A. § 21-2-225(b). The DOJ's demand does not satisfy any of those prerequisites because under federal law, the DOJ is not legally authorized to maintain confidential information until it complies with at least three other laws: the Privacy Act, the E-Government Act, and the Driver's Privacy Protection Act (DPPA). *See also Weber*, 2026 WL 118807, at *17 (finding identical violations). The DOJ has not done so, and is thus separately prohibited from receiving the confidential information of Georgia voters.[10]

>    1.    *The DOJ's request violates the Privacy Act.*

Congress adopted the Privacy Act to "provide certain safeguards," including "that adequate guards are provided to prevent misuse" of private information. P.L. 93–579 (S 3418) 88 Stat 1896 § 2(B)(4). That requires federal agencies to follow procedures before they can "maintain, collect, use, or disseminate" any records. 5 U.S.C. § 552a(e)(f).

The unredacted voter list the DOJ seeks is a "record" for purposes of the Privacy Act because it includes records of individuals and "identifying number[s]." *Id*. at (a)(4). And because the DOJ seeks to hold the information about Georgia voters, it is establishing a "system of records." *Id*. at (a)(5). As a result, the DOJ must publish a System of Records Notice (SORN) in the Federal Register that covers the requested information. *Id*. at (e)(4).

The DOJ never identifies a SORN in its Complaint. But the MOU sent to the

---

[10] While normally affirmative defenses are not considered at the motion-to-dismiss stage, "[a] complaint is subject to dismissal for failure to state a claim 'when its allegations, on their face, show that an affirmative defense bars recovery on the claim.'" *Douglas v. Yates*, 535 F.3d 1316, 1321 (11th Cir. 2008) (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir.2003)).

Secretary references a SORN, specifically JUSTICE/CRT – 001, "Central Civil Rights Division Index File and Associated Records," 68 Fed. Reg. 47610-01, 611 (August 11, 2003); 70 Fed. Reg. 43904-01 (July 29, 2005); and 82 Fed. Reg. 24147-01 (May 25, 2017). McGowan Dec., Ex. 5 (MOU) at 4. That SORN identifies the categories of individuals covered as including victims, witnesses, and others in cases involving the Civil Rights Division. *Id*. But that SORN does not include the maintenance of voter records unrelated to litigation, nor can it relate to an investigation if there is no question about the enforcement of the CRA against Georgia. As a result, the request does not comply with the DOJ's duties under the Privacy Act. 5 U.S.C. § 552a(e)(4).

2.    *The DOJ's request violates the E-Government Act.*

In addition to the Privacy Act, the E-Government Act requires federal agencies to undertake a privacy impact assessment (PIA) before "initiating a new collection of information" which includes private information of more than 10 people. 44 U.S.C. § 3501 note (E-Government Act of 2002, § 208(b)(1)(A)(ii)(II)). An agency is required to prepare a PIA if "it plans to collect information." *Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 380 (D.C. Cir. 2017). Despite this requirement, the DOJ has not indicated it undertook a PIA prior to requesting Georgia's voter data.

3.    *The DOJ's request violates the Driver Privacy Protection Act (DPPA).*

Finally, the DOJ's request violates the DPPA. The DPPA generally prohibits the disclosure of personal information obtained in connection with a "motor vehicle record." 18 U.S.C. § 2721(a). Georgia's voter-registration database regularly receives information from the DDS to register and update voter information. *See* O.C.G.A. §§ 21-2-221(e), (h);

21-2-221.2. This is permitted by the DPPA, which allows uses of records as part of government agencies carrying out their functions. 18 U.S.C. § 2721(b)(1). But the use of the records matters, because the "particular piece of disclosed information" must be used for "effecting a particular purpose exempted by the Act." *Senne v. Vill. of Palatine, Ill.*, 695 F.3d 597, 606 (7th Cir. 2012).

Here, the DOJ's only stated purpose in its demand letters is to determine Georgia's compliance with the NVRA and HAVA, but none of the information requested is necessary for that purpose. Georgia extensively conducts list maintenance—to the point that it is regularly sued by groups claiming it is conducting too much list maintenance. *See* Facts, Sec. I.B., *above*. The DOJ does not need the confidential information of Georgia voters to assess whether Georgia is conducting list maintenance. The redacted data that Georgia has already sent is more than sufficient for that purpose.

## CONCLUSION

This Court lacks jurisdiction to hear this case. The DOJ has not served the Secretary and filed this case in the wrong district. But even if this Court considers the merits, there is no basis for the case to continue.

Georgia performs as much list maintenance as is permitted by federal law, and Georgia readily provided its entire redacted voter file to the DOJ. The DOJ has not identified any basis for believing that Georgia is not fully complying with federal law. And Georgia law protects the social security number, driver's license number, and month and day of birth of Georgia voters. Nothing in the CRA requires Georgia to provide unredacted records after a demand by the DOJ. This Court should dismiss this case.

Respectfully submitted this 21st day of January, 2026.

_/s/ Bryan P. Tyson_
Bryan P. Tyson
Georgia Bar No. 515411
btyson@clarkhill.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@clarkhill.com
Diane F. LaRoss
Georgia Bar No. 430830
dlaross@clarkhill.com
**Clark Hill PLC**
3630 Peachtree Road NE
Suite 700
Atlanta, Georgia 30326
678.370.4377 (phone)

_Counsel for Defendant Secretary of State Brad Raffensperger_